UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard Steve Piper, and Bill Patt as Trustees of the Operating Engineers Local #49 Health and Welfare Fund, Michael R. Fanning as a Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillippi, Greg Waffensmith, Mark Ryan, as Trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program,<br><br>          Plaintiffs,<br><br>vs.<br><br>Charps Welding & Fabricating, Inc., Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc., C & G Construction Inc. of Clearbrook, Alpha Oil & Gas Services, Inc., and Kenneth Charpentier, individually,<br><br>          Defendants. | Civil File No: _____<br><br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiffs, as their Complaint against the Defendants, state and allege as follows:

1

**IDENTITY OF PARTIES, JURISDICTION, VENUE**

1. Plaintiffs are the Trustees of the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program ("Funds").

2. The Funds are multi-employer jointly-trusteed fringe benefit plans created and maintained pursuant to § 302(c)(5) of the Labor Relations Management Act of 1974 ("LMRA"), as amended, 29 U.S.C § 186(c)(5). The Funds are administered in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1001, et seq. The Funds are exempt from federal income taxation pursuant to the Internal Revenue Code.

3. Defendant Charps Welding & Fabricating, Inc. ("Charps Welding & Fabricating") is a Minnesota business corporation with a registered address of Highway 5 North, Lot #4 Industrial Park, Clearbrook, Minnesota, 56634. Charps Welding & Fabricating is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

4. Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc. ("Clearwater Energy Group") is a Minnesota business corporation with a registered address of 527 Tower Street Northwest, Clearbrook, Minnesota 56634. Clearwater Energy Group is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

5. Defendant C & G Construction Inc. of Clearbrook ("C & G Construction") is a Minnesota business corporation with a registered address of Highway 5 North, Lot #4 Industrial Park, Clearbrook, Minnesota, 56634. C & G Construction is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

6. Defendant Alpha Oil & Gas Services, Inc. ("Alpha Oil & Gas") is a North Dakota business corporation with a registered address of 1501 North 12th Street, Suite 1, Bismarck, North Dakota, 58501-2713. Alpha Oil & Gas is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

7. Defendant Kenneth Charpentier ("Charpentier") is an individual and owner and officer of Charps Welding & Fabricating, C & G Construction, and Alpha Oil & Gas who agreed to be personally liable to the Operating Engineers Local #49 Health and Welfare Fund. Defendant Charpentier is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5).

8. This is an action by the Funds' Trustees as fiduciaries to collect unpaid fringe benefit contribution payments. Subject matter jurisdiction over this controversy, therefore, is conferred upon this Court, without regard to the amount in controversy by ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); ERISA § 502(f), 29 U.S.C. § 1132(f), ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and ERISA § 515, 29 U.S.C. § 1145. Subject matter jurisdiction is also conferred by LMRA § 301, 29 U.S.C. § 185 and the federal common law developed thereunder.

9. The Funds are administered in Hennepin County, Minnesota, therefore, venue is proper in this court pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## **FACTS**

10. The Funds re-allege and incorporate by reference paragraphs 1-9 herein.

11. Since at least October 1, 2001, Charps Welding & Fabricating has been bound to the terms of a series of collective bargaining agreements between the Builders Division of the Associated General Contractors of Minnesota and the International Union of Operating Engineers, Local No. 49 ("Builders CBAs"). Charps Welding & Fabricating is be bound to the Builders CBAs through at least April 30, 2016.

12. Since at least May 31, 2005, Charps Welding & Fabricating has been bound to a series of collective bargaining agreements negotiated between the International Union of Operating Engineers and the Pipe Line Contractors Association ("Pipeline CBAs"). Pursuant to the Pipeline CBAs' evergreen clause, Charps Welding & Fabricating is bound to the Pipeline CBAs through at least January 31, 2015.

