UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Glen Johnson, et al.,                                        Court File No. 14-cv-2081 (RHK/LIB)

        Plaintiffs,

        v.                                                              **ORDER**

Charps Welding & Fabricating, Inc., et al.,

        Defendants.

---

    This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), upon Plaintiffs' Motion to Compel Discovery Responses, [Docket No. 22]. The Court held a motion hearing on April 7, 2015, and the Court took Plaintiffs' motion under advisement. For reasons discussed herein, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Compel Discovery Responses, [Docket No. 22].

## I.     BACKGROUND

    Plaintiffs[1] initiated the present case against Defendants Charps Welding & Fabricating, Inc. ("Charps"), Kenneth Charpentier, Clearwater Energy Group, Inc. ("Clearwater"), C&G Construction ("C&G"), and Alpha Oil & Gas Services ("Alpha Oil") (collectively,

---

[1] Plaintiffs Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard, Steve Piper, and Bill Patt are trustees of the Operating Engineers Local #49 Health and Welfare Fund. Plaintiff Michael Fanning is a fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. Plaintiffs Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillipi, Greg Waffensmith, and Mark Ryan are trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program. Plaintiffs the Operating Engineers Local #49 Health and Welfare Fund ("Health and Welfare Fund"), the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund"), and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program ("Apprenticeship and Training Program") (collectively "the Funds") are multi-employer, jointly-trusteed employee fringe benefit plans. (Compl. [Docket No. 1], ¶ 2).

"Defendants") on or about June 23, 2014, "to collect unpaid fringe benefit contribution payments." (Compl. [Docket No. 1], ¶¶ 1-7).

Plaintiffs allege that three series of collective bargaining agreements ("CBAs") require Defendant Charps to make monthly contributions to the Funds for each hour worked by employees covered by the CBAs. (Id. at ¶¶ 11-16).  Specifically, Plaintiffs allege that, from at least October 1, 2001 until the present, a series of CBAs negotiated among the Builders Division of the Associated General Contractors of Minnesota and the International Union of Operating Engineers, Local #49 ("the Builders CBAs") has bound Defendant Charps. (Id. at ¶ 11). Plaintiffs allege that Defendant Charps has also been bound by a series of CBAs negotiated between the International Union of Operating Engineers and the Pipe Line Contractors Association ("Pipeline CBAs") since at least May 31, 2005,  until at least January 31, 2015; and has been bound by the National Distribution and Utilities Agreement negotiated between the International Union of Operating Engineers and the Distribution Contractors Associations ("Distribution and Utilities CBA") since at least March 5, 2008, until at least May 31, 2015. (Id. at ¶¶ 12-13).

Plaintiffs also allege that the terms of the Agreement and Declaration of Trust for the Operating Local #49 Engineers Health and Welfare Fund ("Welfare Trust Agreement") require Defendant Charps *and* Defendant Charpentier to make contribution to the Funds for each hour worked by employees covered by the CBAs. (Id. at ¶¶ 14-16).  Specifically, Plaintiffs allege that Defendant Charpentier executed a Participating Agreement with the Operating Engineers Local #49 Health and Welfare Fund ("Welfare Participating Agreement"), that bound Defendant Charps and Defendant Charpentier to the terms the Welfare Trust Agreement. (Id. at ¶ 14).

2

Plaintiffs allege that the terms of the Welfare Trust Agreement govern Defendant Charps and Defendant Charpentier's obligations to make contributions to the Health and Welfare Fund, (Id. at ¶ 15); that the terms of the Restated Agreement and Declaration of the Central Pension Fund of the International Union of Operating Engineers ("Central Pension Trust Agreement") governs Defendant Charps obligation to make contributions to the Central Pension Fund (Id. at ¶ 17); and, that the Restated Agreement and Declaration of Trust of the Local #49 International Union of Operating Engineers of Minnesota Apprenticeship and Training Program ("Apprenticeship Trust Agreement") governs Defendant Charps obligation to make contributions to the Apprenticeship and Training Program, (Id. at ¶ 18).

Plaintiffs allege that the Builders CBAs, the Welfare Trust Agreement, and the Central Pension Trust Agreement permit the Funds or their authorized agents to examine signatory employers' payroll and employment records whenever the Funds or their authorized agents deem it necessary in connection with the proper administration of the Funds, and require Defendant Charps and Defendant Charpentier to furnish all necessary employment and payroll records relating to employees covered by the CBAs upon request. (Id. at ¶ 25).

Plaintiffs allege that their authorized agent requested that Defendant Charps and Defendant Charpentier produce the complete payroll and employment records of all Defendants for the period of January 1, 2008, to the present; and that Defendant Charps and Defendant Charpentier breached the terms of the CBAs, the Welfare Trust Agreement, the Central Pension Trust Agreement, and the Apprenticeship Trust Agreement by refusing to produce the complete payroll and employment records of Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil. (Id. at Count I: Breach of Contract/Right to Audit). Plaintiffs also allege that Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil are alter egos of Defendant

3

Charps and/or Defendant Charpentier such that Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil are also bound by the CBAs. (Id. at Count II: Alter Ego).  Plaintiffs allege in the alternative, that all of the Defendants together form a joint venture, such that Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil are also bound by the CBAs. (Id. at Count III: Joint Venture/Joint Enterprise).  Finally, Plaintiffs allege that all Defendants are liable for liquidated damages for unpaid contributions that Defendants owe to the Funds pursuant to the CBAs. (Id. at Count IV: ERISA Damages).

Plaintiffs' Complaint prays for dispositive relief in the form of a Court order compelling all Defendants to produce for inspection and audit the following documents from January 1, 2008, to the present:

- The general ledger for all Defendants

- All payroll registers or journals

- All check registers or journals for all financial accounts

- All monthly account statements for all financial accounts

- All time cards

- All employee files

- All Internal Revenue 941 quarterly reports

- All Internal Revenue W-2 and W-3 forms

- Sequential canceled checks from Defendants' payroll accounts

- Sequential canceled checks from Defendants' checking accounts

- All Minnesota quarterly unemployment reporting forms and quarterly tax forms

- Any records deemed necessary for the performance of an audit by Plaintiffs' authorized agent.

4

(Id. at 13-14).

In addition, Plaintiffs seek an order enjoining Defendants to permit future inspections of records and audits and enjoining Defendants from failing or refusing to produce requested records in the future. (Id. at 14).  Finally, Plaintiffs seek a judgment for all unpaid contributions that Plaintiffs may discover during the audits they seek, along with costs, disbursements, and attorneys' fees. (Id. at 15).

On October 31, 2014, Plaintiffs served interrogatories and requests for production of documents on Defense counsel. (Court Aff. [Docket No. 25], ¶ 2, Exs. A, B, C). Defense counsel served responses on December 31, 2014. (Id. ¶ 4, Exs. D). Defendant Charps, Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil thereafter served supplemental answers to Plaintiffs' Interrogatories. (Id. at 9, Ex. I).

## II.   PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES, [DOCKET NO. 22]

Plaintiffs move the Court for an order:

(1) Overruling Defendants objections to the Plaintiffs' Interrogatories and Requests for Production of Documents;

(2) Compelling Defendants to serve supplemental responses to Plaintiffs' interrogatories;

(3) Compelling Defendants to serve supplemental responses to Plaintiffs' requests for production of documents that identify by bates number all documents responsive to each request;

(4) Compelling Defendants to serve a privilege log specifically identifying information and documents that Defendants have withheld on the basis of attorney-client privilege and work product doctrine;

(5) Compelling Defendants to produce any remaining documents responsive to Plaintiff's requests for document production in the format required by the Federal Rules of Civil Procedure; and,

(6) Awarding Plaintiffs their attorneys' fees incurred in bringing the motion to compel.