13. Since at least March 5, 2008, Charps Welding & Fabricating has been bound to the National Distribution and Utilities Agreement negotiated between the International Union of Operating Engineers and the Distribution Contractors Association ("Distribution and Utilities CBA"). Pursuant to the Distribution and Utilities CBA's evergreen clause, Charps Welding & Fabricating is bound to the Distributions and Utilities CBA through at least May 31, 2015.

14. Charpentier executed a Participating Agreement with the Operating Engineers Local #49 Health and Welfare Fund ("Welfare Participating Agreement") whereby Charps Welding & Fabricating agreed to contribute to the Operating Engineers Local #49 Health and Welfare Fund. The Welfare Participating Agreement also provides that in executing the Welfare Participating Agreement, Charpentier agreed to

bind herself individually to the full and faith full performance of the Welfare Participating Agreement.

15. The Welfare Participating Agreement states that Charps Welding & Fabricating and Charpentier shall contribute to the Operating Engineers Local #49 Health and Welfare Fund in accordance with the terms of Agreement and Declaration of Trust for the Operating Engineers Local #49 Health and Welfare Fund ("Welfare Trust Agreement") and that Charps Welding & Fabricating and Charpentier agree to be bound to the terms of the Welfare Trust Agreement.

16. The Builders CBAs, Pipeline CBAs, and Distribution and Utilities CBA (these CBAs are collectively referred to as "CBAs") and the Welfare Trust Agreement require Charps Welding & Fabricating and Charpentier to submit contributions to the Funds in an amount set forth in the CBAs for each hour worked by their employees covered by the CBAs.

17. The Restated Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers ('Central Pension Trust Agreement") governs the payment of contributions to the Central Pension Fund by Charps Welding & Fabricating.

18. The Restated Agreement and Declaration of Trust of the Local #49 I.U.O.E. and Associated General Contractors of Minnesota Apprenticeship and Training Program ("Apprenticeship Trust Agreement") governs the payment of contributions to the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program by Charps Welding & Fabricating.

19. The Builders CBAs, Pipeline CBAs, the Welfare Trust Agreement, and the Apprenticeship Trust Agreement require Charps Welding & Fabricating and Charpentier to calculate the contributions due and owing in any given month to the Funds on a remittance report form which must be submitted with their payment to the Funds.

20. The Pipeline CBAs and the Distribution and Utilities CBA provide that any work performed by a subcontractor of Charps Welding & Fabricating that is covered by the Pipeline CBAs, and the Distribution and Utilities CBA is performed in accordance with the terms and conditions of the Pipeline CBAs, and the Distribution and Utilities CBA.

21. The Builders CBAs prohibit Charps Welding & Fabricating from subcontracting work to entities that are not signatory to the Builders CBAs or who do not agree to comply with the provisions of the Builders CBAs.

22. The Builders CBAs and the Apprenticeship Trust Agreement require Charps Welding & Fabricating and Charpentier to submit the remittance report and contribution payment on a monthly basis by the fifteenth day of the month following the month in which the hours were worked.

23. The Pipeline CBAs require Charps Welding & Fabricating and Charpentier to submit the contribution payment on a monthly basis within thirty days following the month in which the hours were worked.

24. The Builders CBAs state that an employer shall be considered delinquent for a particular month if the required remittance report and payment are not postmarked on or before the 15th day of the following month.

25. The Builders CBAs, the Welfare Trust Agreement and the Central Pension Trust Agreement permits the Funds or their authorized agents to examine signatory employers' payroll and employment records whenever such examination is deemed necessary by the Funds or their authorized agents in connection with the proper administration of the Funds. Further, Builders CBAs, the Welfare Trust Agreement and the Central Pension Trust Agreement require Charps Welding & Fabricating and Charpentier to promptly furnish to the Funds or their authorized agents, on demand, all necessary employment and payroll records relating to their employees covered by the CBAs.

26. The Builders CBAs state that delinquent employers shall be required to pay as liquidated damages an amount equal to fifteen percent of the contribution payment otherwise due.