(Pls.' Mot. to Compel [Docket No. 22])

### A.   Standard of Review

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts construe the Rule broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence").

"[D]iscovery may not be had on matters irrelevant to the subject matter involved in the pending action[,]" and "'even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999) (quoting Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis omitted)). A discovery request seeks relevant material "unless it is clear that the information sought can have no possible bearing on the subject matter of the action." Scheffler v. Molin, No. 11-cv-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) (citing Mead Corp. v.

6

Riverwood Natural Res. Corp., 145 F.R.D. 512, 522 (D. Minn. 1992)). "'The party resisting production bears the burden of establishing lack of relevancy or undue burden.'" Scheffler, 2012 WL 3292894, at *6 (quoting St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000)).

> **B.     Analysis**

The Court's threshold inquiry with regard to discovery issues is whether the moving party seeks *discoverable* material. Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 635 (D. Minn. 2000) (citing Shelton v. American Motors, 805 F.2d 1323, 1326 (8th Cir. 1986)). Therefore, the Court first addresses the parameters of relevant discovery in the present case. The Court begins its analysis with Rule 26.

Pursuant to Rule 26, Plaintiffs are entitled to information and documents relevant to any claim(s) or defense(s) at issue in the present case. For the reasons that follow, Rule 26 necessarily limits the scope of discovery at this stage in the proceedings to the limited universe of information relevant to Plaintiffs' threshold claim that they are entitled in the first instance to conduct the requested audit (spanning January 1, 2008, to the present).

Plaintiffs' Complaint generally states that the present case is an action "to collect unpaid fringe benefit contribution payments." (Compl. [Docket No. 1], ¶ 8). To pursue the allegedly outstanding contributions, Plaintiffs' Complaint alleges that Plaintiffs are entitled to production of a number of employment and/or payroll records from Defendants.[2] (Compl. [Docket No. 1], at

---

[2] "The Plaintiffs' authorized agent requested that Charps Welding & Fabricating and Charpentier produce complete sets of payroll and employment records for Charps Welding & Fabricating, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas for the period of January 1, 2008 through the present ("Audit Period")." (Compl. [Docket No. 1], ¶ 34). "Charps Welding & Fabricating and Charpentier breached the terms of the CBAs, Welfare Trust Agreement, Central Pension Trust Agreement, and Apprenticeship Trust Agreement by refusing to produce payroll and employment records for Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas for the Audit Period." (Id. at ¶ 35). "Unless Charps Welding & Fabricating, Charpentier, Clearwater Energy Group, C & G Construction, and Alpha Oil & Gas are ordered to specifically perform the obligation to produce the records and permit the audit, and are enjoined from further obstruction of such procedure, the Plaintiffs will have no means of

Count I: Breach of Contract/Right to Audit). Plaintiffs are now explicitly seeking dispositive relief in the form of compelled discovery by way of production of documents Plaintiffs believe are necessary to conduct the demanded audit and to, as a result, uncover the existence of unpaid contributions.

The <u>right</u> to an audit, however, necessarily precedes the right to compel discovery by production of the documents necessary to perform the requested audit. Accordingly, directly at issue in Plaintiff's alter ego and joint venture claims, and implicit in Plaintiffs' breach of contract claim, regarding document production is the *threshold* claim that Plaintiffs are even entitled in the first instance to conduct the requested audits for which Plaintiffs now seek expansive document production. Defendants squarely dispute the alleged right to the audits requested of Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil.  Accordingly, at this stage, Plaintiffs necessarily bear the initial burden of demonstrating that they are even entitled to perform the requested audits. Whether Plaintiffs have the right to conduct the requested audits is a *threshold controlling issue*; Plaintiffs must obtain a favorable judgment from the Court on this initial issue before the Court even considers whether Plaintiffs are entitled to the universe of documents Plaintiffs allege are necessary to the actual performance of the audits. In the present motion, Plaintiffs place the cart before the horse, demanding as part of *discovery* the production of documents arguably needed to perform the requested audit before the Court has had the opportunity to determine whether Plaintiffs are even entitled to perform the requested audit in the first instance.

---

verifying the proper amounts due and owing to them[.]" (<u>Id.</u> at ¶ 37). "Plaintiffs demand judgment, joint and several, against the Defendants as follows: For an Order adjudging that Defendants are required to forthwith produce for inspection and audit the following [documents] of its payroll and employment records for the Audit period[.]" (<u>Id.</u> at 13-14).

Having determined that Rule 26 necessarily limits discovery *at this stage* to the limited universe of information and documents relevant to Plaintiffs' threshold claim that they are entitled to perform the requested audits, the Court will address the *nature* and *scope* of this limited universe of information.  In Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559 (1985) ("Central States"), the United States Supreme Court held that collective bargaining agreements and governing trust documents, construed in light of ERISA policies, articulate the scope and nature of a trustee's right to conduct an audit.  In Central States, the Supreme Court considered "whether an employer who participates in a multiemployer benefit plan that is governed by [ERISA] must allow the plan to conduct an audit involving the records of employees who the employer denies are participants in the plan." Id. at 561. The Supreme Court considered the "documents governing Central Transport's contractual relationship with Central States" – including the CBA and governing trust agreements – because *those documents* defined the employer's obligation to participate in and/or submit to an audit. Id. at 565. The Supreme Court held that the determination of whether a requested audit falls within the authority of the trustees is governed by the agreement of the parties "as outlined in the trust documents." Id. at 581.

> However, the [Central States] Court limited its holding by stating that the "auditing powers of a benefit plan are limited to prudent actions furthering the legitimate purposes of the plan." The Court also noted that the "right to demand access to employer records does not reach beyond what is appropriate for the proper administration of the plans.

DeMarco v. C & L Masonry, Inc., 891 F.2d 1236, 1240 (6th Cir. 1989) (internal citations omitted) (examining Central States).

Accordingly, in the present case, the universe of permissible discovery *at this stage* is necessarily limited to information and documents relevant to determining whether Plaintiffs are

entitled to perform the requested audits – namely, the CBAs, governing trust documents, and documents and/or information that may have a bearing on their interpretation − and the issues of alter ego and joint venture through which Plaintiffs seek to assert their alleged right to audit against Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil, which were not signatories to those documents.

With respect to Defendant Charps and Defendant Charpentier, Plaintiffs allege a breach of the pertinent contracts by refusing to provide the payroll and employment records of the other three Defendants.  (Complaint, [Docket No. 1], ¶¶ 34-35).  "In Minnesota, the elements of a breach of contract claim are: '(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to the right to demand performance by the defendant, and (3) breach of the contract by defendant.'" Toomey v. Dahl, No. 14-CV-3249 JNE/TNL, 2014 WL 5496617, at *12 (D. Minn. Oct. 30, 2014) (quoting Park Nicollet Clinic v. Hamann, 808 N.W.2d 828, 833 (Minn. 2011)).  Accordingly, with respect to Defendant Charps and Defendant Charpentier, at this juncture Plaintiffs are entitled to discovery of information and documents relevant to those issues.  In addition, because Plaintiffs have alleged that all of the Defendants are alter egos of each other or, in the alternative, form a joint venture, Plaintiffs' are also entitled to discovery from Defendant Charps and Defendant Charpentier of information and documents relevant to the factors courts consider when deciding whether alter egos or joint venture status exist.

Under Minnesota law, determining whether two corporations may be treated as alter egos of one another "requires (1) analyzing the reality of how the corporation functioned and the defendant's relationship to that operation, and (2) finding injustice or fundamental unfairness." Minnesota Power v. Armco, Inc., 937 F.2d 1363, 1367 (8th Cir. 1991).