27. The Central Pension Trust Agreement states that delinquent employers shall be required to pay as liquidated damages an amount equal to twenty percent of the contribution payment otherwise due.

28. The Welfare Trust Agreement states that an employer is liable for liquidated damages in an amount between five and fifteen percent of the contribution payment otherwise due.

29. The Builders CBAs state that delinquent employers shall be required to pay all costs of collection actually incurred by the Funds, including all attorneys' fees, service fees, filing fees, court reporter fees, and all other fees, costs, disbursements incurred by or on behalf of the Funds in collecting amounts due.

30. The Welfare Trust Agreement and Central Pension Trust Agreement states that employers are liable for any audit costs, attorneys' fees or expenses incurred by the Funds in pursuing the collection of delinquent contributions.

31. The Welfare Trust Agreement and Central Pension Trust Agreement state that an employer is liable for interest on any unpaid contributions.

32. The Pipeline CBAs and the Distribution and Utilities CBA provide that if Charps Welding & Fabricating performs work covered by the Pipeline CBAs and the Distribution and Utilities CBA under the name of another as a corporation, company, partnership, enterprise, or any combination, including a joint venture, the Pipeline CBAs and the Distribution and Utilities CBA are applicable to all such work.

## COUNT I
## BREACH OF CONTRACT/RIGHT TO AUDIT

33. The Plaintiffs re-allege and incorporate by reference paragraphs 1-32 herein.

34. The Plaintiffs' authorized agent requested that Charps Welding & Fabricating and Charpentier produce complete sets of payroll and employment records for Charps Welding & Fabricating, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas for the period of January 1, 2008 through the present ("Audit Period").

35. Charps Welding & Fabricating and Charpentier breached the terms of the CBAs, Welfare Trust Agreement, Central Pension Trust Agreement, and Apprenticeship Trust Agreement by refusing to produce payroll and employment records for Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas for the Audit Period.

36. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas employed individuals during the Audit Period on whose behalf contributions may be due and owing.

37. Unless Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are ordered to specifically perform the obligation to produce the records and permit the audit, and are enjoined from further obstruction of such procedure, the Plaintiffs will have no means of verifying the proper amounts due and owing to them, nor will the Plaintiffs have adequate means of ascertaining the proper allocation of such contributions to Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas' employees.

38. In the absence of this Court's order as requested, the Plaintiffs are without adequate remedy at law and will be subject to irreparable harm.

39. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas should be enjoined from further refusal and failure to allow the Funds' authorized agent access to their employment and payroll records.

### COUNT II
### ALTER-EGO

40. The Plaintiffs re-allege and incorporate by reference paragraphs 1-39 herein.

41. Charps Welding & Fabricating and / or Charpentier exercise control over Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas.

42. Charps Welding & Fabricating, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas all perform work covered by the CBAs in the geographic areas covered by the CBAs.

43. Upon information and belief, Charps Welding & Fabricating, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared common office space and addresses during Charps Welding & Fabricating's performance of the CBAs.

44. Upon information and belief, Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared common employees during Charps Welding & Fabricating's performance of the CBAs.

45. Upon information and belief, Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared common management during Charps Welding & Fabricating's performance of the CBAs.

46. Upon information and belief, Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared common equipment during Charps Welding & Fabricating's performance of the CBAs.

47. Upon information and belief, Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared centralized accounting during Charps Welding & Fabricating's performance of the CBAs.

48. Upon information and belief, Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas have shared centralized control of labor during Charps Welding & Fabricating's performance of the CBAs.

49. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas do not have an independent existence from each other.

50. Transactions between Charps Welding & Fabricating and Charpentier and Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are not at arm's length.

51. Charps Welding & Fabricating and Charpentier operate Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas to avoid obligations to the Plaintiffs.

52. Charps Welding & Fabricating and Charpentier operate Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas to perpetuate a fraud.

53. Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are the alter egos of Charps Welding & Fabricating and as such are bound to the CBAs.