> Factors considered significant in the determination include: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate

10

> formalities, nonpayment of dividends, insolvency of the debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

Id. (quoting Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., 283 N.W.2d 509, 512 (Minn. 1979)).

In Minnesota, "[a] joint venture requires proof of contribution, joint control, sharing of profits, *and* a joint venture contract." Ringier Am., Inc. v. Land O'Lakes, Inc., 106 F.3d 825, 828 (8th Cir. 1997) (citing Rehnberg v. Minnesota Homes, Inc., 236 Minn. 230, 52 N.W.2d 454, 457 (1952) (emphasis in Ringer)).

With respect to Defendant Clearwater, Defendant C&G, and Defendant Alpha Oil, consistent with the permissible scope of discovery as articulated above, Plaintiffs are entitled at this juncture only to discovery relevant to the factors considered by courts when deciding issues of joint venture and alter ego.

The parties also dispute whether the scope of relevant discovery should be temporally limited by the pertinent statute of limitations for recovery of plan contribution deficiencies, which Defendants assert is two years, pursuant to Minn. Stat. § 541.07(5), and Plaintiffs assert is six years, pursuant to Minn. Stat. § 541.05, Subd. 1. An assertion of the statute of limitations is an affirmative defense and, as such, a dispositive issue for which arguments are better directed to the presiding District Court Judge. See Sanders v. Dep't of Army, 981 F.2d 990, 991 (8th Cir. 1992) (noting that statutes of limitations provide an affirmative defense). At the discovery stage, it is sufficient to note that the mere fact that information pertains to a time period beyond a possibly applicable limitations period does not render it undiscoverable, so long as the request for such information is reasonable. See Glenn v. Williams, 209 F.R.D. 279, 282 (D.D.C. 2002) ("Although acts occurring before the relevant statute of limitations period may still be admissible

to prove a plaintiff's timely claim, the request must be reasonably limited."); Stanzler v. Loew's Theatre & Realty Corp., 19 F.R.D. 286, 288 (D.R.I. 1955) ("To the extent that it is not unreasonable and oppressive, it is permissible and proper to compel answers concerning defendants' activities for some period beyond the statutory period of limitations but such period cannot be extended indefinitely.").  In the present case, as the statute of limitations is in dispute, it is reasonable for the temporal scope of otherwise relevant discovery to be the longer of the disputed statutory periods, in this case six-years.

The parties similarly dispute the relevant geographic scope of discoverable information. As noted above, any entitlement that the Plaintiffs may have to ultimately audit any of the individual Defendants (assuming a particular Defendant is found to be subject to any of the arguably applicable agreements at issue) will necessarily depend on the construction of the governing agreements. Cent. States, 472 U.S. at 565. Plaintiffs allege that the geographical scope of their right to audit the Defendants is governed by the terms of the Builders CBAs, the Welfare Trust Agreement, and the Central Pension Trust Agreement. (Complaint, [Docket No. 1], ¶ 25). Although the interpretation of the terms of those agreements is again a potentially dispositive issue, and any arguments pertaining thereto are better addressed to the presiding District Court Judge, the Court notes that the only one of those agreements presently in the record before the Court on the present motion is the series of Builders CBAs, which Plaintiffs acknowledge govern only contributions for work performed in Minnesota.  Accordingly, for the purposes of resolving the present discovery motion only, the Court concludes that Plaintiff has only demonstrated the potential geographical threshold relevance of documents relating to work performed by the Defendants in Minnesota.

### C.      Plaintiffs' Discovery Requests

Plaintiffs' discovery efforts in the present case are, simply put, overreaching.  Rather than focus discovery on the necessary universe of information relevant to proving Plaintiffs' right to perform the requested audits of all Defendants regardless of signatory status to the governing agreements, Plaintiffs seemingly appear to be trying to circumvent this necessary, threshold determination by attempting to obtain all of the information necessary to *perform an audit via discovery efforts*. An audit is, simplistically, a records review, and Plaintiffs attempt to perform such records reviews via *discovery efforts* before the Court has had the opportunity to make a determination regarding the dispositive issue of whether Plaintiffs are even entitled to perform said audits/records reviews in the first instance. By the present motion to compel, Plaintiffs inappropriately seek *dispositive relief* cloaked in discovery requests. The Court has not yet determined whether Plaintiffs are even entitled to perform the requested audits of all Defendants, and, therefore, the Court will not permit Plaintiffs to push through discovery with a wide net in an attempt to collect as much information and as many documents as possible without purpose or focus. As stated, at this juncture, Plaintiffs are *only* entitled to the limited universe of information relevant to proving Plaintiffs' claims that they are entitled to perform the requested audits in the first instance.

### 1.      Plaintiffs' Discovery Requests

In light of the foregoing analysis in Section II.B, the Court will now address the parties' arguments with regard to the discovery requests at issue in turn.

### 2.      Plaintiffs' Interrogatories

**Interrogatory 1:** Identify all of each of Defendants' Employees from January 1, 2008 through the present, and for each, (a) identify their dates of employment, (b) their job title and primary responsibilities, (c) any person to whom they report(ed) and any

13

person that report(ed) to him/her including such period of the reporting relationship.

**Defendants' Common Response:** Defendant objects to Interrogatory No. 1 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

**Defendant Charpentier's Individual Response**: Subject to and without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendant Charps Individual Response**: Subject to and without waiving the foregoing objections, Defendant answers as follows: As to Defendant, it will produce documents in response to Plaintiffs document requests which identify the employees of Defendant and providing their dates of employment.

**Defendant Alpha Oil's Response**: Subject to and without waiving the foregoing objections, Defendant answers as follows. Defendant is not a signatory to the agreement upon which Plaintiffs' claims are based and will not produce the requested information.

While the information Plaintiffs seek in Interrogatory 1 may ultimately be relevant to Plaintiffs' claims for recovery of unpaid contributions, to the extent the information pertains to employees found to be covered by the CBAs, as the Court has already set forth, the operative inquiry at this juncture of the case is whether the Plaintiffs are even entitled to conduct an audit in the first instance. However, Plaintiffs have not made the requisite threshold showing of relevance that the information Plaintiffs seek relates to the factors courts consider when deciding claims of breach of contract as to the right to audit any of the Defendants on the basis of alter-ego or joint venture theories. Nevertheless, Defendant Charps has represented that it will produce responsive documents and the Court will hold Defendant Charps to its representation. However, because Plaintiffs make no threshold showing of relevance as to the other Defendants,

the Court will not order a supplemental response *beyond Defendant Charps' own concessions*.

Accordingly, the Court grants in part and denies in part, the motion with respect to Interrogatory

1.

> **Interrogatory 2**: Identify each person who has, claims to have, or who Defendants believe have, knowledge of the facts described in or relating to Plaintiffs' Complaint, and set forth the general substance of each person's knowledge as it relates to this action.
>
> **Defendants' Common Answer:** Defendant objects to Interrogatory No. 2 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant refers Plaintiffs to the individuals identified in Defendants' initial disclosures. Until such time as Plaintiffs provide more than mere generalized allegations bereft of any of the detail, Defendant is not in a position to provide specific facts in defense to nebulous allegations.
>
> **Defendant Charps, Clearwater, C&G, and Alpha Oil's Common Additional Answer:** The individual signing these Interrogatory Answers on behalf of Defendant also has information relating to Plaintiffs' Complaint and the manner in which the various defendant were separately and legitimately operating entities without any intent to evade union pension fund obligations.
>
> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Supplemental Answer:** In addition to the individuals previously identified and the individuals identified elsewhere in Defendants interrogatory responses, the following individuals have knowledge related to the subject matter of this dispute. All of whom can be reached through counsel for Defendants.
>
> [Defendants identify individuals]

Plaintiffs have made a threshold showing that the information they seek in interrogatory 2

regarding individuals knowledgeable about the operations of Defendants is relevant to their

theories of alter ego and joint venture. Plaintiffs argue that Defendants' claims of overbreadth,

undue burden, and the likelihood of discovering admissible evidence are mere boiler plate

objections and, as such, cannot succeed. The Court agrees. See Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 515 (D. Minn. 1992) ("Courts have consistently held that an objection to a discovery request cannot be merely conclusory, and that intoning the 'overly broad and burdensome' litany, without more, does not express a valid objection.").  As Plaintiff correctly argues, Defendants' provided answers are only partially responsive because they fail to identify the substance of each person's identified knowledge regarding this action.  The Court grants Plaintiff's motion for a supplemental response with respect to Interrogatory 2.