### COUNT III
### JOINT VENTURE/JOINT ENTERPRISE

54. The Plaintiffs re-allege and incorporate by reference paragraphs 1-53 herein.

55. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas contributed common resources to projects involving work covered by the CBAs during the Audit Period.

56. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas shared joint proprietorship and control over projects involving work covered by the CBAs during the Audit Period.

57. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas shared profits from projects involving work covered by the CBAs during the Audit Period.

58. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas had express or implied contracts covering projects involving work covered by the CBAs during the Audit Period.

59. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas had a mutual understanding for a common purpose on projects involving work covered by the CBAs Audit Period.

60. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas shared a right to a voice in the direction and control of the means used to carry out the common purpose of the joint enterprise on projects work covered by the CBAs during the Audit Period.

61. Because Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas form a joint venture or joint enterprise, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are bound to the CBAs.

<u><b>COUNT IV</b></u><br><b>ERISA DAMAGES</b>

62. The Plaintiffs re-allege and incorporate by reference paragraphs 1-61 herein.

63. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are liable to the Plaintiffs for liquidated damages or double the interest on the unpaid contributions found to be due and owing from to the audit pursuant to the CBAs.

64. The Plaintiffs are entitled to liquidated damages or double interest under ERISA § 502(g), 29 U.S.C. § 1132(g).

65. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are liable to the Plaintiffs for all attorney fees, service fees, filing fees, court reported fees, and other legal costs and disbursements incurred by the Plaintiffs in this action pursuant to the CBAs.

66. The Plaintiffs are entitled to attorneys' fees and costs incurred in this action under ERISA § 502, 29 U.S.C. § 1132.

67. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are liable to the Funds for interest charges the unpaid contributions for the Audit Period pursuant to the CBAs.

68. Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are liable for interest charges on any unpaid contributions under ERISA § 502, 29 U.S.C. § 1132.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment, joint and several, of this Court against the Defendants as follows:

1. For an Order adjudging that Defendants are required to forthwith produce for inspection and audit the following of their payroll and employment records for the Audit Period:

    a. The general ledger for all Defendants;

    b. All payroll registers or journals;

    c. All check registers or journals for all financial accounts;

    d. All monthly account statements for all financial accounts;

    e. All time cards;

    f. All employees files;

    g. All Internal Revenue 941 quarterly reports;

    h. All Internal Revenue W-2 and W-3 forms;

    i. Sequential canceled checks from Defendants' payroll account;

    j. Sequential canceled checks from Defendants' checking accounts;

    k. All Minnesota quarterly unemployment reporting forms (MUTAs) and quarterly tax forms; and

    l. Any such records as are deemed necessary to the performance of such audit by Plaintiffs' authorized agent.

2. For an Order adjudging that such production and inspection shall occur within ten days of entry of this Court's Order requiring same at the premises of Wilson-McShane Corporation, 3001 Metro Drive, Suite 500, Bloomington, MN 55425.

3. For an Order adjudging that Defendants are enjoined from further failure or refusal to produce such records and to permit such inspection, and from further obstruction of Plaintiffs' auditing procedures.

    4.      For judgment against the Defendants for all unpaid contributions discovered to be due pursuant to the audit, plus all additional amounts to which the Plaintiffs are entitled, including interest and liquidated damages.

    5.      For an award of costs, disbursements and attorney fees according to law.

    6.      Such other and future relief as the Court deems just, equitable or proper.

Date: June 23, 2014                    MCGRANN SHEA CARNIVAL
                                      STRAUGHN & LAMB, CHARTERED

                                      By:   s/ Amy L. Court
                                              Carl S. Wosmek #300731
                                              Amy L. Court #319004
                                              800 Nicollet Mall, Suite 2600
                                              Minneapolis, MN 55402
                                              Telephone: (612) 338-2525

                                              *Attorney for Plaintiffs*

722560.DOCX