**Interrogatory 6:** With regard to the business operation of each Defendant please state: (a) all business and facility addresses, including mailing addresses, post office box numbers(s)/location(s) and physical office location and the time periods which each Defendant occupied each office and facility location and used each mailing address; (b) the business telephone number(s), directory listing(s), and facsimile number(s) of all locations; the geographical area where each Defendant performed or performs work; (d) all business or individuals to whom each Defendant rents, leases, or otherwise provides office space and state the calendar periods and compensation paid for such leases or rentals.

**Defendant Charpentier's Response:** Defendant objects to Interrogatory No. 6 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Responses:** Defendant objects to Interrogatory No. 6 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant answers as follows.
[Defendants each list addresses for locations and states in which each Defendant does business]

**Defendant Charps, Clearwater, C&G, and Alpha Oil's Supplemental Responses:**

[Each Defendant lists phone numbers for its offices]

The information Plaintiffs seek in Interrogatory 6 is relevant to the Defendants' relationship to each other and, as such, to Plaintiffs' theories of alter ego and joint venture. Defendants' objections of overbreadth, undue burden, and the likelihood of discovering admissible evidence are mere boiler plate objections and the Court will overrule those objections as such.  See Mead Corp., 145 F.R.D. at 515.  In addition, as Plaintiff argues, Defendant's provided answers are only partially responsive in that they fail to identify the time periods for each office location, do not provide all requested telephone and facsimile numbers, and do not provide the geographic location where all work during the requested period was performed.  The Court grants Plaintiff's motion for a supplemental response with respect to Interrogatory 6.

> **Interrogatory 7:** With regard to the day-to-day business operations of each Defendant, describe in detail: (a) the type of business each Defendant engages in and the nature of each Defendants' business operations, including but not limited to, what type of services or products are offered by each Defendant; (b) the banking institution, branch location, and account number(s) of all bank accounts including but not limited to payroll account(s), nature/purpose of each account and all individuals signatory to each account; (c) where and by whom each Defendants' accounting records are kept and identify the principal accountant and/or bookkeeper and each Defendants' payroll preparer; (d) where and by whom each Defendants' corporate business records are kept; and (e) each Defendants' carrier and policy number for each Defendants' workers' compensation insurance and the date(s) of purchase.

> **Defendants' Common Response:** Defendant objects to Interrogatory No. 7 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as follows.

17

**Charpentier's Individual Response:** The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendant Charps, Clearwater, C&G, and Alpha Oil's Responses:** The Defendant refers Plaintiffs to the Defendants' responses to Plaintiffs' document requests, which provide further information in response to Interrogatory 7(a). The various other defendants offer distinct services within different regions. A summary is provided below:

[Descriptions of different services provided by Defendants Clearwater, Alpha Oil, Charps, and C&G].

**Defendant Charps, Clearwater, C&G, and Alpha Oil's Supplemental Responses:**

[Defendants list bank account and corporate record information]

Plaintiffs argue that Defendants objections of overbreadth, undue burden, and the likelihood of discovering admissible evidence are mere boiler plate objections and, as such, cannot succeed. Plaintiffs do not however address the sufficiency of the substantive responses which are provided notwithstanding the prefatory objections. Although Defendants responses do include mere boiler plate, Plaintiffs overlook the fact that Defendants' responses and supplemental responses also appear to fully provide the information sought in Interrogatory 7. The Court denies the motion with respect to Interrogatory 7.

**Interrogatory 8:** With respect to professional advisors, identify, including the years and terms of employment of each, all professional advisors each Defendant has consulted or employed, including but not limited to, those who may have knowledge of the billing practices, employment practices, job bidding practices, employee benefits, incorporation and capitalization of each Defendant.

**Defendant Charpentier's Response:** Defendant objects to Interrogatory No. 8 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as

18

follows.  The Interrogatory appears to be directed and relevant only to the corporate defendants.  See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Responses:** Defendant objects to Interrogatory No. 8 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence and requests information protected by the Attorney-Client Privilege or Work-product doctrine.

**Defendants Charps' and Clearwater's additional response:**

[Defendants Charps and Clearwater identify advisors, their capacities, and the term during which they advised the Defendant].

The information Plaintiffs seek in Interrogatory 8 is relevant to Plaintiffs' theories of alter ego and joint venture as Plaintiffs seek information related to the functioning of each of the Defendants. The Court will overrule Defendants' objections of overbreadth, undue burden, and the likelihood of discovering admissible evidence as mere boiler plate objections unsupported by argument. See Mead Corp., 145 F.R.D. at 515. In their motion papers, Plaintiffs asked the Court to order Defendants to provide a privilege log regarding the information that Defendants assert is protected by privilege. Prior to the motions hearing, Defendants did provide Plaintiffs with a privilege log.  However, at the motion hearing, Plaintiffs argued that the provided privilege log was inadequate and asked the Court to order the Defendants to provide a supplemental, more detailed privilege log.

Defendants' submitted privilege log contains twenty one listed items, and describes those items by date created, the names—by first initial and last name—of the author or sender and the recipient, generic descriptions of each item identifying the type of document and the general topic each item addresses, whether the document has an attachment, and whether Defendants are asserting attorney-client privilege, the attorney work-product doctrine, or both. At the motions

hearing, Plaintiffs argued that the privilege log did not contain enough specific information regarding the documents listed in order to evaluate the propriety of the privilege asserted for each claim.

Attorney-Client Privilege

"In [a] diversity case, [federal courts] apply . . . state law to resolve attorney-client privilege claims." Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000). Under Minnesota law, the elements of the attorney-client privilege are: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except the privilege may be waived." Kobluk v. University of Minn., 574 N.W.2d 436, 440 (Minn. 1998); see also Minn. Stat. § 595.02(1)(b).

On the present record, Defendants have not shown in the privilege log provided that the materials in question are subject to the attorney-client privilege. In Minnesota the attorney-client privilege only covers communications between the client and the attorney (or, arguably, their agents) for the purposes of seeking and providing legal advice. Nothing in Defendants' submitted privilege log specifically suggests or identifies that any of the materials described in entries 1-21 contain communications either seeking or dispensing legal advice. It appears from reviewing the privilege log that each document was created by or sent from or to, someone who may possibly be one of Defendants' attorneys. The fact that the documents may have been sent to or received by Defendants' counsel *might* mean that they are protected from discovery by the attorney-client privilege, see infra, but it does not mean that they are *per se* protected by the attorney-client privilege. Cf. Simon v. G.D. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987) (in a diversity case

20

applying Minnesota law, observing that "a number of courts have determined that the attorney-client privilege does not protect client communications that relate only business or technical data" (citing First Wis. Mortgage Trust v. First Wis. Corp., 86 F.R.D. 160, 174 (E.D. Wis. 1980); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 515 (D. Conn. 1976) ("legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality")). In the present case, the plain language of Defendants' privilege log does not show clearly that any of the documents described in entries 1-21 are described in such a way that this Court can conclude that their primary purpose was to gain or provide legal advice. Consequently, on the present record, the Court cannot determine whether any of these documents is shielded from discovery by attorney-client privilege.

Attorney Work Product

Although this Court applies Minnesota state law to resolve assertions of attorney-client privilege, "[federal courts] apply federal law to resolve [attorney-]work product claims." Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000). The attorney work product doctrine was first articulated in Hickman v. Taylor, 329 U.S.  495 (1947), and later expressed in the Federal Rules of Civil Procedure, which provide:

> *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and,
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). In addition, the Federal Rules provide that a party claiming that the attorney-work product doctrine shields material from discovery "must (i) expressly make the

21

claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—*and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim*." Fed. R. Civ. P. 26(b)(5)(A) (emphasis added).

"'The work-product immunity is not lost . . . if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation by a party to the present litigation.'" Johnson v. Bd. of Evangelical Lutheran Church in Am., No. 11-cv-23, 2012 U.S. Dist. LEXIS 174230, at *14 (D. Minn. Sept. 5, 2012) (Brisbois, M.J.) (citing Western Trails, Inc. v. Camp Coast to Coast, Inc., 139 F.R.D. 4, 9 (D.D.C. 1991) (citing, in turn, Eckert v. Fitzgerald, 119 F.R.D. 297, 299 (D. D.C. 1988) ("The literal language of [Rule 26(b)(3)] protects material prepared by or for any litigation or trial so long as it was prepared by or for a party to the subsequent litigation."))).

"[T]he scope of the work-product protection is broader than that of the attorney-client privilege since items protected by the work-product doctrine are not confined to confidential communications between an attorney and a client, but extends protection to all 'documents and tangible things' that have been prepared in anticipation of litigation, or for Trial." Onwuka v. Federal Express Corp., 178 F.R.D. 508, 512 (D. Minn. 1997) (Erickson, M.J.) (citing In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977)). Whether documents were prepared in anticipation of litigation, and therefore are subject to work product protection, is a factual determination. Bieter Co. v. Blomquist, 156 F.R.D. 173, 180 (D. Minn. 1994) (Alsop, J.).

> To determine whether documents were prepared in anticipation of litigation:
> The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product

immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. G.D. Searle & Co., 816 F.2d 397 (8th Cir. 1987) (quoting 8 Wright & Miller, Federal Practice and Procedure 2024, at 198-99 (2970)). The party that invokes the work product doctrine to shield its materials from discovery has the burden of demonstrating that the work product doctrine applies. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 925 (8th Cir. 1997).

The Eighth Circuit recognizes two distinct types of work product: ordinary or "fact work product," and "opinion work product":

> Fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings, [33 F.3d 342, 348 (4th Cir. 1994)]; see also In re John Doe, 662 F.2d 1073, 1076 (4th Cir. 1981) (defining fact work product). Opinion work product, which does contain the fruit of an attorney's mental processes, is "more scrupulously protected as it represents the actual thoughts and impressions of the attorney." In re Grand Jury Proceedings, 33 F.3d at 348.

In re Grand Jury Proceedings #5, 401 F.3d 247, 250 (8th Cir. 2004). In addition, "according to the great weight of authority, while Rule 26(b)(3) affords protection for documents and tangible things, the underlying facts are not protected by the work-product doctrine." Onwuka, 178 F.R.D. at 512-13 (collecting cases).

In the present case, Defendants have failed to provide a sufficiently detailed privilege log in the manner required by the Federal Rules of Civil Procedure here in order for the Court to determine whether any of the documents listed do indeed fall within the protection of the attorney-work product doctrine. The Court grants the motion with respect to Interrogatory 8 as discussed above. In addition, Defendants are required to resubmit an amended sufficiently detailed privilege log consistent with the foregoing discussion.

**Interrogatory 9:** With regard to the principals of each Defendant, please identify the incorporators, the owners and/or shareholders (both current and/or prior ownership), each owner/shareholders [sic] respective ownership interests and percentages, the dates upon which each individual acquired corporate stock or transferred corporate stock and the consideration received by each Defendant in exchange for such stock, each person designated as an officer and/or director, the date(s) each person was designated as such, and the years of employment of each such individual, and the places and dates of each of Defendants' directors meetings from January 1, 2008, to the present.

**Defendant Charpentier's Response:** Defendant objects to Interrogatory No. 9 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants.  See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Response:** Defendant objects to Interrogatory No. 9 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant answers as follows.

[Defendants list the current ownership of each company]

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Supplemental Response:** Defendant restates the objections listed above.  Subject to and without waiving the foregoing, Defendant states as follows:  Defendant has produced records in connection with its initial disclosures that provide responsive information and additional documents will be produced to provide that information as the case progresses and Defendant continues to produce documents on a rolling basis.

Information relating to the incorporation and ownership is directly relevant to Plaintiffs' theories of alter ego and joint venture as to the entity Defendants, but not relevant to Defendant Charpentier.  The Court will overrule Defendants' overbreadth, undue burden, and the likelihood of discovering admissible evidence as unsupported boilerplate objections. See Mead Corp., 145

F.R.D. at 515. In addition, the entity Defendants have indicated that they will provide responsive

documents and the Court will hold those Defendants to those representations.  Accordingly, the

Court grants in part and denies in part the motion with respect to Interrogatory 9.

> **Interrogatory 10:** State whether the Defendants had or have any common or shared employees or leased employees and identify each by name and respective employment dates those common employees transferred between Defendants.

> **Defendant Charpentier's Response**: Defendant objects to Interrogatory No. 10 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it makes inquiries with respect to employees not working in areas where the members of Operating Engineers Local # 49 work. Subject to and without waiving the foregoing objections, Defendant answers as follows.  The Interrogatory appears to be directed and relevant only to the corporate defendants.  See Interrogatory Answers of the individual corporate defendants.

> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to Interrogatory No. 10 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it makes inquiries with respect to employees not working in areas where the members of Operating Engineers Local # 49 work. Subject to and without waiving the foregoing objections, Defendant answers as follows, it was not the typical practice of the various defendants to share or lease employees.  The Defendant is in the process of determining if any employees were shared or leased during the relevant period in the areas where the Operating Engineers Local #49 work and will update this response once the analysis has been completed.

> **Interrogatory 11:** State whether Defendants had or have any common or shared supervisory or management personnel, including leased individuals, and identify each.

> **Defendant Charpentier's Response:** Defendant objects to Interrogatory No. 11 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it makes inquiries with respect to employees not working in areas where the members of Operating Engineers Local # 49 work. Subject to and

without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to Interrogatory No. 11 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent it makes inquiries with respect to employees not working in areas where the members of Operating Engineers Local # 49 work. Subject to and without waiving the foregoing objections, Defendant answers as follows, it was not the typical practice of the various defendants to share or lease employees. The Defendant is in the process of determining if any employees were shared or leased during the relevant period in the areas where the Operating Engineers Local #49 work and will update this response once the analysis has been completed.

**Interrogatory 13:** With regard to each Defendant's customers, identify where each Defendant advertises for customer business, all customers that one Defendant has referred to another Defendant, and all customers that now or formerly were a customer of another Defendants.

**Defendant Charpentier's Response**: Defendant objects to Interrogatory No. 13 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to Interrogatory No. 13 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, the Defendants have separate business niches, separate web-sites, separate promotional materials and do not have a system for exchanging customer referrals. Defendants will provide copies of their respective advertising materials and documents identifying their customers and related relevant customer information in response to Plaintiffs' document requests.

**Interrogatory 14:** State whether any Defendants share or have shared and/or rent(ed) and/or leased any Defendants' equipment, including but not limited to vehicles, supplies, office equipment, machinery and tools, and identify all such equipment, the title holder and location.

**Defendant Charpentier's Response**: Defendant objects to Interrogatory No. 14 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant answers as follows.  The Interrogatory appears to be directed and relevant only to the corporate defendants.  See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to Interrogatory No. 14 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant does not generally share equipment, vehicles, machinery or tools with the other various Defendants. Defendant will provide documents from which relevant information responsive to this request can be obtained.

**Interrogatory 15:** With regard to assets, identify amounts involved, reasons for, consideration given and dates of transfer of any funds, assets, equipment, and property between Defendants.

**Defendant Charpentier's Response**: Defendant objects to Interrogatory No. 15 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Defendant answers as follows.  The Interrogatory appears to be directed and relevant only to the corporate defendants.  See Interrogatory Answers of the individual corporate defendants.

**Defendants Charps, C&G, and Alpha Oil's Common Response**: Defendant objects to Interrogatory No. 15 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant does not generally share equipment, vehicles, machinery or tools with the other various Defendants.

>Defendant will provide documents from which relevant information responsive to this request can be obtained.
>
>**<u>Defendant Clearwater's Response</u>**: Defendant objects to Interrogatory No. 15 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant does not generally share equipment, vehicles, machinery or tools with the other various Defendants.

The information Plaintiffs seek in Interrogatories 10, 11, 13, 14 and 15 is relevant, with respect to the entity Defendants, as to the issue of shared resources and customers and, as such, is relevant to Plaintiffs theories of alter ego and joint venture. Plaintiffs argue that Defendants claims of overbreadth, undue burden, and the likelihood of discovering admissible evidence are mere boiler plate objections and, as such, cannot succeed. Even though Plaintiffs are correct that Defendants' objections are mere boilerplate, Plaintiffs overlook that, except for Defendant Clearwater's response to Interrogatory 15, the entity Defendants represents that they are in the process of obtaining responsive information and will provide said information.  The Court will hold the entity Defendants to those representations. The Court will also overrule Defendant Clearwater's objections as to Interrogatory 15. The Court grants the motion as to the entity Defendants and denies the motion as to Defendant Charpentier with respect to Interrogatories 10, 11, 13, 14, and 15.

>**<u>Interrogatory 12:</u>** With regard to each Defendant's subcontractors, identify all subcontractors hired or employed by each Defendant from January 1, 2008, to the present, the date of each such subcontracting relationship, the job sites and dates where each subcontract was performed, the type of work/service each subcontractor performed, and whether each such contractor was union affiliated.
>
>**<u>Defendant Charpentier's Response</u>**: Defendant objects to Interrogatory No. 12 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to

lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendant answers as follows. The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendant Charps Response:** Defendant objects to Interrogatory No. 12 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, documents will be produced in response to Plaintiffs' discovery requests that provide the relevant information regarding Defendants' subcontracting relationships.

**Defendant Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to Interrogatory No. 12 as overly broad and unduly burdensome and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs argue that Defendants' objections of overbreadth, undue burden, and the likelihood of discovering admissible evidence are mere boiler plate objections and, as such, cannot succeed. However, even though Plaintiffs are correct and Defendants objections are mere boiler plate, Plaintiffs have failed to establish the necessary showing of relevance of the information they seek in Interrogatory 12 to the threshold issues of breach of contract through alter ego and joint venture. Nevertheless, Defendant Charps has represented that it will produce responsive documents and the Court will hold Defendant Charps to its representation. The Court grants the motion as to Defendant Charps and denies the motion as to the remaining Defendants with respect to Interrogatory 12.

**Interrogatory 16:** To the extent not already disclosed in response to interrogatories above, identify all material facts and documents upon which you rely to establish each defense asserted in your answer.

**Defendant Charpentier's Response**: Defendant objects to Interrogatory No. 16 as overly broad and unduly burdensome. Plaintiffs have made broad and conclusory allegations with respect

29

to the entirety of Plaintiffs [sic] operations, the day-to-day business of the various defendants and the various Defendants' intent. Subject to and without waiving the foregoing objections, Defendant answers as follows.  The Interrogatory appears to be directed and relevant only to the corporate defendants. See Interrogatory Answers of the individual corporate defendants.

**Defendant Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to Interrogatory No. 16 as overly broad and unduly burdensome. Plaintiffs have made broad and conclusory allegations with respect to the entirety of Defendants' operations, the day-to-day business of the various defendants and the various Defendants' respective intent. Defendant has separate and distinct operations from the other various defendants, has not had an intent to evade any union pensions fund obligations and its business records substantiate that fact. However, this fact does not entitled Plaintiffs to an unrestricted review of the entirety of all of the Defendants' business records.  Nor can Defendant fully articulate its defenses to Plaintiffs' allegations, which at this point are little if anything more than resuscitations [sic] of legal elements of claims and mere speculation.  The Interrogatory is improper in that it requests the Defendant to summarize all facts related and documents involved in the defense of a complex case with thousands upon thousands of records that demonstrate the separateness of the various defendants and the absence of the existence of the facts to substantiate Plaintiffs' claims.

In Interrogatory 16, Plaintiffs seek the identification of facts and information on which Defendants rely in asserting the defenses alleged in their Answer. The affirmative defenses Defendants assert in their Answer are issues that Defendants themselves have indicated that they will rely on in the present case. As such, Plaintiffs have established the threshold showing of relevance. In addition, Defendants only generically object that Plaintiff's interrogatory is overly broad and unduly burdensome.  Such boiler plate objections are insufficient to oppose discovery of relevant information. See Mead Corp., 145 F.R.D. at 515. Further, as Plaintiffs correctly argue, Defendants' responses to Interrogatory 16 are not responsive.  The Court grants the motion as to all Defendants with respect to Interrogatory 16.

3.   **Document Requests**

**Document Request 1:** A data export of general ledger transactions from your accounting software from January 1, 2008, to the present, or if the same is not maintained in electronic form, the functional documentary equivalent.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad and not reasonably likely to lead to admissible evidence. The Plaintiffs' request for each and every financial transaction of each of the Defendants as entered on a general ledger is an abuse of the discovery process and is not properly tailored to seek relevant information regarding any of the Defendants.

**Document Request 6:** Copies of your bank statements from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 7:** Copies of your monthly financial statements from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 8:** Copies of your annual financial statements, prepared by your outside CPA, or if not so created, by any other individuals, from January 1, 2008, to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 9:** Copies of your state and federal corporate income tax returns from 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

Plaintiffs have made a threshold showing in support of their document requests 1, 8, and 9 that the general ledgers, monthly financial statements, and tax returns of the Defendants are relevant to the Plaintiffs' theories of joint venture and alter ego, to the extent the requested documents would show the presence or absence of capitalization for corporate undertakings, see Minnesota Power, 937 F.2d at 1367, and evidence of contribution and sharing of profits, see Ringier, 106 F. 3d at 828. Plaintiffs have made a similar threshold showing of relevance with respect to the information they seek in document requests 6 and 7.  In addition, Defendants claims of overbreadth, undue burden, and the unlikelihood of discovering admissible evidence are mere boiler plate objections unsupported by any specific argument.  Such unsupported objections are insufficient to oppose the discovery of relevant information. See Mead Corp., 145

F.R.D. at 515. Accordingly, the Court grants the motion with respect to document requests 1, 6, 7, 8, and 9.

> **Document Request 2:** A data export of your master payroll files from January 1, 2008 to the present, or if the same is not maintained in electronic form, the functional documentary equivalent.
>
> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.
>
> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Defendant does not have "payroll master files."
>
> **Document Request 3:** A data export of your payroll registers from January 1, 2008, to the present, or if the same is not maintained in electronic form, the functional documentary equivalent.
>
> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.
>
> **Defendant Charps' Response:** Defendants object to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Defendant will provide payroll records for each of its Operating Engineers Local # 49 employees at a mutually agreeable time in a mutually agreeable format.
>
> **Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendants object to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.
>
> **Document Request 10:** Copies of your payroll tax returns from 2008 to the present.
>
> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the

request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendants object to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Subject to and without waiving the foregoing objection, Defendant will provide the requested information for each of its employees who are members of Operating Engineers Local # 49 employees.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 20:** Any and all documents identifying or listing the type of work performed by employees of each Defendant and their wage rates from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant will produce relevant information identifying its employees, their job category and wage rates in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 21:** Any and all documents identifying any subcontractor hired by or on behalf of and/or paid by each defendant, including but not limited to subcontracts, invoices, proposals, bids, and canceled checks from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the

request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant will produce relevant information identifying its employees, their job category and wage rates in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 38:** Any and all documents relating to each Defendants' employee's health insurance policy and a list of employees who are participants.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Defendant will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

While some of the information Plaintiffs seek in Document Requests 2, 3, 10, 20, 21, and 38 may be relevant to Plaintiffs' prayer for relief by way of recovery of unpaid plan contributions to the extent that Plaintiffs seek information regarding individuals whose work is covered by the CBAs, that issue depends on Plaintiffs *first* establishing their <u>right</u> to audit the Defendants to assess the existence of any unpaid contributions. The information Plaintiffs seek in document requests 2, 3, 10, 20, 21, and 38 is generally <u>not</u> as clearly relevant to the factors to

be considered when assessing Plaintiffs' claims of breach of contract, alter ego, or joint venture. Nevertheless, Defendant Charps has represented that it will provide responsive documents for document requests 3, 10, 20, 21, and 38, and the Court will hold Defendant Charps to that representation.  Accordingly, the Court denies the motion with respect to document request 2. With respect to document requests 3, 10, 20, 21, and 38 the Court grants the motion as to Defendant Charps and denies the motion as to the other Defendants.

**Document Request 4:** A data export of your job cost detail from January 1, 2008, to the present, or if the same is not maintained in electronic form, the functional documentary equivalent.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 5:** A data export of your job estimates from January 1, 2008, to the present, or if the same is not maintained in electronic form, the functional documentary equivalent.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 11:** Copies of your job files from January 1, 2008, to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the

36

request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

The information Plaintiffs seek in document requests 4 and 5 is relevant to the factor of sufficient capitalization for corporate undertakings and, as such, to the threshold liability issue of breach of contract through alter ego and joint venture. See Minnesota Power, 937 F.2d at 1367. Similarly, the documents Plaintiffs seek in document request 11 are relevant to the issues of contribution and joint control involved in Plaintiffs' theory of joint venture, see Ringier, 106 F. 3d at 828, and how the companies may have functioned in relationship to each other on the theory of alter ego, see Minnesota Power, 937 F.2d at 1367. Accordingly, Plaintiffs have made the threshold showing of relevance with regard to the documents they seek through those requests. Defendants' objections of overbreadth, undue burden, and the unlikelihood of discovering admissible evidence are unsupported by specific argument and, as such, are insufficient to oppose production of relevant discoverable information. See Mead Corp., 145 F.R.D. at 515. Accordingly, the Court grants the motion with respect to document requests 4, 5, and 11.

**Document Request 12:** All documents upon which you rely or relied upon in preparing your Answer and denying Plaintiffs' claims.

**Defendants' Common Response:** Defendant objects to the request as vague and ambiguous to the extent it seeks information protected by Attorney-Client privilege and Work-Product doctrine. Subject to and without waiving the foregoing objection, Defendant did not rely upon any specific documents when preparing his Answer to Plaintiffs' claims.

> **Document Request 14:** Any and all other documents identified, reviewed, used or reference in answering Plaintiffs' interrogatories served contemporaneously herewith.
>
> **Defendant Charpentier's Response:** Defendant objects to the request as vague and ambiguous and to the extent it seeks information protected by Attorney-Client privilege and the Work-Product doctrine.
>
> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as vague and ambiguous and to the extent it seeks information protected by Attorney-Client privilege and the Work-Product doctrine. Subject to and without waiving the foregoing objection, Defendant will provide any documents specifically referenced in its response to Plaintiffs' interrogatories.

In document request 12, Plaintiffs seek to identify the source documents that provided the information that Defendants relied on to support the formulation of the denials and defenses set forth in their Answer to Plaintiffs' Complaint. As such, the documents Plaintiffs seek in document request 12 are analogous to permissible contention interrogatories which seek the identification of material facts upon which a party relies in support of their claim or defense. The documents Plaintiffs seek in document request 14 include a request to identify source documents the Defendants relied on in answering both relevant and irrelevant discovery interrogatories.

Defendants' boiler plate objections that the document requests are vague and ambiguous are not supported by specific argument and, therefore, are insufficient to oppose the requested production. See Mead Corp., 145 F.R.D. at 515.

For the foregoing reasons, the Court grants the motion with respect to document request 12. With respect to that document request, Defendants are required to produce responsive documents requested that are not protected by privilege.[3] The Court also grants in part and

---

[3] As discussed with respect to Interrogatory 8, Defendants are ordered to provide a supplemental privilege log.

denies in part the motion with respect to document request 14. In response to that document request, Defendants are required to produce the documents not covered by privilege that they relied upon in responding to relevant interrogatories and documents requests as identified by the Court in this Order, and for those areas in which Defendants have also otherwise agreed to produce information and documents.

> **Document Request 16:** Copies of all of your corporate records, including all incorporation related documents, amendments, by-laws, meeting minutes, stock certificates, and any other records suggesting defendants maintained an independent corporate existence.

> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

> **Defendant Charps Response:** Defendant will produce all such documents at a mutually agreeable time, location and format.

> **Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome, and not reasonably likely to lead to admissible evidence. Copies of the corporate records have been produced in connection with the Defendants' initial disclosures.

> **Document Request 34:** Any and all documents relating to or referring to communications made between Defendants, including, but not limited to correspondence, notes and memoranda from January 1, 2008 to the present.

> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad and not reasonably likely to lead to admissible evidence. The Plaintiffs [sic] request for each and every communication between Defendant is an abuse of the discovery process asserted to vex, harass, and annoy the Defendants and is in [sic] not properly

tailored to seek relevant information regarding any of the Defendants.

The documents Plaintiffs seek in document requests 16 and 34 are relevant to the issue of alter ego only to the extent those documents pertain to the factors a court considers in determining that issue. See Minnesota Power, 937 F.2d at 1367 (listing insufficient capitalization, failure to observe corporate formalities, nonpayment of dividends, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings as factors courts consider in determining alter-ego status). Those documents are similarly relevant to the issue of joint venture only to the extent such documents pertain to the elements a party must show to establish a joint venture. See Ringier, 106 F.3d at 828 ("A joint venture requires proof of contribution, joint control, sharing of profits, *and* a joint venture contract.").

To the extent that Plaintiffs seek by document request 34 all communications ever and of any type between the Defendants, this request as drafted seeks documents containing information not pertinent to those factors as well, and therefore Plaintiffs' document request 34 is overbroad.

However, with respect to document request 16, the entity Defendants have represented that they have and will produce corporate records. The Court will hold the entity Defendants to those representations.

The Court denies the motion with respect to document request 16 as to individual Defendant Charpentier. The Court grants the motion with respect to document request 16 as to the entity Defendants. The entity Defendant shall produce to Plaintiffs any corporate records that they have already agreed to produce and any remaining corporate records pertaining to the issues of alter ego and joint venture as discussed above.

The Court grants in part and denies in part the motion with respect to document request 34 as to all Defendants. Defendants shall be required to produce responsive communication documents containing information relevant to the theories of alter ego and joint venture.

**Document Request 17:** Copies of any management or foremen meeting notes or minutes from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 19:** Any and all documents identifying suppliers/material providers used and/or paid by each Defendant, including purchase orders and canceled checks from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:**  Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence. Subject to and without waiving the foregoing objections, Defendant will produce relevant information identifying its suppliers/materials providers and payments made to the same.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 22:** To the extent not maintained in the above-requested job files, any and all documents related to jobs performed and/or worked by each Defendant, including but not limited to contracts, proposals, invoices, bids, waivers of lien and any documents reflecting or designating the job, who it was

performed for, the nature of the work performed, the location and the individuals and/or subcontractors who actually performed the work on that job from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 23:** Any and all documents relating to equipment, tools, and/or vehicles owned, leased, rented or used by each Defendant, including but not limited to title documents, lease agreements, rental agreements and any other agreements entered into for the use of such equipment, tools and/or vehicles from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 32:** Any and all documents relating to bids, estimates and proposals for work made by each Defendant from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 33:** Any and all documents relating to or evidencing advertising drafted, placed or submitted on behalf of each Defendant from January 1, 2008 to the present.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Document Request 37**: Any and all documents reflecting or relating to agreements entered into between each Defendant and any individual, creator, corporate officer, corporate director, and/or shareholder.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response**: Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.  The request appears to be intended merely to vex, harass, and annoy the Defendants.

Like the documents sought in document request 16, the documents Plaintiffs seek in document requests 17, 19, 22, 23, 32, 33, and 37 have relevance to the issues of alter ego and joint venture to the extent that they would show how the Defendants worked with, utilized tools and materials in relationship to, or worked on behalf of each other.  To the extent that the documents sought in document request 17, 19, 22, 23, 32, 33 and 37 pertain to discreet meetings, projects, or agreements regarding the operations and resources of only a single Defendant, the document requests are overbroad. The Court grants in part and denies in part the motion with respect to document requests 17, 19, 22, 23, 32, 33 and 37. Defendants shall produce responsive

documents to the extent the documents concern more than one Defendant consistent with this

Order.

> **Document Request 18:** Copies of any documents required to be produced by your pursuant to Fed. R. Civ. P. 26.
>
> **Defendants' Common Response:** Defendant objects to the request as vague and ambiguous. The facts upon which Plaintiffs base their claims remain a mystery to the Defendant. The Defendant cannot identify all documents relevant to his defense until such time as the Plaintiffs identify specific facts in support of their claims.

As to this document request, on its face as drafted, the Court agrees that the request is

vague and ambiguous, as well as, overly broad. The Court denies the motion as to document

request 18.

> **Document Request 24:** Any and all documents relating to the ownership, the lease of, or use of real property by each Defendant for office space or other use connected to its business operation, including but not limited to title documents, and lease agreements from January 1, 2008 to the present.
>
> **Defendant Charpentier's Response**: This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.
>
> **Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendants will produce the relevant information responsive to the request in a mutually agreeable location and format.
>
> **Document Request 25:** Any and all documents relating to or identifying owners, shareholders or partners of each Defendant and the amount of shares or ownership interest owned by each.
>
> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:**   Defendants will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome, and not reasonably likely to lead to admissible evidence.  Copies of the corporate records have been produced in connection with the Defendants' initial disclosures.

**Document Request 26:** Any and all documents relating to the capitalization of each Defendant when they commenced doing business.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome, outside the timeframe that these responses have been limited to and not reasonably likely to lead to admissible evidence.

**Document Request 27:** Any and all documents relating to or identifying the officers and directors of each Defendant, including but not limited to shareholder meeting minutes and board of director meeting minutes.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendant will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome, and not reasonably likely to lead to admissible evidence.  Copies of the corporate records have been produced in connection with the Defendants' initial disclosures.

**Document Request 28:** Documents identifying the mailing addresses of each Defendant, including each Defendants' letterhead.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Document Request 29:** Documents identifying the phone number and fax number of each Defendant.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendants will produce the relevant information responsive to the request in a mutually agreeable location and format.

**Document Request 31:** Any and all documents relating to the transfer of funds, assets, equipment, property or liability between Defendants, including but not limited to agreements, contracts, and invoices.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendants Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Document Request 35:** To the extent not otherwise provided in response hereto, Articles of Incorporation of each Defendant, including but not limited to amendments and all annual reports and

others documents filed with Minnesota Secretary of State by each Defendant.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps' Response:** Defendant will produce the relevant documents responsive to the request in a mutually agreeable location and format.

**Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant has previously produced the relevant information responsive to this request.

**Document Request 39:** Any and all documents relating to business licenses or any type of licenses obtained by each Defendant.

**Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.

**Defendant Charps, Clearwater, C&G, and Alpha Oil's Common Response:** Defendant will produce the relevant information responsive to the request in a mutually agreeable location and format.

The documents Plaintiffs seek in document requests 24, 25, 26, 27, 28, 29, 31, 35, and 39 are directly relevant to the theories of breach of contract through alter ego and joint venture in that they relate to the entity and individual Defendants' relationship to each other. The Court overrules Defendant Charpentier's objection to document requests 24, 25, 26, 27, 28, 29, 31, 35 and 39 indicating his belief that those document requests target only the entity Defendants. In addition, the Court overrules the Defendants' unsupported boiler plate objections of overbreadth, undue burden, and the unlikelihood of discovering admissible evidence. See Mead Corp., 145

F.R.D. at 515. The motion is granted with respect to document requests 24, 25, 26, 27, 28, 29, 31, 35 and 39 as to all Defendants.

> **Document Request 36:** Any and all documents reflecting or relating to the insurance of each Defendant, including but not limited to worker's compensation, business liability and auto insurance policies.
>
> **Defendant Charpentier's Response:** This request is directed at the corporate Defendants and therefore Defendant objects to the request as overly broad, unduly burdensome and not reasonably likely to lead to admissible evidence.
>
> **Defendant Charps' Response:** Defendant will produce the relevant documents responsive to the request in a mutually agreeable location and format.
>
> **Defendants Clearwater, C&G, and Alpha Oil's Common Response:** Defendant objects to the request as overly broad, unduly burdensome, and not reasonably likely to lead to admissible evidence. Copies of the corporate records have been produced in connection with the Defendants' initial disclosures.

To the extent that any of the requested documents sought in document request 36 reflect coverage for multiple Defendants under a policy of insurance or the insurance premiums were paid by one Defendant on behalf of another Defendant then the documents sought are relevant to Plaintiffs' theories of alter ego and joint venture. Moreover, the entity Defendants have represented that they will provide responsive documents. The Court will hold the Defendants to their representations. The Court grants the motion with respect to document production pursuant to request 36 consistent with this Order.

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion to Compel Discovery Responses, [Docket No. 22].

The Court denies Plaintiffs' request for attorneys' fees.

III.    **CONCLUSION**

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

That Plaintiffs' Motion to Compel Discovery Responses, [Docket No. 22], is **GRANTED in part** and **DENIED in part**, as set forth herein.

Dated: May 14, 2015                             s/Leo I. Brisbois
                                                Leo I. Brisbois
                                                U.S. MAGISTRATE JUDGE