UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard, Steve Piper, and Bill Patt as Trustees of the Operating Engineers Local #49 Health and Welfare Fund, Michael R. Fanning as a Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillippi, Greg Waffensmith, Mark Ryan, as Trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, | Case File No. 14-CV-2081 (RHK/LIB)  Judge Richard H. Kyle |

Plaintiffs,

vs.

Charps Welding & Fabricating, Inc., Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc., C & G Construction Inc. of Clearbrook, Alpha Oil & Gas Services, Inc., and Kenneth Charpentier, individually,

Defendants.

**EXPERT REPORT OF
JOSEPH D. KENYON**

**DECEMBER 30, 2016**

**Exhibit A**

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1
METHODOLOGY .................................................................................................... 1
CONCLUSIONS ....................................................................................................... 2
BACKGROUND ...................................................................................................... 2
   Oil and Gas Transmission Companies ................................................................ 2
   Charps .................................................................................................................... 3
   C&G Construction ................................................................................................. 5
   Alpha ..................................................................................................................... 7
   Clearwater ........................................................................................................... 10
   K&S Rentals ........................................................................................................ 10
   K&S Real Estate ................................................................................................. 10
   Ken and Sandy Charpentier ............................................................................... 11
   Ed Charpentier .................................................................................................... 12
   Greg Todavich ..................................................................................................... 12
   Joe Van Vynckt ................................................................................................... 13
   Plaintiff Trust Funds ........................................................................................... 13
   Wilson-McShane ................................................................................................. 13
   Dispute ................................................................................................................ 14
REASONABLENESS TEST OF FRINGE FUND PAYMENTS BY CHARPS ............ 14
   Total Hours Worked ........................................................................................... 15
   Amounts Reported to the Union Funds .............................................................. 16
   Amounts Not Reported to the Union Funds ....................................................... 16
   Conclusion .......................................................................................................... 17
WILSON-MCSHANE PAYROLL AUDIT FINDINGS ................................................. 18
   Conclusion .......................................................................................................... 19
FACTS AGAINST CHARPS, C&G CONSTRUCTION, ALPHA AND CLEARWATER
OPERATING AS ONE ENTITY ............................................................................ 20
   Charps ................................................................................................................. 20
   C&G Construction ............................................................................................... 22
   Alpha ................................................................................................................... 23
   Clearwater ........................................................................................................... 25
   Conclusion .......................................................................................................... 26
QUALIFICATIONS AND COMPENSATION ............................................................. 26
STATEMENT OF LIMITING CONDITION ................................................................ 26

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating,
Inc., et al

## APPENDICES

Appendix I         Documents Considered


Appendix II        Joseph D. Kenyon, CPA/ABV/CFF, CFE – Curriculum Vitae

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## INTRODUCTION

We have been retained by the law firm of Seaton, Peters & Revnew, P.A. to provide our comments, observations and opinions with respect to alleged damages suffered by the Plaintiffs during the period January 1, 2008 through December 31, 2015 and alleged alter ego issues.

This report was prepared solely in connection with a lawsuit by Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard, Steve Piper, and Bill Patt as Trustees of the Operating Engineers Local #49 Health and Welfare Fund, Michael R. Fanning as a Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillippi, Greg Waffensmith, Mark Ryan, as Trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program (collectively "the Plaintiffs") versus Charps Welding & Fabricating, Inc. ("Charps"), Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc. ("Clearwater"), C & G Construction Inc. of Clearbrook ("C&G Construction"), Alpha Oil & Gas Services, Inc. ("Alpha"), and Kenneth Charpentier, individually (collectively "the Defendants").

## METHODOLOGY

In addition to relying upon our education, training and experience, we read and analyzed the documents listed in Appendix I in preparation for this report.  In addition, we toured

1

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

the Defendants' facility in Clearbrook, Minnesota, and interviewed Kenneth Charpentier and Joseph Van Vynckt.

## CONCLUSIONS

1. The hours Charps reported reasonably approximate the total hours covered by the Collective Bargaining Agreements ("CBAs") relevant to the Plaintiff Fringe Funds for the years 2008 through 2010.[1]

2. Wilson-McShane, the Fringe Funds auditors, conducted three routine audits of Charps' payroll covering the period October 2006 through December 2014 and did not find that Charps owed any significant amounts to the Plaintiff Fringe Funds.

3. Based upon our analysis, there are numerous facts that in our opinion indicate that Charps, C&G Construction, Alpha and Clearwater each independently exist and have a valid business purpose.

## BACKGROUND

### Oil and Gas Transmission Companies

The Defendant companies serve the oil and gas industries, working primarily with oil and gas transmission companies. Generally, oil is harvested from the ground by a rig; oil from multiple rigs is then collected by a gathering system; oil is piped from gatherings through lateral lines to mid-stream lines, and then to a transmission line; finally, the transmission line carries the oil to a processing destination.[2]

---

[1] We are continuing to analyze and test the hours reported by Charps for 2011 through 2015 and will supplement this report when our analysis is complete.

[2] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

2

Similarly, natural gas, which escapes when oil is harvested, is transported from the ground via pipe to a separator (or treater); it is then piped via a lateral line to a mid-stream line, and then to a transmission line; finally the transmission line carries the gas to a processing destination.[3]

Low pressure gas lines are typically made of polyethylene; oil lines are made of steel because polyethylene cannot withstand oil transmission pressures.[4]

The Defendant companies work in different segments of this industry.[5] Charps primarily assesses and maintains transmission lines. C&G Construction and Alpha primarily construct new gathering and lateral systems in the oil field.[6]

**Charps**

Charps is a Minnesota corporation founded in 2001 by Ken Charpentier and initially was a small company that welded pipe fittings and provided related welding and fabrication services. In 2001, Charps started performing work for Enbridge Energy ("Enbridge"). At that time Charps became a union shop and only performed union work.[7]

In 2005, Charps shifted its core business to transmission line integrity digs, i.e., assessing and maintaining the large steel pipes that transport oil and gas across the country. This involved digging around buried transmission pipelines to evaluate and allow for their repair.[8] In 2006, Enbridge continued to give Charps more and more work.[9]  By the end of

---

[3] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[4] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[5] Clearwater is the holding company and provides management services to its subsidiaries and employs no field workers.
[6] Interview of Ken Charpentier and Joe Van Vynckt.
[7] Interview of Ken Charpentier.
[8] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[9] Interview of Ken Charpentier.

2006, Charps increased its workforce from five to thirty union employees. Charps' projects require union labor, including, among others, Local #49 operating engineers, who run Charps' heavy machines.[10]

Charps is and has been a signatory to a series of CBAs for the Builders Division of the Associated General Contractors of Minnesota and the International Union of Operating Engineers, Local #49. Charps is the only Defendant to sign CBAs.

In September 2007, Charps became a subsidiary of Clearwater.[11]

From approximately 2006 to 2011, Charps worked mostly in Wisconsin, with a few projects in Illinois, Kansas, and Minnesota. Today, Charps does not work on oil fields; it works mostly on transmission lines primarily in Illinois, Minnesota, and Wisconsin, but also does some integrity digs and welding work in North Dakota, Indiana, Michigan, Missouri, New York, Ohio and Oklahoma.[12]

Charps currently services the transmission pipeline segment of the oil and gas supply chain and focuses on assessing and maintaining existing pipelines. It tests and repairs large, steel, cross-country transmission lines for oil transporters, almost exclusively for Enbridge, a North American pipeline operator.[13] The exception was that in 2012 and 2013, Charps was involved in a single significant union project in Pennsylvania for a customer similar to Enbridge.[14]

---

[10] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[11] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[12] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[13] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016
[14] Charps made fringe fund contributions to the appropriate funds that are not Plaintiffs in this action (interview of Ken Charpentier and Joe Van Vynckt).

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

Otherwise, Enbridge provided Charps' largest and most lucrative projects and accounts for the overwhelming majority of its revenue.[15] Despite the success of C&G Construction and Alpha (see C&G Construction and Alpha sections), Charps brought in the vast majority of the Defendant companies' revenue, with Enbridge accounting for the lion's share.[16]

The following chart sets forth Charps' annual revenues from 2009 through 2014:[17]



## C&G Construction

C&G Construction is a Minnesota corporation founded in 2005 by Ken Charpentier and Greg Grensteiner ("Grensteiner"), an acquaintance of Ken's.[18]  To start up C&G Construction, Ken Charpentier and Grensteiner each invested $160,000 and, as a result,

---

[15] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016
[16] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[17] Source:  External Annual Financial Statements.
[18] Defendant C & G Construction Inc. of Clearbrook's Answers to Plaintiffs' Interrogatories to the Defendants; declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016; declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

CASE 0:14-cv-02081-PAM-LIB   Doc. 185-1   Filed 04/07/17   Page 9 of 101

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

each owned a 50% share of the company.[19]  There was not a significant union presence or available union workforce at that time and the work being performed was non-union.

In mid-2006, Grensteiner moved out to North Dakota to manage C&G Construction and its crews, but it did not work out. C&G Construction repurchased his share in a December 2006 settlement agreement. After Grensteiner's separation from C&G Construction, Ken Charpentier asked his brother, Ed Charpentier to move to North Dakota to help manage C&G Construction so Ken could focus on Charps.[20]

In September 2007, C&G Construction became a subsidiary of Clearwater.[21]

In 2010, Kris Munter ("Munter") proposed to Ken Charpentier that they create and manage a new pipeline company. In 2011, C&G Construction was shelved temporarily when, Ken Charpentier, Ed Charpentier and Munter created Alpha to take C&G Construction's place.[22] However this did not work out as management discovered that Alpha needed a three-year safety rating to secure most business. Since C&G Construction had such a rating, the two companies ran side-by-side, with Alpha taking jobs when possible and C&G Construction taking jobs Alpha could not.[23]

Initially, C&G Construction primarily built poly pipelines transporting gas produced by oil wells in North Dakota and Montana (where C&G Construction has an office).[24] Currently, C&G Construction primarily builds and lays gathering and mid-stream lines for oil and gas producers like ONEOK, Inc. a/k/a Bear Paw Energy LLC ("Oneok") and Hess Corp. ("Hess").[25] C&G Construction currently performs work in Oklahoma, Texas,

---

[19] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[20] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[21] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[22] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[23] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[24] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[25] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

and New York, but has also performed work in Pennsylvania, West Virginia, Kansas and Missouri.[26]

The following chart sets forth C&G Construction's annual revenue from 2009 through 2014:[27]



**Alpha**

Alpha was incorporated in 2011. The original business plan was for Alpha to replace C&G Construction and, like C&G Construction, Alpha would operate in a different segment of the oil and gas industry than Charps and be managed by Ed Charpentier and Munter.[28]  Ed Charpentier and Munter gave personal guarantees for Alpha's financing, mortgaged their homes to procure funds and bought and paid premiums for $1,000,000 life insurance policies naming Alpha as the beneficiary.[29]

---

[26] Defendant C & G Construction Inc. of Clearbrook's Answers to Plaintiffs' Interrogatories to the Defendants.
[27] Source:  External Annual Financial Statements.
[28] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[29] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

However, before the bank agreed to finance Alpha, it insisted Ken Charpentier be made a majority shareholder. As a result, Ed Charpentier and Munter ended up owning 24.5% each while Ken Charpentier owned the remaining 51%.[30] As Alpha grew, it needed additional bank financing. The bank would provide additional credit only if Alpha reduced the number of shareholders to one to eliminate the risk of shareholder disputes with the growing company.[31]  To meet this condition, the shareholders decided to move the ownership of Alpha into Clearwater and grant Munter and Ed Charpentier phantom Clearwater stock commensurate with their ownership of Alpha.[32]

In December 2012, Alpha became a subsidiary of Clearwater.[33]

Alpha had three offices plus an on-site trailer and shop in North Dakota where it did most of its work, including all hiring and firing. Alpha worked non-union jobs primarily laying gathering lines for producers like Oneok and Hess.[34]  It never worked for transmission line owners or operators, including Enbridge.[35]  Because Alpha (like C&G Construction) and Charps worked in different segments of the oil and gas industry, there was no concern that the two companies would compete against each other.[36]

As previously discussed, management discovered that Alpha needed a three-year safety rating to secure most business. Since C&G Construction had such a rating, the two companies ran side-by-side, with Alpha taking jobs when possible and C&G

---

[30] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; Schedule K-1s D039540-43, Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[31] The Altus Financial Group, a financial advisory group, informed the owners of Alpha that a consolidated ownership structure was necessary to obtain the required financing.
[32] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016; amended tax return D039590-645.
[33] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[34] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[35] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[36] Declaration of Kris Munter in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

Construction taking jobs Alpha could not.[37] Alpha grew quickly and, in 2012, took a field job with BakkenLink Pipeline LLC requiring 500 employees - 400 at one time - running gathering and mid-stream lines from oil wells to a rail spur. Thereafter, Alpha dropped to roughly 30 permanent employees.[38]

Alpha was primarily in the business of pipeline services, roustabout services,[39] and land stewardship and performed work in North Dakota and Montana.[40]  The customers and work was different than Charps'.[41]

The following chart sets forth Alpha's annual revenues from 2009 through 2014:[42]



In January 2016, Alpha merged with C&G Construction, with C&G Construction as the surviving entity.[43]

---

[37] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[38] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[39] A roustabout is the piping in and around the wellsite.
[40] Defendant Alpha Oil & Gas Services, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.
[41] Interview of Ken Charpentier.
[42] Source: External Annual Financial Statements.
[43] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

**Clearwater**

C & G Holding Company of Clearbrook, Inc. was formed as a Minnesota corporation in 2005 and changed its name to Clearwater Energy Group, Inc. ("Clearwater") in January 2014.  In September 2007, Charps and C&G Construction became wholly-owned subsidiaries of Clearwater. Alpha became a wholly-owned subsidiary in 2012. Clearwater currently serves as a holding company and provides management support to the operating entities, Charps, C&G Construction and Alpha (until January 2016), and performs administrative services.[44]  As stated previously, C&G Construction and Alpha merged in January 2016.

**K&S Rentals**

K&S Rentals LLC ("K&S Rentals") was formed in 2009 to own and lease certain equipment to the Defendant companies. Ken and Sandy Charpentier each owned 50%. In 2013, K&S Rentals merged into Clearwater.[45]

**K&S Real Estate**

K&S Real Estate LLC ("K&S Real Estate") was formed in 2013 and owns real estate leased to the Defendant companies under triple-net lease terms. Ken and Sandy Charpentier each owned 50%.[46]

---

[44] Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.
[45] Interview of Ken Charpentier.
[46] Interview of Ken Charpentier and Joe Van Vynckt.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

**Ken and Sandy Charpentier**

Ken Charpentier began his career in the 1980's as a welder. He established Charps as a small shop with himself and one shop hand, and added a few union welders as needed.[47] From 1999 to 2012, Ken Charpentier managed Charps' operations and growth. Between 2001 and 2005, Ken Charpentier made annual visits to North Dakota, Montana and Wyoming, canvassing oil fields for new pipeline construction opportunities. These oil field jobs typically involved working with poly-pipe for oil and gas producers. Since Ken Charpentier could not be in two places at once he and Grensteiner created a separate company in 2005, C&G Construction, to undertake these jobs in North Dakota and Montana while Ken ran Charps.[48] Grensteiner managed C&G Construction until he was replaced by Ed Charpentier who managed operations in North Dakota. In January 2011, Alpha was founded by Ken Charpentier, Ed Charpentier and Munter. Operations were managed by Ed Charpentier.

Ken Charpentier was also the President and Chief Executive Officer ("CEO") of Clearwater since 2005. He was nominal President of C&G Construction and Alpha but was not involved in the management of day-to-day operations.  As CEO of Clearwater, he was responsible for key strategic decisions, overall strategic planning, and dealing with the banks and professionals.

Ken, his wife Sandy, and certain trusts own 100% of the voting stock of Clearwater.[49]

---

[47] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[48] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[49] Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc.'s Second Supplemental Answers to Plaintiffs' Interrogatories to the Defendants (specifically Attachment E).

## Ed Charpentier

Ed Charpentier is currently employed by C&G Construction as its Vice President, Pipeline Operations.  He is also the brother of Ken Charpentier. In 2006, Ken Charpentier asked Ed Charpentier to work in North Dakota to manage C&G Construction and help grow its business. From 2006 to December 2010, Ed Charpentier managed C&G Construction's operations in North Dakota and assumed primary responsibility for most of C&G Construction's pipeline activities until Alpha was established.  From January 2011 to December 2015, he worked as Vice President, Pipeline Operations for Alpha. In January 2016 when C&G Construction merged with Alpha, with C&G Construction the surviving entity, Ed Charpentier became C&G Construction's Vice President, Pipeline Operations.[50]

As a C&G Construction management employee, Ed Charpentier had the authority to act on behalf of C&G Construction only.  Ed Charpentier, on behalf of C&G Construction, has the authority to submit bids for work, enter into service agreements, write checks, and sign contracts. The same was true when he was an Alpha management employee.[51]

## Greg Todavich

Greg Todavich ("Todavich") has been the President of Charps since November 2012. Todavich has never worked for C&G Construction or Alpha.[52] As Charps' President, Todavich has authority to act on behalf of Charps only. Todavich can submit bids for work, enter into service agreements, and sign contracts for Charps. Todavich is not

---

[50] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[51] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[52] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

authorized to similarly act on the behalf of C&G Construction or Alpha.[53]  Todavich has final authority over Charps' workforce.[54]

**Joe Van Vynckt**

Joe Van Vynckt is a Certified Public Accountant and currently works for Clearwater as its Chief Financial Officer ("CFO") and has been in that position since March 2014.[55]

**Plaintiff Trust Funds**

The Plaintiff Trust Funds are multi-employer jointly-trusteed plans.  The Trust Funds receive benefit contributions in an amount set forth in the CBAs from numerous employers for each hour worked by their employees covered by the CBAs.[56]

**Wilson-McShane**

Wilson-McShane is a third party administrator of Taft-Hartley plans[57] and is the third-party administrator for the Plaintiff Trust funds.  Wilson-McShane performs audits of signatories to the CBAs to make sure the benefits are being paid according to the correct union contract.[58]

---

[53] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[54] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[55] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[56] Complaint.
[57] A Taft-Hartley plan is a collectively bargained multiemployer plan maintained by more than one employer, usually within the same or related industries and a labor union (www.pbgc.gov/prac/multiemployer/introduction-to-multiemployer-plans.html).
[58] Deposition transcript of Melissa Urban-Brown dated March 9, 2016, p. 18.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

**Dispute**

Plaintiffs allege Charps and Charpentier operate Clearwater, C&G Construction, and Alpha to avoid obligations to the Plaintiffs. Plaintiffs further allege that Clearwater, C&G Construction, and Alpha are the alter egos of Charps and, as such, are bound to the CBAs.

Defendants deny these allegations.

**REASONABLENESS TEST OF FRINGE FUND PAYMENTS BY CHARPS**

We tested the reasonableness of payments paid into the Plaintiff Fringe Funds. We focused on determining the total number of hours worked by Charps employees from 2008 to 2015. In addition to the CBAs relevant to the Plaintiff Fringe Funds, Charps entered into a number of CBAs with various other unions. We requested that Clearwater personnel determine the total number of hours paid into all union fringe funds so we could eliminate those employees and focus on the employees that had no amounts paid into any fund. These remaining employees would then be analyzed to determine whether there were any employees that should have had amounts paid into Plaintiff Fringe Funds but did not.

Due to time constraints, Clearwater personnel could only complete this analysis for the years 2008 through 2010 as of the date of this report. Much of the analysis for the years 2011 through 2015 was commenced but will not be completed until after the issuance of this report. As such, we tested the analysis performed for 2008 through 2010 for the purposes of this report. We will subsequently test the years 2011 through 2015 when the work is completed and our findings will be updated and included in a future report.

14

Based upon the work performed, in our opinion, the hours Charps reported to the Plaintiff Fringe Funds reasonably approximate the total hours covered by the CBAs relevant to the Plaintiff Fringe Funds for the period 2008 to 2010.  This opinion is based on the procedures below.

**Total Hours Worked**

To determine whether Charps underreported its obligations to the Plaintiffs as alleged, we first needed to ascertain the total hours worked by Charps employees.  This was determined by analyzing payroll summary reports generated from the QuickBooks or Spectrum accounting software.  The following chart summarizes the total hours worked by Charps employees for the years 2008 through 2015:

| Year | Hours Worked |
|------|--------------|
| 2008 | 122,729 |
| 2009 | 111,653 |
| 2010 | 123,937 |
| 2011 | 184,841 |
| 2012 | 496,767 |
| 2013 | 777,598 |
| 2014 | 418,667 |
| 2015 | 498,770 |

As previously discussed, time constraints only permitted Clearwater personnel to completely analyze the years 2008 through 2010.  As such, we tested the analysis performed for 2008 through 2010 for the purposes of this report.  Although we will subsequently test the years 2011 through 2015 after the date of this report and our findings will be identified in a following report, we understand that the initial results of the reconciliations performed by Clearwater personnel for the years 2011 through 2015 are consistent with the results of the reconciliations for 2008 through 2010.

**Amounts Reported to the Union Funds**

The second step in our analysis was to determine, of the total hours worked by Charps employees, how many hours were reported to all union fringe funds.  This was quantified by analyzing monthly remittance reports for each of the union funds.  The following chart summarizes the monthly hours reported to the Plaintiff Fringe Funds and all other union funds for the years 2008 through 2010:

| Year | Plaintiff Funds Hours Reported | Other Union Hours Reported | Total Union Hours Reported |
|------|-------------------------------|----------------------------|----------------------------|
| 2008 | 26,609 | 80,776 | 107,385 |
| 2009 | 18,718 | 77,913 | 96,630 |
| 2010 | 20,216 | 88,599 | 108,815 |

As shown in the schedule below, the vast majority of total hours worked by Charps employees had been reported to union funds according to the monthly remittance reports.

| Year | Total Union Hours Reported | Total Hours Worked | Percentage of Union Hours to Total Hours |
|------|----------------------------|--------------------|------------------------------------------|
| 2008 | 107,385 | 122,729 | 87% |
| 2009 | 96,630 | 111,653 | 87% |
| 2010 | 108,815 | 123,937 | 88% |

**Amounts Not Reported to the Union Funds**

To complete our analysis, we determined employee hours paid but for which no amounts were paid into union fringe funds. We isolated this population by subtracting the hours reported to the unions from the total hours worked by all Charps employees.  Our testing of this population consisted of two procedures.

1. Generally, we inquired of Clearwater personnel whether any of the population of hours tested were associated with types of employees not covered by the CBAs relevant to the Plaintiff Fringe Funds.  Examples of employees whose hours do not necessitate contributions to the Plaintiff Fringe Funds include administrative/office personnel and certain non-operator field employees.  Additionally, fund contributions are not required for vacation hours used by a few office employees for whom contributions have been made to the Laborers Fund.

2. Specifically for our testing, we selected one month in each year for detailed testing of hours worked to determine whether Charps underreported its obligations to the Plaintiffs.[59]  This procedure included tracing hours worked per the payroll summary reports to monthly remittance reports and detailed inquiries regarding the hours not reported to the union funds. Our objective was to identify any employee that should have had amounts paid into the Plaintiff Fringe Funds but did not.

Our procedures identified no instances of underreported hours to the Plaintiff Fringe Funds.

**Conclusion**

The hours Charps reported reasonably approximate the total hours covered by the CBAs relevant to the Plaintiff Fringe Funds for the years 2008 through 2010.[60]

---

[59] Months selected for testing were August 2008, July 2009, and June 2010 based on information and belief that more hours tended to be worked in summer months.

[60] We are continuing to analyze and test the hours reported by Charps for 2011 through 2015 and will supplement this report when our analysis is complete.

## WILSON-MCSHANE PAYROLL AUDIT FINDINGS

In accordance with the CBA relevant to the Plaintiff Fringe Funds, Wilson-McShane conducted audits of Charps' payroll by comparing what the employer submitted in Fringe Fund benefits to the employer's payroll documents and tax records to make sure the benefits were paid according to the relevant union contract and none were missed.[61]  As discussed in the following paragraphs, these audits found that the hours Charps reported to the Trust Funds reasonably corresponded with Charps' payroll records.

On March 17, 2009, Wilson-McShane performed an audit of Charps' payroll for the Operating Engineers Local #49 Fringe Funds for the period October 2006 through December 2008.  On April 28, 2009, Auditor Michelle Tabbert issued a letter of findings stating Charps had *over-contributed* during the period under audit by an amount of $1,904.27 and instructed Charps to "[d]educt the amount listed in the enclosure from your next month's fringes."[62]

On November 1, 2012, Wilson-McShane performed an audit of Charps' payroll for the Operating Engineers Local #49 Fringe Funds for the calendar years 2009 and 2010.  On November 2, 2012, Auditor Bob Butterworth issued a letter of findings stating "that reports previously submitted by you to the Fund office are in agreement with the records provided at the time of the audit."[63]

On April 6, 2015, Wilson-McShane informed Charps that it would be conducting its routine audit of Charps' payroll for the Operating Engineers Local #49 Fringe Funds for

---

[61] Deposition transcript of Melissa Urban-Brown dated March 9, 2016, p. 18; For the audit period Wilson-McShane requests access to the company's books and records including individual earnings records, quarterly 941's, quarterly MUTA reports, W-2's and W-3's, 1099's and 1096's, monthly remittance reports submitted to any fringe benefit funds, check register and cash disbursement journals (Deposition Exhibit 7).
[62] WM000001-WM000002.
[63] WM000019.

the calendar years 2012 through 2014.[64]  Wilson-McShane typically audits each employer about every three years and decided to conduct this particular audit when Auditor Matt Loberg selected Charps because it was generally due for an audit.[65]  Mr. Loberg began his audit but did not ultimately complete his procedures due to receiving a subpoena related to the litigation at issue.[66]  Wilson-McShane believes that this routine audit should not have been initiated in the first place, but it had not been notified of the pending lawsuit prior to commencing the audit.[67]  Although Mr. Loberg was told not to complete his audit due to the pending litigation, the procedures performed to date had not found any major issues. In addition, Mr. Loberg testified that he needed no significant items from Charps to complete his audit.[68]

Wilson-McShane performed three routine audits[69] of Charps' payroll covering the period October 2006 through December 2014 and did not find that Charps owed any significant amounts to the Plaintiff Fringe Funds.  In fact, auditor communications indicate that Charps had *over-contributed* to the Operating Engineers Local #49 Fringe Funds for the aggregate period under audit.

**Conclusion**

Wilson-McShane, the Fringe Funds auditors, conducted three routine audits of Charps' payroll covering the period October 2006 through December 2014 and did not find that Charps owed any significant amounts to the Plaintiff Fringe Funds.

---

[64] WM000034.
[65] Deposition transcript of Matt Loberg dated March 9, 2016, pp. 12-13.
[66] Deposition transcript of Matt Loberg dated March 9, 2016, p. 23.
[67] Deposition transcript of Matt Loberg dated March 9, 2016, p. 26.
[68] Deposition transcript of Matt Loberg dated March 9, 2016, pp. 34-35.
[69] Two audits were completed.  The third audit was stopped prior to its completion due to this pending litigation.

## FACTS AGAINST CHARPS, C&G CONSTRUCTION, ALPHA AND CLEARWATER OPERATING AS ONE ENTITY

Below is our analysis of a number of facts that in our opinion indicate that Charps, C&G Construction, Alpha and Clearwater each independently exist with a valid business purpose.

### Charps

1. Charps was incorporated and filed with the Minnesota Secretary of State on April 13, 2001.[70]
2. Charps has always maintained separate bank accounts and has never commingled funds with another Defendant.[71]
3. Charps holds its own board and shareholder meetings and takes its own written actions.[72]
4. Charps has separate federal and state identification numbers.[73]
5. Charps files federal and state income tax returns as required.[74]
6. Charps purchases its own tools, equipment and materials.[75]
7. Charps maintains its own separate financial records (including accounts receivable, accounts payable, and general ledgers), and payroll records.[76]

---

[70] Office of the Minnesota Secretary of State; https://mblsportal.sos.state.mn.us/; D041683-4.
[71] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D037171-38550.
[72] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; example: D041502-4.
[73] D038805-83; D038894-968; D039042-201; D039202-404; D039497-514; D039719-40155; D040217-758.
[74] D038805-83; D038894-968; D039042-201; D039202-404; D039497-514; D039719-40155; D040217-758.
[75] D038551-91; D038614-745.
[76] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D061368-70.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

8. Charps files its own state and federal payroll tax returns; pays its own unemployment tax withholdings; and procures its own local, state, and federal licenses.[77]

9. Charps makes Fringe Fund contributions from its own account.[78]

10. Charps' management team have the authority to act on behalf of Charps only. Charps' management was able to submit bids for work, enter into service agreements, and sign contracts for Charps.[79]

11. Charps' management and personnel make hiring, firing, disciplinary and management decisions for Charps.[80]

12. Charps enters into its own Master Servicing Agreements ("MSAs") with its customers.[81]

13. Charps is and has been the only signatory to a series of CBAs for the Builders Division of the Associated General Contractors of Minnesota and the International Union of Operating Engineers, Local #49.[82]

14. Charps currently services the transmission pipeline segment of the oil and gas supply chain and focuses on assessing and maintaining existing pipelines. It tests and repairs large, steel, cross-country transmission lines for oil transporters, almost exclusively for Enbridge.[83] The exception was that in 2012 and 2013, Charps was involved in a single significant union project in Pennsylvania for a customer similar to Enbridge.[84] This is different than the services provided by the other Defendant companies.

---

[77] D040829-41252; D043183.
[78] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; example D037573.
[79] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[80] Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[81] MSAs are agreement that contain most of the terms that will govern future transactions or agreements with customers. We examined various MSAs.
[82] P000001-472.
[83] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016
[84] Charps made fringe fund contributions to the appropriate funds that are not Plaintiffs in this action.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## C&G Construction

1. C&G Construction was incorporated and filed with the Minnesota Secretary of State on November 1, 2005.[85]

2. C&G Construction has always maintained separate bank accounts and has never commingled funds with another Defendant.[86]

3. C&G Construction holds its own board and shareholder meetings and takes its own written actions.[87]

4. C&G Construction has separate federal and state identification numbers.[88]

5. C&G Construction files federal and state income tax returns as required.[89]

6. C&G Construction purchases its own tools, equipment and materials.[90]

7. C&G Construction maintains its own separate financial records (including accounts receivable, accounts payable, and general ledgers) and payroll records.[91]

8. C&G Construction files its own state and federal tax payroll tax returns; pays its own unemployment tax withholdings; and procures its own local, state, and federal licenses.[92]

9. C&G Construction management and personnel make hiring, firing, disciplinary, and management decisions for C&G Construction. C&G Construction also

---

[85] Office of the Minnesota Secretary of State; https://mblsportal.sos.state.mn.us/; D041679-80.
[86] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D036687-7170.
[87] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; example: D041477-98.
[88] D038746-71; D038884-93; D038969-97; D039042-184; D039202-404; D039474-96; D039719-40085; D040217-692; D040759-803; D040804-28.
[89] D038746-71; D038884-93; D038969-97; D039042-184; D039202-404; D039474-96; D039719-40085; D040217-692; D040759-803; D040804-28.
[90] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D038551-91; D038614-745.
[91] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D061365-7.
[92] D043182; D061455-68.

processes its own payroll; and determines wages and benefits for C&G Construction employees.[93]

10. C&G Construction management had the authority to act on behalf of C&G Construction only. C&G Construction management has the authority to submit bids for work, enter into service agreements, write checks, and sign contracts.[94]

11. C&G Construction enters into its own MSAs with its customers.[95]

12. Initially, C&G Construction primarily built poly pipelines transporting gas produced by oil wells in North Dakota and Montana.[96] Currently, C&G Construction primarily builds and lays gathering and mid-stream lines for oil and gas producers like Oneok and Hess.[97] The customers and work was different than Charps'.[98]

## Alpha

1. Alpha was incorporated with the North Dakota Secretary of State on January 19, 2011.[99]

2. Alpha has always maintained separate bank accounts and has never commingled funds with another Defendant.[100]

3. Alpha holds its own board and shareholder meetings and takes its own written actions.[101]

4. Alpha has separate federal and state identification numbers.[102]

---

[93] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; Example: D062333-40.
[94] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[95] We examined various MSAs.
[96] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[97] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[98] Interview of Ken Charpentier.
[99] Office of the North Dakota Secretary of State; http://sos.nd.gov/business/business-services; D041687.
[100] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D036454-863; D060917-61.
[101] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; example: D041432-71.
[102] D039515-718; D040156-692.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

5.  Alpha files federal and state income tax returns as required.[103]

6.  Alpha purchases its own tools, equipment and materials.[104]

7.  Alpha maintains its own separate financial records (including accounts receivable, accounts payable, and general ledgers), and payroll records. [105]

8.  Alpha's management and personnel made hiring, firing, disciplinary, and management decisions for Alpha. Alpha's management determines wages and benefits for Alpha.[106]

9.  Alpha filed its own state and federal payroll tax returns; paid its own unemployment tax withholdings; and procured its own local, state, and federal licenses.[107]

10. Alpha management has the authority to act on behalf of Alpha only. Alpha management has the authority to submit bids for work, enter into service agreements, write checks, and sign contracts.[108]

11. Alpha enters into its own MSAs with its customers.[109]

12. Alpha was primarily in the business of pipeline services, roustabout services, and land stewardship and performs work in North Dakota and Montana.[110] The customers and work was different than Charps'.[111]

---

[103] D039515-718; D040156-692.
[104] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D038592-613; D038638-723.
[105] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D061359-61.
[106] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[107] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D043181; D061392-431.
[108] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[109] We examined various MSAs.
[110] Defendant Alpha Oil & Gas Services, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.
[111] Interview of Ken Charpentier.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## Clearwater

Clearwater was incorporated and filed with the Minnesota Secretary of State on November 8, 2005.[112]

1. Clearwater always maintained separate bank accounts and has never commingled funds with another Defendant.[113]

2. Clearwater holds its own board and shareholder meetings and takes its own written actions.[114]

3. Clearwater has separate federal and state identification numbers.[115]

4. Clearwater files federal and state income tax returns as required.[116]

5. The executives for Clearwater have final authority to sign contracts and write checks but only for Clearwater.[117]

6. Clearwater has final authority over its workforce and employees. Among other things, it makes its own hiring, firing, disciplinary and management decisions; process its own payroll; and sets its own wages and benefits.[118]

7. Clearwater maintains its own separate financial records, including general ledgers, customer and account receivables, and vendor and accounts payable.[119]

8. Clearwater maintains its own separate payroll records, files its own state and federal payroll tax returns and pays its own unemployment tax withholdings.[120]

---

[112] Office of the Minnesota Secretary of State; https://mblsportal.sos.state.mn.us/; D041701-2.
[113] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D036864-984.
[114] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D041508-672.
[115] D038772-804; D038998-9184; D039202-473; D039719-40085; D040217-692.
[116] D038772-804; D038998-9184; D039202-473; D039719-40085; D040217-692.
[117] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[118] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[119] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D061362-4.
[120] Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgement dated April 13, 2016; D061432-54.

9.  Clearwater currently serves as a holding company and provides management support to the operating entities, Charps, C&G Construction and Alpha, and performs administrative services.[121]

**Conclusion**

Based upon our analysis, there are numerous facts that in our opinion indicate that Charps, C&G Construction, Alpha and Clearwater each independently exist and have a valid business purpose.

**QUALIFICATIONS AND COMPENSATION**

This Expert Report was prepared by Joseph D. Kenyon, CPA/ABV/CFF, CFE with the assistance of Schechter Dokken Kanter professional staff under Mr. Kenyon's supervision and direction.  Mr. Kenyon's qualifications, publications and cases in which testimony has been offered are more fully set forth in the attached Appendix II.  Mr. Kenyon's hourly rate is $395.

**STATEMENT OF LIMITING CONDITIONS**

Although we have no responsibility to update this Expert Report for events and circumstances occurring after our report date, we reserve the right to update this Expert Report based on future events and circumstances which may become known to us in connection with the above referenced litigation proceedings or for additional information we may receive.

---

[121] Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.

If counsel asks, we will undertake additional work to respond to Plaintiffs' evidence and to reports or testimony of any experts Plaintiffs may offer.  In making such response, we may prepare additional reports and/or exhibits to respond to Plaintiffs' evidence or expert's reports and testimony.  During deposition or trial, we may also refer to exhibits prepared or used by Plaintiffs' experts.

Respectfully submitted,

Schechter Dokken Kanter Andrews & Selcer Ltd

Joseph D. Kenyon, CPA/ABV/CFF, CFE
Shareholder

JDK:ls

Appendix I

## Documents Considered

1 . Pleadings.

2 . Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgment.

3 . Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgment.

4 . Declaration of Kenneth Charpentier in Support of Defendants' Motion for Summary Judgment.

5 . Declaration of Kris Munster in Support of Defendants' Motion for Summary Judgment.

6 . Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgment.

7 . Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgment.

8 . Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgment.

9 . Affidavit of Craig S. Siiro dated April 13, 2016.

10 . Deposition transcript of Melissa Urban-Brown dated March 9, 2016 and exhibits.

11 . Deposition transcript of Matthew Edward Loberg dated March 9, 2016 and exhibits.

12 . Deposition transcript of Craig Siiro dated May 9, 2016 and exhibits.

13 . Preliminary Audit Report Submitted by Craig Siiro dated December 1, 2016.

14 . D000001-D000078 (Secretary of State Filings).

15 . D036454-D038550 (Bank Statements).

16 . D038551-D038745 (External Financial Statements).

17 . D038746-D040828 (Tax Returns).

18 . D040829-D041252 (Charps Payroll Tax Returns).

19 . D041432-D041672 (Board of Director Minutes).

20 . D041678-D041717 (Corporate Documents).

21 . D043181-D043183 (DOT Registrations).

22 . D043184-D043212 (Alpha Documents).

23 . D049269-D049274 (Sublease Agreements).

24 . D049385 (Charps MN Registration).

25 . D060917-D060961 (Bank Statements).

26 . D060962-D061223 (Corporate Documents).

27 . D061224-D061237 (Alpha Loan Documents).

28 . D061239-D061256 (Secretary of State Documents).

29 . D061359-D061370 (General Ledger Reports).

Appendix I

## Documents Considered

30 . D061392-D061468 (Payroll Tax Returns).

31 . P000001-P001023.

32 . WM000001-WM000652.

33 . Various Master Servicing Agreements.

34 . 08 Summary of Monthly Contributions.xlsx.

35 . 09 Summary of Monthly Contributions.xlsx.

36 . 10 Summary of Monthly Contributions.xlsx.

37 . Monthly Payroll Summary Reports for August 2008, July 2009 and June 2010.

38 . Monthly Remittance Reports for August 2008, July 2009 and June 2010.

**JOSEPH D. KENYON, CPA/ABV/CFF, CFE**
**SCHECHTER DOKKEN KANTER ANDREWS & SELCER LTD**

| | |
|---|---|
| **EXPERIENCE HIGHLIGHTS:** | Mr. Kenyon is a Shareholder and head of the Forensic Accounting and Valuation Services Group at Schechter Dokken Kanter.  Mr. Kenyon has over forty years of experience in accounting, auditing and tax practice. Mr. Kenyon provides forensic accounting and valuation services to legal counsel and their clients.  These services include developing economic damage studies (e.g. commercial litigation, trademark and patent infringement, business interruption, wrongful death, etc.) or rebutting them, forensic accounting, fraud investigations, business valuations, expert testimony, assistance with discovery and analyses of documents and financial data.  Mr. Kenyon's valuation experience includes valuations of business enterprises, deferred compensation agreements, intellectual property and ownership interests in corporations, limited liability companies, partnerships and limited partnerships, among others.  He also has experience in dealing with companies in bankruptcy or work out situations and providing arbitration and mediation services to resolve business and professional disputes. |

**EDUCATION:**
University of Minnesota, B.S. in Accounting with distinction – 1973

University of Minnesota, Master of Business Taxation – 1989

**CERTIFICATION:**
Certified Public Accountant (CPA) – Minnesota – 1976

Certified Fraud Examiner (CFE) – 1997

Accredited in Business Valuation (ABV) – 1998

Certified in Financial Forensics (CFF) – 2008

FINRA Dispute Resolution Arbitrator - 2015

**PROFESSIONAL & CIVIC ACTIVITIES:**
American Institute of Certified Public Accountants
(Past Member of Council, 10/1/90 - 9/30/94)

Minnesota Society of Certified Public Accountants (Past President, 4/1/91-3/31/92, and Member of Board of Directors; Past Chair – Professional Ethics, Community Service and Editorial Committees, Legislative Affairs)

Institute of Management Accountants

National Association of Forensic Economists

American Bankruptcy Institute

Minnesota Association of Business Valuation Professionals (MABVP) (f/k/a NCCIBA) (Past President and Board member)

Association of Certified Fraud Examiners

American Arbitration Association (Panel Member)

ADR Section of Minnesota State Bar Association (Past Chair)

Association of Insolvency and Restructuring Advisors

**PROFESSIONAL & CIVIC ACTIVITIES (CONTINUED):**

Turnaround Management Association (Past President and Board member, local chapter)

Licensing Executives Society, Inc. (U.S.A. & Canada)

**SPEAKING ENGAGEMENTS/ DISCUSSION LEADER:**

"Neutral Work: Best Practices, Tips and Pitfalls", presented with Thomas W. Harjes and Thomas J. Shroyer, 16th Annual MNCPA Business Valuation Conference, November  2016

"Economic Damages Overview and Case Studies", presented with Jennifer Schiefert and Cassandra Elgersma, Allinial Global: Advisory Services Forum, September 2016

"Business Valuation Ethics – What Would You Do?" 25th Annual Business Valuation Conference, presented with Charles Selcer, Adam Herman and Stephen Dennis, February 2015

"Finding Fraud," presented with Ginger Knutsen and Jennifer Schiefert.  24th Annual Business Valuation Conference, February 2014

"When Good Intentions Go Bad," presented with Ginger Knutsen and Jennifer Schiefert. Twin Cities Chapter of Certified Fraud Examiners, August 2013

"Business Torts Deskbook: Business Tort Damages- How to Plead, Prove, Calculate, Defend and Communicate them," Webcast presentation with Wade S. Davis, Bryce A. Young and Hon. Edward T. Wahl, August 2013

"Finding Fraud" Maple Grove Critical Thinking Club, June 2013

"Family Limited Partnerships," presented with Jennifer Schiefert.  22nd Annual Business Valuation Conference, February 2012

"Valuation Discounts – Courting Your Opinions." 21st Annual Business Valuation Conference, presented with Stephen Dennis, William Herber and Jennifer Schiefert, February 2011

"Transaction Databases Case Study: Useable or Not?"  Member of Discussion Panel, The 10th Annual MNCPA Business Valuation Conference, October 2010

"When Good Intentions Go Bad:  Fraud at a Non-Profit," presented with Ginger Knutsen and Jennifer Schiefert.  Department of Justice/Federal Bureau of Investigation 2010 CPA Conference, September 2010

"Appraisal Duels – How Do You Arrive at Value?"  Member of Discussion Panel, The 20th Annual Business Valuation Conference sponsored by the University of St. Thomas, The Institute of Business Appraisers and National Association of Certified Valuation Analysts

"A Volatile Mix:  Fraud and the Current Economy," TMA Upper Midwest Chapter Educational Event

"Detecting and Preventing Fraud In Challenging Times," Member of Discussion Panel. TMA Mid-America Regional Conference

"Winning Before Trial – Finding the Right Expert at the Right Time," Member of Discussion Panel.  Minnesota CLE's First Litigation Advocacy Institute sponsored by Minnesota CLE

**SPEAKING ENGAGEMENTS/ DISCUSSION LEADER (CONTINUED):**

"Business Tort Damages – How to Plead, Prove, Calculate, Defend and Communicate Them," presented with Douglas Peterson, Wade Davis and Kari Abrahamson.  The October 2008 and May 2009, Business Torts Deskbook Series Webcasts sponsored by Minnesota CLE.

"How to Determine Income for a Self-Employed Person," presented with Ginger Wosje.  The 29th Annual Family Law Institute sponsored by Minnesota CLE and MSBA Family Law Section

"Family Limited Partnerships – Learning from Other People's Mistakes."  The 18th Annual Business Valuation Conference sponsored by the University of St. Thomas, American Society of Appraisers and Institute of Business Appraisers

"Valuing the Closely Held Business – Getting the Experts You Need; Understanding How They Do Their Work," presented with Renee Marino, Resolving Minority Shareholder Disputes sponsored by Minnesota State Bar Association Continuing Legal Education

"Business Appraisals:  Something Old, Something New."  25th Annual MNCPA Estate and Personal Financial Planning Conference sponsored by the Minnesota Society of Certified Public Accountants

"Computation of Lost Profits."  Legal & Valuation Fly-In sponsored by PKF North American Network

"What You Don't Know About Valuations of Closely Held Businesses and Family Limited Partnerships Can Hurt You!"  2005 Estate & Personal Financial Planning Conference sponsored by the Minnesota Society of Certified Public Accountants

 "Business and Commercial Damages – IBA Course 1021," Institute of Business Appraisers – Instructor

"The Basics of Business Valuation or Why Didn't They Teach This in Law School?" – The 25th Annual Family Law Institute sponsored by Minnesota CLE and the MSBA Family Law Section

"Marketability Discounts, The View of Mukesh Bajaj – What's This All About?" – University of St. Thomas, 14th Annual Business Valuation Program

"The Ten Most Important Items to Consider in the Valuation of a Closely Held Business" – 9th Annual Management and Business Advisors Conference sponsored by the Minnesota Society of Certified Public Accountants

"Calculating Non-Patent Intellectual Property Damages" - Economic Damages Seminar - sponsored by the Minnesota Institute of Legal Education – Course Chair

Financial Investigations Seminar - sponsored by the Minnesota Institute of Legal Education – Course Chair

Minnesota State Bar Association: 20th Annual Family Law Institute – "Proving and Calculating Net Income: Analyzing Schedule C/K-1"

3

| | |
|---|---|
| **SPEAKING ENGAGEMENTS/ DISCUSSION LEADER (CONTINUED):** | Asset Valuation Seminar sponsored by the Minnesota Institute of Legal Education |
| | Proof of Damages Seminar sponsored by the Minnesota Trial Lawyers Association |
| | Annual Seminar sponsored by the North Central Chapter of the Institute of Business Appraisers |
| | National Spring Conference of the Minnesota Council of Accounting Educators |
| | 23rd Annual Workshop on Accounting Practices sponsored by the University of Minnesota Civil Litigation Section sponsored by the Hennepin County Bar Association |
| | Annual Management Advisory Services Conference sponsored by the Minnesota Society of Certified Public Accountants |
| | Conference on Managerial Accounting and Decision Making sponsored by the Minnesota Society of Certified Public Accountants |
| | Annual Tax Institute for Public Accountants sponsored by the University of Minnesota |
| | Minnesota Society of Certified Public Accountants – Continuing Professional Education Courses |
| | Annual Workshop on Accounting Practices sponsored by the University of Minnesota Midwest Business Administration Association, Chicago, Illinois |
| | National Accounting Firm – Various Courses in Statistical Sampling Techniques and Auditing Methods |
| | North Central Chapter of the Institute of Business Appraisers: Seventh Annual Business Valuation Seminar – Recent Federal Tax Court Developments, Estate and Gift Tax Valuations |
| | Associated Regional Accounting Firms: 1998 Niche Conference – "Wage Loss Calculations Workshop" |
| **ARTICLES PUBLISHED:** | *"Bringing Clarity To Financial Disputes With A Neutral Accounting Expert",* Attorney At Law Magazine, July 2016 |
| | *"Spotting and Responding to the Red Flags of Fraud",* Corporate Counsel, August 2013 |
| | *"Investors, Turnaround Professionals, and Fraud:  'First Do No Harm'",* The Journal of Private Equity, Summer 2009 |
| | *"The Turnaround Professional and Fraud:  'First Do No Harm',"* Dow Jones DBR Small Cap, February 2009 |
| | "Detecting and Preventing Workplace Fraud," Minnesota Business, December 2008 |
| | *"Pursuing Fraudsters – Key Steps in How Forensic Accountants Investigate Fraud,"* Minnesota Lawyer, September 2008 |

**ARTICLES PUBLISHED (CONTINUED):**

*"An Introduction to the Skills of Forensic Accountants and the Situations that Call for this Relatively New Specialty,"* Minnesota Lawyer, March 2008.

*"A Model for Determining a Reasonable Present Value Discount Rate,"* Maine Lawyers Review, coauthored with Randall E. Dunham, CPA, March 1997

*"Business Acquisitions-Giving it up for the Government,"* Minnesota Business and Opportunities, coauthored with Richard Ledin, CPA, November 1996

*"Computation of Economic Damages in Commercial Litigation,"* Footnote*, Minnesota Society of Certified Public Accountants, April 1991

*"CPA Experts,"* Minnesota Lawyer, September 20 – October 20, 1991

*"Avoid the Minimum Tax in Your Business,"* Business Line, Marquette Bank, Minneapolis, Minnesota, 1988

*"A Code of Ethics - The Mark of a Professional,"* The Competent Professional Advisor, Minnesota Society of Certified Public Accountants, coauthored with Dean Barr, 1986

**CASES WHERE TESTIMONY WAS PROVIDED:**

In the Matter of the Appointment of a Trustee for the Heirs and Next of Kin of Holly E. Hoglund Klein

Land O'Lakes, Inc., Rural Mutual Insurance Co., et al. vs. Daniel J. Ratajczak, Jr., et al.

Terry Nelson, John Nesse, Clark Anderson, and Gary Meyers and their successors in their capacities as Trustees and Fiduciaries of the Painters and Allied Trades District Council No. 82 Health Care Fund, the Painters and Allied Trades District Council No. 82 Vacation Fund, the Painters and Allied Trades District Council 82 STAR Fund, the International Painters and Allied Trades Industry Pension Fund, the Finishing Trades Institute of the Upper Midwest Trust Fund, the National Painting, Decorating, and Drywall Apprenticeship Committee, the St. Paul Painting Industry Pension Fund, the Minneapolis Local 386 Drywall Finishing Industry Pension Fund, the Finishing Trades Institute, the Painters and Allied Trades Labor Management Cooperation Initiative, and each above-named Fund vs. Frana Companies, Inc.; Diamond Drywall, Inc.; David Stellmach; Karen Stellmach; Twin Cities Drywall; and John Does 1-2

The Valspar Corporation, et al. vs. Kronos Worldwide, Inc, et al.

Provident, LLC vs. Tim Allen; Larry Van Denend; Ken Friedman; and Precision Flexo & Gravure, LLC

City of Minneapolis for itself and on behalf of the State of Minnesota, and City of Minneapolis, acting by and through its Park and Recreation Board, for itself and on behalf of the State of Minnesota vs. Lake and Knox LLC vs. Boarman Kroos Vogel Group, Inc., d/b/a BKV Group, a Minnesota corporation; Michael Drahos, an individual; RLK – Kuusisto, Ltd., d/b/a RLK Incorporated, a Minnesota corporation; Chris D. Huss, an individual; Braun Intertec Corporation, a Minnesota corporation; Henry Vloo, an individual; Gregory J. Bailon, an individual

Select Comfort Corporation vs. Tempur Sealy International, Inc., d/b/a Tempur-Pedic and Mattress Firm Holding Corp., d/b/a Mattress Firm

Brent E. Smith and AES Raptor, LLC vs. Garlock Equipment Company

5

| | |
|---|---|
| **CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):** | International Rarities Corp., John R. Stoebner, Trustee v. U.S. Bank National Association, d/b/a Visa Signature and d/b/a WorldPerks Visa Signature Card and John R. Stoebner, Trustee v. BMO Harris Bank, N.A. as successor to M & I Bank and M & I Marshall & Ilsley Bank, d/b/a M & I Mortgage |
| | Firepond, Inc., Michael S. Dietz, v. Erich L. Spangenberg, Audrey E. Spangenberg, Christian Spangenberg, Stephen Peary, FPX, LLC, FP Tech Holdings, LLC, TechDev Holdings, LLC, Acclaim Financial Group, LLC, NMPP, Inc. and Walter J. Gates, III, P.A. |
| | Catlin Underwriting Agencies Ltd; and other Interested Insurers as subrogees of United Taconite, LLC vs. ALLETE, Inc., d/b/a Minnesota Power; and Schneider Electric USA, Inc., f/k/a Square D Company, as successor in interest to Power Distribution Services, Inc |
| | Lariat Companies, Inc. vs. Barbara Wigley and Michael Wigley |
| | American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company v.  Steven G. Graham, and Steven Graham Agency, Inc. |
| | BFI Waste Systems of North America LLC v. Freeway Transfer, Inc. |
| | Julie K. Rhoades v. Guy W. Stillwell |
| | Marvin Lumber and Cedar Company and Marvin Windows of Tennessee, Inc. v. SAPA Extrusions, Inc v. Valspar Corporation |
| | Student Paths, LLC v. Onsharp, Inc. |
| | Patrick Finn and Lighthouse Management Group, Inc., as Receiver for First United Funding, LLC et al. v. Peoples Bank of Wisconsin |
| | DCM Services, LLC v. Teton Asset Management LLC |
| | Kestler Financial Group, Inc. v. Allianz Life Insurance Company of North America |
| | American Steamship Company, A New York Corporation; and Armstrong Steamship Company, A Delaware Corporation v. Hall Dock Company, A Minnesota Corporation; Fraser Shipyards, Inc., A Wisconsin Corporation; RJS Construction, LLC, A Wisconsin Corporation; Chris Jensen & Son Co., A Minnesota Corporation; Reuben Johnson & Son, Inc., A Wisconsin Corporation |
| | Westfield Insurance Company v. Robinson Outdoors, Inc. |
| | North Star International Trucks, Inc. d/b/a Astelford International Trucks, and Astelford Equipment Co., Inc. d/b/a Astleford International Idealease & Isuzu v. Navistar, Inc. and Boyer Ford Trucks, Inc. |
| | Associated Milk Producers, Inc. v. Compressor Services, Ltd., Atlas Copco Compressors, LLC, American Air Products, Inc., d/b/a Clayhill 2, Sullair Corporation |
| | POET Investments, Inc. f/n/a Broin Enterprises, Inc. and POET Nutrition, Inc., f/n/a Dakota Gold Marketing, Inc. v. Midwest Ag Enterprises and Jim Moline |

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

Provell, Inc. v. JetChoice I, LLC, JetChoice II, LLC, David N. Kloeber, Jr. and Brian Overvig; and Thomas Wicka v. David N. Kloeber, Jr.

Douglas Moga v. Shorewater Advisors, LLC, Charles Marais and Eugene Marais

Hartford Fire Insurance Company v. Donald Laverne Clark, Jr., Robin Parsons and Transgroup Express, Inc. d/b/a TransGroup

Chesterfield Exchange, LLC v. Sportsman's Warehouse, Inc. v. Developers Diversified Realty Corporation.

Dale Properties, LLC v. Debra Dale Mudge

Lanier Worldwide, Inc. v. TOPAC Acquisition Corporation

Associated Commercial Finance, Inc., successor by merger to BNC Financial Corporation v. Brady, Martz & Associates, P.C.

Wells Dairy, Inc. v. American Industrial Refrigeration, Inc. Valves and Systems Corporation, O.H. Livermore Construction, Inc., and Hansen Technologies Corporation

Michelle Chamberlin Johnson v. Allen Howard Johnson

Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corporation

NMT Medical, Inc. and Children's Medical Center Corporation v. Cardia, Inc.

Business Methods, Inc. v. Lanier Worldwide, Inc. and Carl Sills, III

Catherine M. Kampf v. Mark N. Kampf

SchlumbergerSema, Inc., n/k/a Atos Origin IT Services, Inc. v. Xcel Energy, Inc. and Northern States Power Company

Boat Dealers' Alliance, Inc. v. Stephen E. Nagin and Nagin, Gallop & Figuerado, P.A.

Lanier Worldwide, Inc. v. Stringer Business Systems, Inc., Stringer Business Systems of Omaha, Inc., John Stringer, Sr., and John Stringer, Jr

King Technology, Inc. v. Pentair Pool Products, Inc.

The Rottlund Company, Inc. d/b/a Rottlund Homes v. Pinnacle Corporation d/b/a Town & Country Homes, Town & Country Homes, Inc., Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc., and Town & Country Homes, Inc. v. Bloodgood Sharp Buster Architects & Planners of Iowa, Inc.

A&L Laboratories, Inc. v. Bou-Matic LLC

Sunrich Foods, Inc. v. Pacific Foods of Oregon, Inc.

Beckie Boman v. Robert W. Baird & Co., Incorporated, Rob Goodmanson, and Bryce Edwards

7

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

Game Financial Corporation and VIAD Corp v. Global Cash Access, L.L.C. and First Data Corporation

Wieser Concrete Products, Inc. v. Endres Farms Partnership, Leon E. Endres, Leon J. Endres, Thomas E. Endres, and ENDRES PROCESSING, LTD., AgStar Financial Services, FLCA, AgStar Farm Credit Services, ACA, and AgStar Financial Services, PCA.

Westra Construction, Inc. v. South Washington County Schools

Diesel Power Equipment Inc., a Nebraska Corporation v. ADDCO, Inc., a Minnesota Corporation

IDS Life Insurance Company; IDS Life Insurance Company of New York; American Centurion Life Assurance Company; and American Express Asset Management Group, Inc. v. ALTO Loan Trust; Chase Manhattan Bank USA, N.A. f/k/a Chase Manhattan Bank Delaware, as Trustee for ALTO Loan Trust; and ING Capital Advisors, LLC f/k/a ING Capital Advisors, Inc.

Four Seasons Automotive Services, Inc. v. The Estate of Evadene L. Habinger, a Nevada Probate Estate and Gerald W. Tank d/b/a Gerald W. Tank Realty, a Minnesota Resident/Sole Proprietorship, successor in tenant to MinVada Corporation, a Nevada Corporation

Patrick T. Manion, Jr. v. Boat Dealers Alliance, Inc.

Mag Instrument, Inc. v. Bison Sportlights, Inc., Stephen Halasz, Christopher Halasz and DOES 1-10

HomePlus Insurance Agency, Inc., Securian Financial Group, Inc. and Minnesota Life Insurance Company v. E.W. Blanch Holdings, Inc.

Heidi Ott A.G. and Heidi Ott v. Target Stores, Inc., Dayton Hudson Corporation, The Brass Key, Inc., Unimax Toys Limited, Unimax Toys (USA), Inc. and John Pellegrene

Canal Capital Corp v. Valley Pride Pack, Inc. a/k/a Pine Valley II, Inc

Sheldon Jacobs v. Luke and Jack Wiley

Diane L. Shea v. Sidney Esensten; Jeffrey A. Arenson; Family Medical Clinic, P. A.

Paul Batterman, et al. v. Allliant Techsystems, Inc.

Gary Olson v. Snap Products, Inc. and Samuel McInnis

E. Ray Carter and Carter Electric Corporation v. Engineered Products Company and Al Roach Sales, Incorporated

Volunteers of America Assisted Living Communities of Minnesota Nonprofit Corporation d/b/a Elder Homestead v. County of Hennepin

Supervalu, Inc., et al. v. Northland Constructors of Duluth, Inc., et al.

8

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

In re the Marriage of Eileen Carney and Clifford Carney – State of Minnesota, County of Scott

James Czaja v. Plastic Specialties and Technologies, Inc. a Delaware corporation; Fred W. Brolling, Carl L. McHattle, and K & B Liquidating Corp., a Minnesota corporation

Soil Teq, Inc. v. TCI Tyler Limited Partnership and Bowen-Tyler Corp.

Cassandra Burney, Dorothy Kelsey and Gregory A. Stevenson, on behalf of themselves and all other similarly situated v. Thorn Americas, Inc., a Delaware corporation; Thorn EMI North America Holdings, Inc., A Delaware corporation

United Sates of America v. Dennis M. Forcelle

SIP-TOP, Inc. v. Ekco Group, Inc. and Ekco Housewares, Inc.

Robert Hollway v. Minnesota Vikings Football Club, Inc. and Roger Headrick

Schoenecker, Inc. f/k/a Business Incentives, Inc. v. Robert Van Buskirk and Maritz, Inc.

Brent A. Ecklund and Anne Marie Ecklund v. Insure America of Minnesota, Inc., Richard C. Aune, Brooklyn Insurance Agency, Inc. and John Doe, Inc.

Aquapoly Equipment Company, a Minnesota corporation v. Dennis McNevin, Donald Qually and Q.Mc. Plastics Machinery, Inc., a Minnesota corporation, d/b/a QMC Plastic Machinery, Inc., and QMC Equipment, Inc., a Minnesota corporation

Butler General Store, Inc., f/k/a Judy's Gift Shop, Inc. v. James K. Binger and United Properties Brokerage and Management Company, a Division of The Northland Company

Barbara Starks and Irene Muldrow, on behalf of themselves and all others similarly situated v. Rent-A-Center and WRS of Minnesota, Inc.; Capital Minnesota Rents, Inc., a Kansas corporation; Rent-A-Center of America, Inc., a Kansas corporation, and Thorn EMI (USA) Inc., a Delaware corporation

Kavouras, Inc. v. Control Data Corporation

Anoka Motors v. Colonial Penn

The King Companies, Inc., d/b/a International Leasing Company v. American Marketing Corporation; Cross Check, Inc.; Credit Card Systems of America; Intercontinental Resources; Bankcard, Ltd.; Paul Green; Timothy LaBadie; and Jeffrey Rifkin

Marshall Foods, Inc. and David J. Weiner v. Jack Gold, Gold & Gold, and Gloria Shimer

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard, Steve Piper, and Bill Patt as Trustees of the Operating Engineers Local #49 Health and Welfare Fund, Michael R. Fanning as a Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillippi, Greg Waffensmith, Mark Ryan, as Trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, | Case File No. 14-CV-2081 (RHK/LIB) <br><br> Judge Richard H. Kyle |

      Plaintiffs,

      vs.

Charps Welding & Fabricating, Inc., Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc., C & G Construction Inc. of Clearbrook, Alpha Oil & Gas Services, Inc., and Kenneth Charpentier, individually,

      Defendants.

---

### EXPERT REPORT
### OF
### JOSEPH D. KENYON

### FEBRUARY 1, 2017

---

**Exhibit B**

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1
METHODOLOGY ........................................................................................................... 2
CONCLUSIONS ............................................................................................................. 2
   Alleged Underreported Hours ................................................................................. 2
   Alter Ego Factors .................................................................................................... 3
BACKGROUND ............................................................................................................. 3
   Charps ....................................................................................................................... 3
   C&G Construction ................................................................................................... 4
   Alpha ........................................................................................................................ 4
   Clearwater ................................................................................................................ 5
   Ken and Sandy Charpentier .................................................................................... 5
   Plaintiff Fringe Funds ............................................................................................. 5
   Wilson-McShane ..................................................................................................... 6
   Dispute ...................................................................................................................... 6
SIIRO REPORT .............................................................................................................. 6
   Overall ...................................................................................................................... 6
   Siiro Report Conclusions ........................................................................................ 7
UNDERREPORTED HOURS DAMAGES ................................................................... 7
   Siiro Report - Alternative Calculation of Alleged Underreported Hours Damages ........ 8
   SDK'S Comments and Observations – Alleged Underreported Hours Damages ........... 10
      *The Siiro Report's Calculation Is Fatally Flawed and Speculative* ................... 10
      *Nonsensical Results* .............................................................................................. 11
      *Errors in The Siiro Report's Calculation* ........................................................... 12
   SDK's Reasonableness Test of Plaintiff Fringe Funds Payments by Charps ............... 13
   Conclusion ............................................................................................................. 19
   SDK – Alpha and C&G Construction Alleged Underreported Hours Damages ............. 20
ALTER EGO FACTORS ............................................................................................... 21
   Siiro Report and SDK Comments ......................................................................... 21
      *Undercapitalization* ............................................................................................. 22
      *Insolvency* ............................................................................................................ 23
      *Failure to Observe Corporate Formalities* ......................................................... 24
      *Failure of Corporation to Own Real Property* ................................................... 25
      *Siphoning By Dominant Shareholders/Cash Advances to Shareholders* ........... 26
      *Advances to Corporation from Shareholders* ..................................................... 27
      *Some Companies Operate At a Profit While Others Operate At a Loss* ............. 28
      *Commingling Of Funds or Assets* ....................................................................... 29
      *Payroll Not Paid By Individual Companies/Payment of Wages by One Company for Another Company* ................................................................................................... 30
      *Services Rendered By Employees of One Company for Another Company* .......... 31
      *Individual Companies Do Not Borrow Money from Each Other* .......................... 32
      *Loans and Other Financial Transactions Between The Companies Are Properly Documented And Conducted On An Arms-Length Basis Or Undocumented Transfers Of Funds Between Companies* 33
      *Equipment and Other Goods of the Individual Companies Are Separate* ........... 34
      *Common Employees* ............................................................................................. 35
QUALIFICATIONS AND COMPENSATION .............................................................. 36
STATEMENT OF LIMITING CONDITION ................................................................. 36

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## APPENDICES

Appendix I            Documents Considered

Appendix II           Summary Reconciliation of Charps' Payroll Hours

Appendix IIa          Reconciliation of Charps' 2008 Monthly Payroll Hours

Appendix IIb          Reconciliation of Charps' 2009 Monthly Payroll Hours

Appendix IIc          Reconciliation of Charps' 2010 Monthly Payroll Hours

Appendix IId          Reconciliation of Charps' 2011 Monthly Payroll Hours

Appendix IIe          Reconciliation of Charps' 2012 Monthly Payroll Hours

Appendix IIf          Reconciliation of Charps' 2013 Monthly Payroll Hours

Appendix IIg          Reconciliation of Charps' 2014 Monthly Payroll Hours

Appendix III          RMA Statistics - Debt to Equity Ratios

Appendix IV           Joseph D. Kenyon, CPA/ABV/CFF, CFE – Curriculum Vitae

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## INTRODUCTION

We have been retained by the law firm of Seaton, Peters & Revnew, P.A. to provide our comments, observations and opinions with respect to the report prepared by Craig Siiro ("Siiro") dated December 1, 2016 (the "Siiro Report").  Siiro was retained by Plaintiffs' counsel, McGrann, Shea, Carnival, Straughn & Lamb, Chartered, to perform an "audit" of Charps Welding & Fabricating, Inc. ("Charps"), Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc. ("Clearwater"), C & G Construction Inc. of Clearbrook ("C&G Construction"), and Alpha Oil & Gas Services, Inc. ("Alpha") for the period January 1, 2008 through December 31, 2016.[1]

The Siiro Report was prepared solely in connection with a lawsuit by Glen Johnson, Timothy Gillen, Kyle Jones, Steven Hall, Clayton Johnson, Mark Hubbard, Steve Piper, and Bill Patt as Trustees of the Operating Engineers Local #49 Health and Welfare Fund, Michael R. Fanning as a Fiduciary of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Joseph Ryan, Bruce Carlson, Glen Johnson, Frank Frattalone, Lee Hiller, Tony Phillippi, Greg Waffensmith, Mark Ryan, as Trustees of the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program, the Operating Engineers Local #49 Health and Welfare Fund, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and the Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program (collectively "the Plaintiffs") versus Charps, Clearwater, C&G Construction, Alpha, (collectively "the Defendant Companies") and Kenneth Charpentier, individually (collectively "the Defendants").

---

[1] Siiro Report, p. 2.

1

The Siiro Report provides opinions on: (1) alleged estimated underreported hours damages (including interest) for the period of 2009 to 2014 for Charps, Alpha and C&G Construction and (2) factors that allegedly indicate that the Defendant Companies act as a single entity.

This report should be read in conjunction with our December 30, 2016 report ("Prior SDK Report").

## METHODOLOGY

In addition to relying upon our education, training and experience, we read and analyzed the documents listed in Appendix I in preparation for this report.  In addition, we toured the Defendants' facility in Clearbrook, Minnesota, and interviewed Kenneth Charpentier, Joseph Van Vynckt, Kris Munter, and Robert Overmoe, CPA, Overmoe & Nelson CPAs.

## CONCLUSIONS

### Alleged Underreported Hours

The Siiro Report's calculation of alleged underreported hours is fatally flawed and speculative, leads to nonsensical results and contains errors.

Based on our analysis, the hours Charps reported to the Plaintiff Fringe Funds reasonably approximate the total hours covered by the CBAs relevant to the Plaintiff Fringe Funds for January 2008 through June 2014.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## Alter Ego Factors

The Siiro Report analysis of certain alter ego factors fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

## BACKGROUND

## Charps

Charps is a Minnesota corporation founded in 2001 and, since 2005, its core business has been transmission line integrity digs, i.e., assessing and maintaining the large steel pipes that transport oil and gas across the country. This involves digging around buried transmission pipelines to evaluate and allow for their repair.[2] Enbridge has been Charps' largest customer. From approximately 2006 to 2011, Charps worked mostly in Wisconsin, with a few projects in Illinois, Kansas, and Minnesota. Today, Charps does not work on oil fields; it works mostly on transmission lines primarily in Illinois, Minnesota, and Wisconsin, but also does some integrity digs and welding work in North Dakota, Indiana, Michigan, Missouri, New York, Ohio and Oklahoma.[3]

Charps is and has been a signatory to a series of CBAs for the Builders Division of the Associated General Contractors of Minnesota and the International Union of Operating Engineers, Local #49. Charps is the only Defendant to sign CBAs.

---

[2] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[3] Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

## C&G Construction

C&G Construction is a Minnesota corporation founded in 2005 by Ken Charpentier and Greg Grensteiner but eventually became a subsidiary of Clearwater.[4] Initially, C&G Construction primarily built poly pipelines transporting gas produced by oil wells in North Dakota and Montana (where C&G Construction has an office).[5] Currently, C&G Construction primarily builds and lays gathering and mid-stream lines for oil and gas producers like ONEOK, Inc. a/k/a Bear Paw Energy LLC and Hess Corp.[6] C&G Construction currently performs work in Oklahoma, Texas, and New York, but has also performed work in Pennsylvania, West Virginia, Kansas and Missouri.[7]

## Alpha

Alpha is a North Dakota corporation founded in 2011 by Ken Charpentier, Ed Charpentier and Kris Munter but eventually became a subsidiary of Clearwater.[8] Alpha was primarily in the business of pipeline services, roustabout services,[9] and land stewardship and performed work in North Dakota and Montana.[10]  The customers and work was different than Charps'.[11] In January 2016, Alpha merged with C&G Construction, with C&G Construction as the surviving entity.[12]

---

[4] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[5] Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[6] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.
[7] Defendant C & G Construction Inc. of Clearbrook's Answers to Plaintiffs' Interrogatories to the Defendants.
[8] Declaration of Ken Charpentier in Support of Defendants' Motion for Summary Judgement dated April 12, 2016.
[9] A roustabout is the piping in and around the wellsite.
[10] Defendant Alpha Oil & Gas Services, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.
[11] Interview of Ken Charpentier.
[12] Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgement dated April 13, 2016.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

## Clearwater

C & G Holding Company of Clearbrook, Inc. was formed as a Minnesota corporation in 2005 and changed its name to Clearwater Energy Group, Inc. ("Clearwater") in January 2014.  In September 2007, Charps and C&G Construction became wholly-owned subsidiaries of Clearwater. Alpha became a wholly-owned subsidiary in 2012. Clearwater currently serves as a holding company and provides management support to the operating entities, Charps, C&G Construction and Alpha (until January 2016), and performs administrative services.[13]  As stated previously, C&G Construction and Alpha merged in January 2016.

## Ken and Sandy Charpentier

Ken Charpentier, his wife Sandy, and certain trusts own 100% of the voting stock of Clearwater.[14]  Ken Charpentier is the President and Chief Executive Officer of Clearwater.

## Plaintiff Fringe Funds

The Plaintiff Fringe Funds are multi-employer jointly-trusteed plans.  The Plaintiff Fringe Funds receive benefit contributions in an amount set forth in the CBAs from numerous employers for each hour worked by their employees covered by the CBAs.[15]

---

[13] Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc.'s Answers to Plaintiffs' Interrogatories to the Defendants.
[14] Defendant Clearwater Energy Group, Inc. f/n/a C & G Holding Company of Clearbrook, Inc.'s Second Supplemental Answers to Plaintiffs' Interrogatories to the Defendants (specifically Attachment E).
[15] Complaint.

**Wilson-McShane**

Wilson-McShane is a third party administrator of Taft-Hartley plans[16] and is the third-party administrator for the Plaintiff Fringe Funds.  Wilson-McShane performs audits of signatories to the CBAs to make sure the benefits are being paid according to the correct union contract.[17]

**Dispute**

Plaintiffs allege Charps and Ken Charpentier operate Clearwater, C&G Construction, and Alpha to avoid obligations to the Plaintiffs.  Plaintiffs further allege that Clearwater, C&G Construction, and Alpha are the alter egos of Charps and as such are bound to the CBAs relevant to the Plaintiff Fringe Funds.

Defendants deny these allegations.

**SIIRO REPORT**

**Overall**

Siiro was asked by the Plaintiffs[18] to perform an "audit" of Charps, Clearwater, C&G Construction and Alpha for the period January 1, 2008 through December 31, 2016. The resulting audit report was based on requirements of the CBAs and Trust Agreements negotiated between the Builders Division of the Associated General Contractors of

---

[16] A Taft-Hartley plan is a collectively bargained multiemployer plan maintained by more than one employer, usually within the same or related industries and a labor union (www.pbgc.gov/prac/multiemployer/introduction-to-multiemployer-plans.html).

[17] Deposition transcript of Melissa Urban-Brown dated March 9, 2016, p. 18.

[18] The Plaintiffs were defined in the Siiro Report as: The Operating Engineers Local #49 Health and Welfare Fund, The Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and The Local #49 International Union of Operating Engineers and Associated General Contractors of Minnesota Apprenticeship and Training Program ("Funds") and their Trustees (Siiro Report. p 3).

Minnesota and the International Union of Operating Engineers, Local 49; the International Union of Operating Engineers and the Pipe Line Contractors Association and the International Union of Operating Engineers and the Distribution Contractors Association.

**Siiro Report Conclusions**

Based upon procedures performed, the Siiro Report sets forth the following opinions:

1.  Based upon the procedures performed, it is Siiro's opinion that underreported hours damages (including interest) for the years 2009 to 2014[19] are:

    a.  $8,010,506 assuming Charps, Alpha, and C&G Construction are all required to submit CBA-required contributions to the Plaintiff Funds; or

    b.  $5,688,798 for Charps only.

2.  There are a number of factors indicating Charps, Alpha, C&G Construction, and Clearwater, act as a single entity.

**UNDERREPORTED HOURS DAMAGES**

The Siiro Report states that Siiro had not completed his review of documents produced by Defendants to-date and, that for those documents he did review, the documents did not provide him the detail necessary to determine how the hours reported to the Plaintiff

---

[19] Although Mr. Siiro was retained to perform an "audit" for the period January 1, 2008 through December 31, 2016, he calculated damages for the years 2009 through 2014 due to his understanding that all records had not been produced (Siiro Report, p. 3).

Fringe Funds were calculated by Defendants. The Siiro Report describes an alternative approach he used to estimate alleged underreported hours.

## Siiro Report - Alternative Calculation of Alleged Underreported Hours Damages

The Siiro Report's alternative calculation of alleged underreported hours and damages is as follows:[20]

1. Using QuickBooks and Spectrum job cost detail reports, the Siiro Report summarized total annual payroll costs for Charps, Alpha and C&G Construction for 2009 through 2014.

2. Using the Wilson-McShane schedule attached as Appendix D to the Siiro Report, the Siiro Report summarized the number of hours Wilson-McShane believes were reported to the Plaintiff Fringe Funds for 2009 through 2014.

3. The Siiro Report first divides the annual payroll costs for Charps by the hours allegedly reported to the Plaintiff Fringe Funds and comes up with a payroll cost per hour for each year which it calls a "Calculated Rate-Charps."

4. The Siiro Report then divides the total annual combined payroll costs for Charps, Alpha and C&G Construction by the hours allegedly reported to the Plaintiff Fringe Funds and comes up with a payroll cost per hour for each year which it calls a "Calculated Rate-Total."

5. The Siiro Report assumes that _all_ annual payroll costs summarized above are covered by the CBAs relevant to the Plaintiff Fringe Funds and further assumes

---

[20] See Schedule 1 of the Siiro Report.

that the lowest annual payroll costs per hour calculated above (2014 for Charps and 2010 for Charps, Alpha and C&G Construction), which it calls an "Adjusted Rate," would capture <u>all</u> potential underreported hours.

6. The Siiro Report calculates alleged underreported hours for Charps by dividing Charps' annual payroll costs by the Charps Adjusted Rate determined above and from that result subtracts the hours allegedly reported to the Plaintiff Fringe Funds to determine Charps' alleged underreported hours. The alleged underreported hours are then multiplied by an annual fringe benefit rate to estimate alleged damages for Charps.

7. The Siiro Report calculates alleged underreported hours for Charps, Alpha and C&G Construction by dividing Charps, Alpha and C&G Construction annual payroll costs by the Charps, Alpha and C&G Construction Adjusted Rate determined above and from that result subtracts the hours allegedly reported to the Plaintiff Fringe Funds to determine Charps, Alpha and C&G Construction alleged underreported hours. The alleged underreported hours are then multiplied by an annual fringe benefit rate to estimate alleged damages for Charps, Alpha and C&G Construction.

8. The Siiro Report calculates double interest damages for each year and adds those amounts to damages.[21]

The Siiro Report calculations result in total alleged damages for the period 2009 through 2014 of $5,688,798 for Charps and $8,010,506 for Charps, Alpha and C&G Construction.

---

[21] The Siiro Report applies the IRC 6621 Table of Unemployment Rates for each year based upon the rate for January of each year.

**SDK'S Comments and Observations – Alleged Underreported Hours Damages**

*The Siiro Report's Calculation Is Fatally Flawed and Speculative*

The Siiro Report's calculation of alleged underreported hours is fatally flawed and speculative. First and foremost, the Siiro Report assumes all payroll costs incurred by Charps, Alpha and C&G Construction are covered by the CBAs relevant to the Plaintiff Fringe Funds. Based upon our analysis below and the financial records we examined, this is not true. Most of the payroll costs and corresponding hours are covered by CBAs not relevant to the Plaintiff Fringe Funds. Further, there are non-union employees such as management and office workers included in the payroll cost. The Siiro Report performs no analysis of payroll costs or employee benefits. Had Siiro reviewed the general ledger for Charps he would have noted, at a minimum, significant amounts paid[22] to union funds other than the Plaintiff Fringe Funds.

Second, the Siiro Report assumes the Adjusted Rate[23] for Charps and Charps, Alpha and C&G Construction are representative of some sort of normal relationship between payroll costs per fringe benefit hour for the Plaintiff Fringe Funds that he can rely on. There is no basis for this assumption. It simply represents a number that calculates the highest possible underreported hours.

Finally, Siiro performs no analysis to identify legitimate non-union work or geographic locations not covered by the CBAs relevant to the Plaintiff Fringe Funds.

---

[22] Alpha and C&G Construction are not union shops.
[23] The lowest annual payroll costs per hour calculated above (2014 for Charps and 2010 for Charps, Alpha and C&G Construction) see Schedule 1 of the Siiro Report.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

*Nonsensical Results*

A comparison of the number of hours the Siiro Report alleges Charps should have reported to the Plaintiff Fringe Funds to the hours Charps actually reported, shows that the Siiro Report alleges that for some years Charps reported less than 15% of the hours worked.



This conclusion does not make sense, particularly as the Plaintiff Fringe Funds' auditor, Wilson-McShane, never found any significant problems with shorted hours and we are not aware of any employee stating that they worked hours but no fringe benefit payments were made.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

A similar comparison of the number of hours the Siiro Report alleges Charps, Alpha and C&G Construction combined should have reported to the Plaintiff Fringe Funds to the hours Charps actually reported, shows an even greater discrepancy between the hours reported and the hours alleged in the Siiro Report, despite no findings of significant problems by the Plaintiff Fringe Funds' auditor nor any employee stating that they worked hours but no fringe benefits payment were made.



*Errors in The Siiro Report's Calculation*

Notwithstanding our opinion that the Siiro Report calculation of alleged underreported hours is fatally flawed and speculative, we noted several errors in the Siiro Report calculation of alleged underreported hours. These errors include the following:

- For 2014, the Siiro Report divides six months of payroll by a full year of reported hours to arrive at a "Calculated Rate" that is inappropriately applied to all other years. If Siiro had used only the hours for the first six months, the same time period used for payroll, his "Calculated Rate" for 2014 would have been $440/hour as opposed to $170/hour.

- The Siiro Report uses inflated payroll figures that include costs other than employee wages, such as employer payroll taxes.

- The Siiro Report uses inappropriate summary contribution rates. For example, it uses a summary contribution rate of $15.49 for 2009. This rate could not be located on the fringe benefit spreadsheet as cited in the Siiro Report. In fact, it appears the maximum employee contribution rate for that year was between $14.19 (January rate) and $15.29 (December rate).

**SDK's Reasonableness Test of Plaintiff Fringe Funds Payments by Charps**

As discussed previously, the Siiro Report performed an incomplete analysis of payroll costs and does not consider any elimination of payroll costs related to non-union employees or other non-Plaintiff unions and CBAs. The Siiro Report simply assumes all payroll costs incurred by Charps, Alpha and C&G Construction are covered by the CBAs relevant to the Plaintiff Fringe Funds.

We worked with Defendant Companies' personnel to compile total labor hours paid out of Charps, labor hours covered by the CBAs relevant to the Plaintiff Fringe Funds, labor hours covered by CBAs not relevant to the Plaintiff Fringe Funds, and other payroll hours for the period of January 2008 to June 2014. The purpose of which was to perform a

reasonableness test as to the amount of possible unaccounted labor hours that could represent hours underreported to the Plaintiff Fringe Funds.

As also discussed in the Prior SDK Report, we requested that Defendant Companies' personnel perform monthly reconciliations of Charps' total payroll hours to the hours reported to the Plaintiff Fringe Funds and hours reported to non-Plaintiff unions based on the monthly remittance reports Charps submitted to the respective union fund.[24]  Hours that were not reported to any union funds were included in an "Other" category.  SDK tested monthly reconciliations prepared by Defendant Companies and analyzed the employees in the "Other" category to determine whether there were any hours that should have been reported to the Plaintiff Fringe Funds but were not. The results of these procedures indicated that any potential underreported payroll hours by Charps to the Plaintiff Fringe Funds were insignificant (see Appendices II and IIa to IIg).

The procedures involved in SDK's reasonableness test are as follows:

1. To determine whether Charps underreported its obligations to the Plaintiff Fringe Funds as alleged, we first needed to ascertain the total hours worked by Charps employees.  This was determined by analyzing payroll summary reports generated from the QuickBooks or Spectrum accounting software.  As part of our testing, we traced the beginning total hours on the monthly reconciliation schedules prepared by Defendant Companies to the payroll summary reports for at least one month in each year and found no discrepancies.

2. The second step in our analysis was to determine, of the total hours worked by Charps employees, how many hours were reported to all union funds.  This was

---

[24] Defendant Companies' monthly payroll hours reconciliations:  08 Summary of Monthly Contributions.xlsx; 09 Summary of Monthly Contributions.xlsx; 10 Summary of Monthly Contributions.xlsx; 11 Summary of Monthly Contributions.xlsx; 12 Summary of Monthly Contributions.xlsx; 13 Summary of Monthly Contributions.xlsx; Spectrum Hrs Rpt – 2013 July-Dec.xls; Spectrum Hrs Rpt – 2014 Jan-June.xlsx.

quantified by Defendant Companies by analyzing monthly remittance reports for each of the union funds.

a. SDK tested the reconciliation prepared by Defendant Companies by comparing the hours reported to the Plaintiff Fringe Funds with those included on the Wilson-McShane schedule attached as Appendix D to the Siiro Report.[25]  Based on this testing, SDK made the following adjustments to the monthly reconciliations prepared by Defendant Companies:

   i. SDK adjusted 163.5 hours for Steven Leavitt and 197.5 hours for Michael Nybo from "Other" to "LOC 49 (MN OP)" in June 2008 to be consistent with the Wilson-McShane schedule attached as Appendix D to the Siiro Report.

   ii. SDK adjusted 50 hours from "Other" to "LOC 49 (MN OP)" for Kevin Nybo in January 2009 to be consistent with the Wilson-McShane schedule attached as Appendix D to the Siiro Report.

   iii. SDK adjusted Haskell Thompson's hours for December 2010 through April 2011 from "LOC 49 (MN OP)" to "LOC 406" as Charps had incorrectly reported Thompson's hours to the Plaintiff Fringe Funds. The Plaintiff Fringe Funds credited these hours back to Charps in May 2011 to correct this issue. Therefore, these hours had originally been entered on the monthly reconciliation as reported to the Plaintiff Fringe Funds but were not included on the Wilson-

---

[25] After SDK's adjustments, there was one discrepancy between the Wilson-McShane schedule attached as Appendix D to the Siiro Report and the reconciliation prepared by the Defendant Companies.  The Wilson-McShane schedule listed 12 hours for Donald Omang in May 2011 whereas the payroll summary and the monthly remittance report listed 120 hours for Donald Omang in May 2011.  It appears, but is unclear, that the Wilson-McShane report included a typo related to these hours.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

McShane schedule attached as Appendix D to the Siiro Report because they had been credited back to Charps at a later date.

iv. SDK adjusted the hours reported to I.U.O.E. in June 2011 and May 2014 to LOC 49 (MN OP) to be consistent with the Wilson-McShane schedule attached as Appendix D to the Siiro Report.

b. SDK selected at least one month in each year for detailed testing of hours worked to determine the accuracy of Defendant Companies' monthly reconciliations.[26] This testing included tracing all hours worked from payroll summary reports to monthly remittance reports for all union funds and detailed inquiries regarding the hours not reported to the union funds.

3. To complete our analysis, we analyzed employee hours paid but for which no hours were reported to union funds. We isolated this population by subtracting the hours reported to unions from the total hours worked by all Charps employees. These hours were listed as "Other" on the Defendant Companies' monthly reconciliation.[27] SDK inquired of Defendant Companies' personnel the type of work performed by approximately 120 employees listed in the "Other" category where Defendant Companies had not identified the type of work performed by the employee on the monthly reconciliations. From this listing, SDK randomly selected twelve individuals for whom to test the representations made by

---

[26] Months selected for testing were August 2008, July 2009, June 2010, September 2011, October 2012, November 2013, January 2014 and May 2014. Months were selected so that each year had a different month tested and that the month selected was one of the higher months in terms of payroll hours for that year.

[27] Examples of employees whose hours do not necessitate contributions to the Plaintiff Fringe Funds include administrative/office personnel and certain non-operator field employees. Additionally, contributions are not required for vacation hours used by some office employees for whom contributions have been made to the Laborers Fund. Finally, union employees whose payroll hours in QuickBooks/Spectrum differed from those on the monthly remittance reports were also included in the "Other" category with the hours differential between QuickBooks/Spectrum and the monthly remittance report listed.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

Defendant Companies' personnel.[28]  Based on the employee data in QuickBooks and/or Spectrum, the representations made by Defendant Companies' personnel appear reasonable.[29]

4.  SDK investigated all employees included in the "Other" category which were identified by Defendant Companies as "LOC 49".  The following are the results of this investigation:

a.  David Johnson (April 2008 - June 2008):  Per Wilson-McShane audit workpaper (WM000010), Johnson's hours in the "Other" category related to shop help and not work covered by the Plaintiffs' CBAs.  Thus, no hours were underreported to the Plaintiff Fringe Funds.

b.  Michael Nybo (December 2010):  According to the QuickBooks payroll summary report, Nybo worked 196 hours; however, 204 hours were reported to the Plaintiff Fringe Funds.  Thus, 8 hours in the "Other" category represent hours overreported to the Plaintiff Fringe Funds.

c.  Thomas Maruska (June 2011):  According to the QuickBooks payroll summary report, Maruska worked 225 hours in June 2011 but only 126 hours were reported to the Plaintiff Fringe Funds.  Based on QuickBooks employee data, Maruska's 99 hours in the "Other" category related to the first two weeks in June in which he was on a Wisconsin job and Wisconsin

---

[28] The individuals selected were:  Ben Anderson, Chris Baumann, Kevin Berg, Allen Johnson, Nate Johnson, Thomas Maruska, Johnny Newport, Edward Pfankuch, Leland Thweatt, Dale Vanalstine, Lawrence Voll, and Matthew Williams.

[29] The employee data reviewed in QuickBooks and/or Spectrum included the hourly wage for which a welder/helper wage was indicated for certain individuals, weekly descriptions of the job to which the employee was assigned, weekly indications of the state where the employee was working, and what, if any, union dues were withheld for the employee.

dues were withheld.  Thus, no hours were underreported to the Plaintiff Fringe Funds.

d.  Michael Nybo (February 2012):  According to the QuickBooks payroll summary report, Nybo worked 120 hours in February 2012; however, only 110 hours were reported to the Plaintiff Fringe Funds.  Thus, 10 hours in the "Other" category represent hours underreported to the Plaintiff Fringe Funds if Nybo was actually performing work covered by the CBAs relevant to the Plaintiff Fringe Funds.

e.  Kelly Anderson (February 2013 – March 2013): According to the QuickBooks payroll summary report, Anderson worked 32 hours in February 2013 and 459 hours in March 2013.  In March 2013, only 274 hours were reported to the International Union of Operating Engineers.  In the following months where Anderson was performing the same work, Anderson's monthly hours were also reported to the International Union of Operating Engineers.  Thus, 217 hours were underreported to the Plaintiff Fringe Funds if Anderson was actually performing work covered by the CBAs relevant to the Plaintiff Fringe Funds.

f.  Bobby Watne (June 2013):  According to the QuickBooks payroll summary report, Watne worked 206 hours in June 2013; however, no hours were reported to any union fund.  In the following months where Watne was performing the same work, Watne's monthly hours were reported to the International Union of Operating Engineers.  Thus, 206 hours were underreported to the Plaintiff Fringe Funds if Watne was actually performing work covered by the CBAs relevant to the Plaintiff Fringe Funds.

The results of these procedures indicated that any potential underreported payroll hours by Charps to the Plaintiff Fringe Funds were insignificant.[30] (See Appendices II and IIa to IIg).

**Conclusion**

Based on our analysis, the hours Charps reported reasonably approximate the total hours covered by the CBAs relevant to the Plaintiff Fringe Funds for January 2008 through June 2014.  The results of SDK's reasonableness test are summarized in the Appendix II series.  Appendix II is the annual summary of Charps' total payroll hours and those hours reported to the Plaintiff Fringe Funds and other union funds.  Appendix IIa-IIg set forth the monthly summaries for each year of Charps' total payroll hours and those hours reported to the Plaintiff Fringe Funds and other union funds.  Based on this analysis, 87% to 95% of Charps' total payroll hours were reported to a union fund (see Appendix II).

Furthermore, this analysis also demonstrates the unreasonableness of Siiro's alleged underreported hours.  The graph below compares the total hours in the "Other" category to Siiro's alleged underreported hours for Charps.  As illustrated, in 2011, 2012 and 2013, Siiro calculates more underreported hours than the remaining hours Charps actually had after reporting to all unions.

---

[30] Total underreported hours of 425 ÷ total Charps payroll hours of 1,972,328 = 0.02%; total underreported hours of 425 ÷ total Charps payroll hours reported to Plaintiff Fringe Funds of 195,852 = 0.2%.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al



## SDK – Alpha and C&G Construction Alleged Underreported Hours Damages

The Siiro Report assumes all payroll costs for Alpha and C&G Construction would relate to work covered by Plaintiffs' CBAs.  Although we do not believe Alpha and C&G Construction should be included in the calculation, if the calculation was to be done, it should only estimate the proportion of payroll costs related to CBAs relevant to the Plaintiff Fringe Funds. It should not include work covered by other non-Plaintiff union CBAs and office administration.  Nor should it include geographical locations not covered by CBAs relevant to the Plaintiff Fringe Funds.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

A percentage of Charps' payroll hours reported to the Plaintiff Fringe Funds compared to the total hours worked by all Charps' employees may be used as a proxy for the payroll mix for Alpha and C&G Construction.  For January 2008 to June 2014, hours reported to the Plaintiff Fringe Funds only represented 2% to 22% of total payroll hours (see Appendix II).

## ALTER EGO FACTORS

The Siiro Report purports to identify factors that would indicate an alter ego relationship between the Defendant Companies. Below is our analysis of the factors contained in the Siiro Report and our comments and observations with respect to each factor.

### Siiro Report and SDK Comments

Siiro opines that there are a number of factors indicating Charps, Alpha, C&G Construction and Clearwater, act as a single entity. These factors and the Siiro Report's notes as to why these factors are important are set forth on Schedule 2 – Alter Ego Analysis of the Siiro Report.

In the Prior SDK Report, we provided an analysis of a number of facts that, in our opinion, indicate that Charps, C&G Construction, Alpha and Clearwater each independently exist with a valid business purpose. Below is our analysis of the factors considered in the Siiro Report that purportedly indicates that Charps, C&G Construction, Alpha and Clearwater acted as a single entity.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

*Undercapitalization*

<u>Siiro Report</u>

The Siiro Report identifies undercapitalization as a factor and focuses on debt/equity calculations by individual company for the years 2008 to 2014 as set forth in Schedule 4 – Debt-Equity Analysis. The Siiro Report states that a debt-equity ratio[31] of 1-2 is often considered reasonable and that the debt to equity ratios for the individual companies range from a negative (90.44) to a high of 838.26. The Siiro Report further states that the benefit of consolidating all the entities results in debt to equity ratios on a consolidated basis ranging from 0.82 to 2.63.

<u>SDK Comments</u>

Our understanding of this factor in an alter ego context is "insufficient capitalization for purposes of corporate undertaking."[32] That is, insufficient equity contributed by the shareholders when the corporation is formed (e.g., $1 contributed for the initial capitalization). Or, alternatively the shareholders take out all the company's equity through salaries or dividends to the detriment of the company's debtors.

Based upon the Defendant Companies' consolidating financial statements contained in audited financial statements, the individual companies had initial capitalizations ranging from $2,000 (Alpha) to $19,137 (Charps).

---

[31] The Siiro Report explains that debt-equity ratio (defined as all total liabilities of a company divided by the company's total equity at year end) is often used to evaluate the capitalization and leverage of companies.
[32] *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979).

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

We do not know the Siiro Report's basis for the statement, "a debt-equity of 1 - 2 is often considered reasonable."[33] Nor what relevance it has for an alter ego analysis, as debt to equity ratios vary by industry and differences can result from a number of different legitimate reasons. For example, Appendix III sets forth actual debt to equity statistics for companies similar to the Defendant Companies.[34] As can be seen, debt to equity ratios vary widely for companies of different sizes and companies within the same size range.

Notwithstanding the above, the large ranges for the debt to equity for the Defendant Companies used by the Siiro Report (negative (90.44) to a high of 838.26) are outliers. Most of the debt to equity ratios range from 0.00 (virtually no debt) to 3.79. Any debt to equity ratios outside of this range principally results from operating losses causing negative equity, changes in financing activities between the Defendant Companies or shareholder dividends principally needed to pay taxes.

The Siiro Report analysis of the "undercapitalization" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Insolvency*

Siiro Report

The Siiro Report identifies insolvency as a factor and states there are a number of years when the individual companies had negative equity balances but the consolidated group showed a positive equity. This is based upon Schedule 3 – Debt-Equity analysis included in the Siiro Report.

---

[33] There is no support provided for this statement and we are not aware of some generally accepted debt to equity benchmark such as this.
[34] We used RMA Debt/Worth statistics for NAICS four digit codes: (1) 3329 – Other Fabricated Metal Product Manufacturing for Charps and (2) 2389 – Other Specialty Trade contractors for Alpha and C&G Construction.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

SDK Comments

A review of Schedule 3 indicates that most of the individual Defendant Companies had positive equity balances during the period of 2008 to 2014. The exceptions were Clearwater, which had negative equity balances in 2013 and 2014 due to significant cash distributions to shareholders principally to pay income taxes and Alpha, which had negative equity balances in 2011, 2013 and 2014 due to operating losses.

The Siiro Report analysis of the "insolvency" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Failure to Observe Corporate Formalities*

Siiro Report

The Siiro Report identifies failure to observe corporate formalities as a factor and states there were many intercompany loan transactions between related entities and no formal loan documents produced.

SDK Comments

The Prior SDK Report includes a listing of facts that indicate the Defendant Companies are following corporate formalities.

There were intercompany loan transactions made between the Defendant Companies during the ordinary course of business. Companies that had cash or access to credit transferred funds through intercompany loans to other companies that needed cash and

those loans were repaid when the companies receiving the loans could repay them.[35] This is oftentimes easier and cheaper than obtaining outside bank financing for all companies. These intercompany loans were accounted for on each of the respective Defendant Companies' books.

No formal loan documents were prepared nor interest charged between companies. Our experience has been that this is not unusual for smaller closely-held companies.

The Siiro Report analysis of the "failure to observe corporate formalities" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose

*Failure of Corporation to Own Real Property*

Siiro Report

The Siiro Report identifies failure of a corporation to own real property as a factor and states that the Defendant Companies leased multiple real properties from K&S Real Estate LLC.

SDK Comments

In our experience it is a commonly accepted practice for privately-owned operating companies not to own real estate but rather have the owner form a separate entity to own the real estate and lease it back to the business. There are a number of reasons for this, including protecting the asset from creditors, providing tax benefits to the shareholders, making it easier to sell the business operations as most transactions do not include the

---

[35] Interviews of Robert Overmoe, Kris Munter and Joe Van Vynckt.

real estate,[36] and having an asset separate from the business that can be sold or passed on to the shareholders' heirs. All of which provide the owner greater flexibility.

The Siiro Report analysis of the "failure of the corporation to own real property" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Siphoning By Dominant Shareholders/Cash Advances to Shareholders*

Siiro Report

The Siiro Report identifies siphoning by dominant shareholders/cash advances to shareholders as a factor and again states there were many intercompany loan transactions between related entities and no formal loan documents produced.

SDK Comments

We do not see siphoning of funds by dominant shareholders. As previously discussed, there were intercompany loan transactions made between the Defendant Companies during the ordinary course of business. Companies that had cash or access to credit transferred funds through intercompany loans to other companies that needed cash and those loans were repaid when the companies receiving the loans could repay them.[37] This is oftentimes easier and cheaper than obtaining outside bank financing for all companies. These intercompany loans were accounted for on each of the respective Defendant Companies' books. No formal loan documents were prepared nor interest charged

---

[36] For example, if real estate is owned by a corporation and the shareholder desires to transfer the real estate out of the corporation, it becomes a taxable event - a bad result.

[37] Interviews of Robert Overmoe, Kris Munter and Joe Van Vynckt.

between companies. Our experience has been that this is not unusual for smaller closely-held companies.

Based upon an analysis of the Defendant Companies' audited financial statements for the years 2008 to 2014, there was a note receivable from shareholders of approximately $160,000 as of December 31, 2008 that was paid back in 2010 and an advance of $1,500,000 made in 2014 which was repaid in the subsequent year. There were no other significant cash advances to shareholders.

The Siiro Report analysis of the "siphoning by dominant shareholders/cash advances to shareholders" factor analysis fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Advances to Corporation from Shareholders*

Siiro Report

The Siiro Report identifies advances to corporation from shareholders as a factor and again states there were many intercompany loan transactions between related entities and no formal loan documents produced.

SDK Comments

Based upon our analysis of the Defendant Companies' audited financial statements, we find no significant cash advances from shareholders. As previously discussed above, there were intercompany loan transactions made between the Defendant Companies during the ordinary course of business. Companies that had cash or access to credit transferred funds through intercompany loans to other companies that needed cash and

those loans were repaid when the companies receiving the loans could repay them.[38] This is oftentimes easier and cheaper than obtaining outside bank financing for all companies. These intercompany loans were accounted for on each of the respective Defendant Companies' books. No formal loan documents were prepared nor interest charged between companies. Our experience has been that this is not unusual for smaller closely-held companies.

The Siiro Report analysis of the *"advances to corporation from shareholders"* factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Some Companies Operate At a Profit While Others Operate At a Loss*

<u>Siiro Report</u>

The Siiro Report identifies that some companies operate at a profit while others operate at a loss as a factor and states that a number of individual companies in the consolidated groups had material losses.

<u>SDK Comments</u>

We are not familiar with this alter ego factor as any group of companies can have some individual companies making a profit and others that do not. This can result from many different reasons including, but not limited to, difference in industries, markets, geographic location, customers, quality of management and circumstances affecting any given construction project.

---

[38] Interviews of Robert Overmoe, Kris Munter and Joe Van Vynckt.

The Siiro Report analysis of the "some companies operate at a profit while others operate at a loss" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Commingling Of Funds or Assets*

<u>Siiro Report</u>

The Siiro Report identifies commingling of funds or assets as a factor and states there were significant intercompany rentals of equipment and the Defendant Companies lease multiple real properties from K&S Real Estate LLC.

<u>SDK Comments</u>

Based upon our analysis of the financial records from 2008 to 2014, we do not see commingling of funds or assets. Clearwater recorded as rental income amounts paid to it by its subsidiaries for rental of equipment and other items that provided cash flow to Clearwater to fund its cash needs.[39] This was done from 2008 until 2013 and accounted for on the books of the respective Defendant Companies and disclosed in the consolidating financial statements.

As previously discussed, it is a commonly accepted practice for privately-owned operating companies not to own real estate but rather have the owner form a separate entity to own the real estate and lease it back to the business. There are a number of reasons for this, including protecting the asset from creditors, providing tax benefits to the shareholders, making it easier to sell the business operations as most transactions do

---

[39] Interview of Robert Overmoe and Kris Munter.

not include the real estate, and having assets separate from the business that can be sold or passed on to the shareholders' heirs. All of which provide the owner greater flexibility.

The Siiro Report analysis of the "commingling of funds or assets" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Payroll Not Paid By Individual Companies/Payment of Wages by One Company for Another Company*

Siiro Report

The Siiro Report identifies payroll not paid by individual companies/payment of wages by one company for another company as a factor and states there were significant amounts of intercompany payroll.

SDK Comments

Each of the Defendant Companies pays its own payroll and benefits. However, on occasion one company may subcontract with another related company. When this is done: (1) employees' wages and benefits are still paid out of the same company and (2) the labor and materials used are accounted for as intercompany transactions and recorded on each company's books to properly record the expense, just as with any other subcontracting relationship. The Defendant Companies account for the time and materials using its job cost system to insure these subcontracting costs are accounted for.[40]

---

[40] Interview of Kris Munter.

The Siiro Report analysis of the "payroll not paid by individual companies/payment of wages by one company for another company" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Services Rendered By Employees of One Company for Another Company*

Siiro Report

The Siiro Report identifies services rendered by employees of one company for another company as a factor and again states there were significant amounts of intercompany payroll.

SDK Comments

This factor seems to be very similar to the previous one discussed above. As discussed, each of the Defendant Companies pays its own payroll and benefits. However, on occasion one company may subcontract with another related company. When this is done: (1) employees' wages and benefits are still paid out of the same company and (2) the labor and materials used are accounted for as intercompany transactions and recorded on each company's books to properly record the expense, just as with any other subcontracting relationship. The Defendant Companies account for the time and materials using its job cost system to insure these subcontracting costs are accounted for.[41]

The Siiro Report analysis of the *"*services rendered by employees of one company for another company" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

---

[41] Interview of Kris Munter.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

*Individual Companies Do Not Borrow Money from Each Other*

Siiro Report

The Siiro Report identifies individual companies do not borrow money from each other as a factor and again states there were many intercompany loan transactions between related entities and no formal loan documents produced.

SDK Comments

In our experience, related companies do borrow from each other due to intercompany funds being cheaper and easier than obtaining necessary bank financing for all related companies. As previously discussed several times above, there were intercompany loan transactions made between the Defendant Companies during the ordinary course of business. Companies that had cash or access to credit transferred funds through intercompany loans to other companies that needed cash and those loans were repaid when the companies receiving the loans could repay them.[42] These intercompany loans were accounted for on each of the respective Defendant Companies' books. No formal loan documents were prepared nor interest charged between companies. Our experience has been that this is not unusual for smaller closely-held companies.

The Siiro Report analysis of the "individual companies do not borrow money from each other" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

---

[42] Interviews of Robert Overmoe, Kris Munter and Joe Van Vynckt.

*Loans and Other Financial Transactions Between The Companies Are Properly Documented And Conducted On An Arms-Length Basis Or Undocumented Transfers Of Funds Between Companies*

<u>Siiro Report</u>

The Siiro Report identifies loans and other financial transactions between the companies are properly documented and conducted on an arms-length basis or undocumented transfers of funds between companies as a factor and again states there were many intercompany loan transactions between related entities and no formal loan documents produced.

<u>SDK Comments</u>

As previously discussed several times above, there were intercompany loan transactions made between the Defendant Companies during the ordinary course of business. Companies that had cash or access to credit transferred funds through intercompany loans to other companies that needed cash and those loans were repaid when the companies receiving the loans could repay them.[43] This is oftentimes easier and cheaper than obtaining outside bank financing for all companies. These intercompany loans were accounted for on each of the respective Defendant Companies' books. No formal loan documents were prepared nor interest charged between companies. Our experience has been that this is not unusual for smaller closely-held companies.

---

[43] Interviews of Robert Overmoe, Kris Munter and Joe Van Vynckt.

The Siiro Report analysis of the "loans and other financial transactions between the companies are properly documented and conducted on an arms-length basis or undocumented transfers of funds between companies" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Equipment and Other Goods of the Individual Companies Are Separate*

Siiro Report

The Siiro Report identifies equipment and other goods of the individual companies are separate as a factor and again states there were significant intercompany rentals of equipment and the Defendant Companies lease multiple real properties from K&S Real Estate LLC.

SDK Comments

As was previously discussed above, based upon our analysis of the financial records from 2008 to 2014 we do not see commingling of funds or assets. Clearwater recorded as rental income amounts paid to it by its subsidiaries for rental of equipment and other items that provided cash flow to Clearwater to fund its cash needs.[44] This was done from 2008 until 2013 and accounted for on the books of the respective Defendant Companies and disclosed in the consolidating financial statements.

---

[44] Interview of Robert Overmoe and Kris Munter.

As previously discussed more than once above, it is a commonly accepted practice for privately-owned operating companies not to own real estate but rather have the owner form a separate entity to own the real estate and lease it back to the business. There are a number of reasons for this, including protecting the asset from creditors, providing tax benefits to the shareholders, making it easier to sell the business operations as most transactions do not include the real estate, and having an asset separate from the business that can be sold or passed on to the shareholders' heirs. All of which provide the owner greater flexibility.

The Siiro Report analysis of the "equipment and other goods of the individual companies are separate" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

*Common Employees*

Siiro Report

The Siiro Report identifies common employees as a factor and states there were significant amounts of intercompany payroll.

SDK Comments

This factor seems to be very similar to two of the factors related to employees previously discussed above. Again, each of the Defendant Companies pays its own payroll and benefits. However, on occasion one company may subcontract with another related company. When this is done: (1) employees' wages and benefits are still paid out of the same company and (2) the labor and materials used are accounted for as intercompany transactions and recorded on each company's books to properly record the expense, just

as with any other subcontracting relationship. The Defendant Companies account for the time and materials using its job cost system to insure these subcontracting costs are accounted for.[45]

The Siiro Report analysis of the "common employees" factor fails to demonstrate that the Defendant Companies do not independently exist or do not have a valid business purpose.

## QUALIFICATIONS AND COMPENSATION

This Expert Report was prepared by Joseph D. Kenyon, CPA/ABV/CFF, CFE with the assistance of Schechter Dokken Kanter professional staff under Mr. Kenyon's supervision and direction.  Mr. Kenyon's qualifications, publications and cases in which testimony has been offered are more fully set forth in the attached Appendix IV.  Mr. Kenyon's hourly rate is $395.

## STATEMENT OF LIMITING CONDITION

Although we have no responsibility to update this Expert Report for events and circumstances occurring after our report date, we reserve the right to update this Expert Report based on future events and circumstances which may become known to us in connection with the above referenced litigation proceedings or for additional information we may receive.

If counsel asks, we will undertake additional work to respond to Plaintiffs' evidence and to reports or testimony of any experts Plaintiffs may offer.  In making such response, we may prepare additional reports and/or exhibits to respond to Plaintiffs' evidence or

---

[45] Interview of Kris Munter.

Expert Report of Joseph D. Kenyon re: Glen Johnson, et al vs. Charps Welding & Fabricating, Inc., et al

expert's reports and testimony.  During deposition or trial, we may also refer to exhibits prepared or used by Plaintiffs' experts.

Respectfully submitted,

Schechter Dokken Kanter
   Andrews & Selcer Ltd

Joseph D. Kenyon, CPA/ABV/CFF, CFE

Shareholder

JDK:ls

**Appendix I**

**Documents Considered**

1 .  Pleadings.

2 .  Declaration of Jeremy Baker in Support of Defendants' Motion for Summary Judgment.

3 .  Declaration of Ed Charpentier in Support of Defendants' Motion for Summary Judgment.

4 .  Declaration of Kenneth Charpentier in Support of Defendants' Motion for Summary Judgment.

5 .  Declaration of Kris Munter in Support of Defendants' Motion for Summary Judgment.

6 .  Declaration of Mark Olson in Support of Defendants' Motion for Summary Judgment.

7 .  Declaration of Greg Todavich in Support of Defendants' Motion for Summary Judgment.

8 .  Declaration of Joe Van Vynckt in Support of Defendants' Motion for Summary Judgment.

9 .  Affidavit of Craig S. Siiro dated April 13, 2016.

10 .  Deposition transcript of Melissa Urban-Brown dated March 9, 2016 and exhibits.

11 .  Deposition transcript of Matthew Edward Loberg dated March 9, 2016 and exhibits.

12 .  Deposition transcript of Craig Siiro dated May 9, 2016 and exhibits.

13 .  Preliminary Audit Report Submitted by Craig Siiro dated December 1, 2016.

14 .  D000001-D000078 (Secretary of State Filings).

15 .  D036454-D038550 (Bank Statements).

16 .  D038551-D038745 (External Financial Statements).

17 .  D038746-D040828 (Tax Returns).

18 .  D040829-D041252 (Charps Payroll Tax Returns).

19 .  D041432-D041672 (Board of Director Minutes).

20 .  D041678-D041717 (Corporate Documents).

21 .  D043181-D043183 (DOT Registrations).

22 .  D043184-D043212 (Alpha Documents).

23 .  D049269-D049274 (Sublease Agreements).

24 .  D049385 (Charps MN Registration).

25 .  D060917-D060961 (Bank Statements).

26 .  D060962-D061223 (Corporate Documents).

27 .  D061224-D061237 (Alpha Loan Documents).

28 .  D061239-D061256 (Secretary of State Documents).

29 .  D061359-D061370 (General Ledger Reports).

Appendix I

**Documents Considered**

30 . D061392-D061468 (Payroll Tax Returns).

31 . P000001-P001023.

32 . WM000001-WM000652.

33 . Various Master Servicing Agreements.

34 . 08 Summary of Monthly Contributions.xlsx.

35 . 09 Summary of Monthly Contributions.xlsx.

36 . 10 Summary of Monthly Contributions.xlsx.

37 . 11 Summary of Monthly Contributions.xlsx.

38 . 12 Summary of Monthly Contributions.xlsx.

39 . 13 Summary of Monthly Contributions.xlsx.

40 . Spectrum Hrs Rpt - 2013 July-Dec.xls.

41 . Spectrum Hrs Rpt - 2014 Jan-June.xlsx.

42 . Monthly Payroll Summary Reports for 2008, 2009, 2010, 2011 and 2012.

43 . Monthly Remittance Reports for January 2008 through June 2014.

**Appendix II**

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Summary Reconciliation of Charps' Payroll Hours**

|  |  | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Jan-June 2014 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Total Hours per Payroll Reports | [1] | 122,729 | 111,653 | 123,937 | 184,841 | 496,767 | 776,457 | 155,944 | 1,972,328 |
| Less: Hours Reported to Plaintiff Fringe Funds | [2] | 26,720 | 18,768 | 20,120 | 25,364 | 19,204 | 65,107 | 20,569 | 195,852 |
| Less: Hours Reported to Other Union Funds |  |  |  |  |  |  |  |  |  |
|    Other Operating Engineer Unions | (A) | 6,720 | 10,163 | 19,086 | 27,978 | 148,620 | 169,337 | 14,445 | 396,349 |
|    Journeymen Unions | (B) | 12,998 | 12,971 | 21,001 | 36,074 | 85,900 | 166,895 | 38,606 | 374,445 |
|    Laborer Unions | (C) | 46,382 | 42,300 | 48,609 | 75,348 | 169,734 | 269,275 | 61,329 | 712,977 |
|    Teamster Unions | (D) | - | - | - | 1,321 | 48,382 | 45,835 | 4,371 | 99,909 |
|    Milwright Unions | (E) | 14,677 | 12,479 | - | - | - | - | - | 27,156 |
| Total Hours Reported to Other Union Funds |  | 80,776 | 77,913 | 88,695 | 140,720 | 452,635 | 651,342 | 118,751 | 1,610,832 |
| Total Hours Reported to all Unions | [3] | 107,496 | 96,680 | 108,815 | 166,084 | 471,839 | 716,448 | 139,320 | 1,806,682 |
| Other Hours |  | 15,233 | 14,973 | 15,123 | 18,757 | 24,929 | 60,009 | 16,624 | 165,648 |
| Less: Hours Not Covered by Plaintiffs' CBAs |  | 15,233 | 14,973 | 15,131 | 18,757 | 24,919 | 59,586 | 16,624 | 165,223 |
| Underreported/(Overreported) Hours to Plaintiff Fringe Funds |  | - | - | (8) | - | 10 | 423 | - | 425 |
| **Percentage of Union Hours to Total Hours** | **[3] ÷ [1]** | **88%** | **87%** | **88%** | **90%** | **95%** | **92%** | **89%** |  |
| **Percentage of Plaintiff Fringe Fund Hours to Total Hours** | **[2] ÷ [1]** | **22%** | **17%** | **16%** | **14%** | **4%** | **8%** | **13%** |  |

**(A)** Operating Engineers Local 101 (KS), Local 139 (WI), Local 150 (IL), Local 18 (OH), Local 324 (MI), Local 406 (LA), Local 513 (MO), Local 542 (PA), Local 627 (OK) and Local 965 (MI).

**(B)** Plumbers and Pipefitters, Local 11; Plumbers Union No. 15; United Association - Union of Plumbers, Fitters, Welders & Service Tech, Local 370; Pipefitters Local 597; Steamfitters Local 601; Pipeline Local 798; United Association - Local 85 Plumbers & Steamfitters.

**(C)** Laborers-Employers Benefit Plan Collection Trust; Minnesota/North Dakota Laborers.

**(D)** Minnesota, Illinois, Michigan Teamsters.

**(E)** Duluth Building Trades Vacation Fund.

Note: Mathematical inaccuracies may occur in the model due to rounding.

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2008 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks (Union & Non-Union) | 5,068 | 7,671 | 7,904 | 9,115 | 8,529 | 10,508 | 13,119 | 18,626 | 10,615 | 13,243 | 10,003 | 8,327 | **122,729** |
| Hours Reported to Plaintiff Fringe Funds [LOC 49 (MN OP)] | 553 | 1,265 | 1,650 | 2,187 | 1,797 | 2,076 | 2,096 | 3,246 | 2,863 | 3,977 | 2,722 | 2,291 | **26,720** |
| Total Hours Reported to other Union Funds | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | 493 | 1,469 | 590 | 1,219 | 720 | 409 | 544 | 1,581 | 416 | 550 | 329 | 375 | **8,694** |
| LOC 15 (MN JM) | 543 | - | 802 | - | 210 | 184 | 209 | 334 | 229 | 278 | 376 | 392 | **3,557** |
| LOC 101 (KS OP) | - | - | - | - | 265 | 883 | 888 | - | - | - | - | - | **2,036** |
| LOC 139 (WI OP) | 350 | 784 | 688 | 550 | 590 | 184 | 309 | 188 | - | 282 | 422 | 339 | **4,684** |
| LOC 597 (IL JM) | - | - | - | - | - | - | - | 130 | 122 | 244 | 190 | 61 | **747** |
| MN/ND LAB | 539 | 869 | 799 | 711 | 945 | 755 | 1,171 | 1,013 | 1,042 | 1,489 | 1,169 | 605 | **11,105** |
| MILWRIGHT | - | 40 | 265 | 376 | 597 | 2,525 | 3,386 | 5,044 | 1,443 | 416 | 300 | 286 | **14,677** |
| LEBPCT | 1,865 | 2,296 | 2,183 | 2,842 | 2,589 | 2,451 | 3,082 | 4,379 | 3,174 | 4,428 | 3,363 | 2,627 | **35,278** |
| Total Hours Reported to other Union Funds | 3,789 | 5,458 | 5,326 | 5,697 | 5,651 | 6,772 | 9,584 | 13,557 | 6,425 | 7,687 | 6,148 | 4,684 | **80,776** |
| Total Hours Reported to all Unions | 4,342 | 6,723 | 6,976 | 7,884 | 7,448 | 8,848 | 11,680 | 16,802 | 9,287 | 11,663 | 8,870 | 6,975 | **107,496** |
| Other Hours | 726 | 948 | 928 | 1,232 | 1,081 | 1,661 | 1,440 | 1,824 | 1,328 | 1,580 | 1,134 | 1,353 | **15,233** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 86% | 88% | 88% | 86% | 87% | 84% | 89% | 90% | 87% | 88% | 89% | 84% | **88%** |
| Other Unions by Type: | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 350 | 784 | 688 | 550 | 590 | 449 | 1,192 | 1,076 | - | 282 | 422 | 339 | 6,720 |
| Journeymen Unions | 1,036 | 1,469 | 1,392 | 1,219 | 930 | 593 | 753 | 2,045 | 767 | 1,072 | 895 | 828 | 12,998 |
| Laborer Unions | 2,404 | 3,165 | 2,982 | 3,553 | 3,534 | 3,206 | 4,253 | 5,392 | 4,215 | 5,917 | 4,532 | 3,231 | 46,382 |
| Teamster Unions | | | | | | | | | | | | | |
| Milwright Unions | - | 40 | 265 | 376 | 597 | 2,525 | 3,386 | 5,044 | 1,443 | 416 | 300 | 286 | 14,677 |
| Total Other Unions | 3,789 | 5,458 | 5,326 | 5,697 | 5,651 | 6,772 | 9,584 | 13,557 | 6,425 | 7,687 | 6,148 | 4,684 | 80,776 |

Note:  Mathematical inaccuracies may occur in the model due to rounding.

Appendix IIb

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2009 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks (Union & Non-Union) | 5,887 | 8,781 | 7,030 | 7,196 | 9,657 | 11,828 | 15,632 | 12,002 | 7,660 | 10,174 | 7,626 | 8,180 | **111,653** |
| Hours Reported to Plaintiff Fringe Funds [LOC 49 (MN OP)] | 1,305 | 2,374 | 1,711 | 1,502 | 2,364 | 2,357 | 1,902 | 1,093 | 1,158 | 1,322 | 816 | 865 | **18,768** |
| Total Hours Reported to other Union Funds | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | 253 | 414 | 388 | 275 | 373 | 313 | 613 | 721 | 364 | 535 | 300 | 328 | **4,877** |
| LOC 15 (MN JM) | 374 | 638 | 401 | 540 | 728 | 546 | 780 | 580 | 638 | 1,040 | 922 | 907 | **8,094** |
| LOC 101 (KS OP) | | | | 354 | 226 | 282 | 286 | - | 499 | 1,695 | 1,276 | 1,637 | **6,255** |
| LOC 139 (WI OP) | 36 | 13 | 40 | 250 | 668 | 522 | 902 | 833 | 645 | - | - | - | **3,909** |
| MN/ND LAB | 823 | 615 | 629 | 679 | 819 | 597 | 784 | 601 | 557 | 780 | 583 | 730 | **8,195** |
| MILWRIGHT | 120 | 142 | 160 | 136 | 170 | 2,972 | 4,902 | 3,635 | 105 | 80 | 57 | | **12,479** |
| LEBPCT | 1,958 | 3,191 | 2,810 | 2,635 | 3,315 | 3,083 | 3,699 | 3,184 | 2,559 | 2,971 | 2,145 | 2,557 | **34,105** |
| Total Hours Reported to other Union Funds | 3,563 | 5,012 | 4,427 | 4,869 | 6,299 | 8,315 | 11,966 | 9,553 | 5,367 | 7,101 | 5,283 | 6,159 | **77,913** |
| Total Hours Reported to all Unions | 4,868 | 7,386 | 6,138 | 6,371 | 8,663 | 10,672 | 13,868 | 10,646 | 6,525 | 8,423 | 6,099 | 7,024 | **96,680** |
| Other Hours | 1,019 | 1,395 | 892 | 825 | 995 | 1,157 | 1,764 | 1,357 | 1,136 | 1,752 | 1,527 | 1,156 | **14,973** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 83% | 84% | 87% | 89% | 90% | 90% | 89% | 89% | 85% | 83% | 80% | 86% | **87%** |
| Other Unions by Type: | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 36 | 13 | 40 | 604 | 894 | 804 | 1,188 | 833 | 1,144 | 1,695 | 1,276 | 1,637 | 10,163 |
| Journeymen Unions | 627 | 1,052 | 789 | 815 | 1,101 | 859 | 1,393 | 1,301 | 1,002 | 1,575 | 1,222 | 1,235 | 12,971 |
| Laborer Unions | 2,780 | 3,805 | 3,438 | 3,314 | 4,134 | 3,680 | 4,483 | 3,785 | 3,116 | 3,751 | 2,728 | 3,287 | 42,300 |
| Teamster Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Milwright Unions | 120 | 142 | 160 | 136 | 170 | 2,972 | 4,902 | 3,635 | 105 | 80 | 57 | - | 12,479 |
| Total Other Unions | 3,563 | 5,012 | 4,427 | 4,869 | 6,299 | 8,315 | 11,966 | 9,553 | 5,367 | 7,101 | 5,283 | 6,159 | 77,913 |

Note:  To reconilce to the Wilson-McShane schedule attached as Appendix D to Siiro's report SDK moved 50 hours from Other to LOC 49 (MN OP) for Kevin Nybo in January 2009.

Note:  Mathematical inaccuracies may occur in the model due to rounding.

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2010 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks (Union & Non-Union) | 4,454 | 7,686 | 5,839 | 8,646 | 8,472 | 9,333 | 10,455 | 9,146 | 10,003 | 17,107 | 15,285 | 17,514 | **123,937** |
| Hours Reported to Plaintiff Fringe Funds [LOC 49 (MN OP)] | 214 | 561 | 316 | 1,015 | 1,175 | 1,519 | 1,814 | 2,593 | 2,810 | 3,572 | 2,348 | 2,185 | **20,120** |
| Total Hours Reported to other Union Funds | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | 219 | 307 | 205 | 225 | 322 | 478 | 315 | 172 | 319 | 608 | 565 | 487 | **4,221** |
| LOC 15 (MN JM) | 495 | 1,419 | 1,000 | 1,233 | 1,236 | 1,331 | 1,454 | 1,151 | 1,481 | 2,034 | 1,888 | 1,818 | **16,538** |
| LOC 101 (KS OP) | 682 | 890 | 135 | 635 | 628 | - | 55 | - | 718 | 1,410 | 421 | 2,241 | **7,815** |
| LOC 139 (WI OP) | 110 | 410 | 901 | 828 | 640 | 1,439 | 1,634 | 700 | 164 | 963 | 2,122 | 1,264 | **11,175** |
| LOC 406 (LA OP) | | | | | | | | | | | | 96 | **96** |
| LOC 597 (IL JM) | - | - | - | - | - | - | - | - | - | - | - | 242 | **242** |
| MN/ND LAB | 576 | 628 | 587 | 700 | 599 | 589 | 734 | 543 | 586 | 773 | 611 | 729 | **7,652** |
| LEBPCT | 1,426 | 2,743 | 1,997 | 3,221 | 3,102 | 3,065 | 3,464 | 3,017 | 3,063 | 5,637 | 4,946 | 5,279 | **40,957** |
| Total Hours Reported to other Union Funds | 3,507 | 6,396 | 4,824 | 6,841 | 6,527 | 6,902 | 7,656 | 5,583 | 6,330 | 11,424 | 10,552 | 12,155 | **88,695** |
| Total Hours Reported to all Unions | 3,721 | 6,956 | 5,140 | 7,856 | 7,702 | 8,421 | 9,470 | 8,175 | 9,139 | 14,996 | 12,900 | 14,340 | **108,815** |
| Other Hours | 733 | 730 | 698 | 790 | 770 | 912 | 985 | 971 | 863 | 2,111 | 2,386 | 3,175 | **15,123** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 84% | 91% | 88% | 91% | 91% | 90% | 91% | 89% | 91% | 88% | 84% | 82% | **88%** |
| Other Unions by Type: | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 792 | 1,300 | 1,036 | 1,463 | 1,268 | 1,439 | 1,689 | 700 | 882 | 2,373 | 2,543 | 3,601 | 19,086 |
| Journeymen Unions | 714 | 1,726 | 1,205 | 1,458 | 1,558 | 1,809 | 1,769 | 1,323 | 1,799 | 2,642 | 2,453 | 2,547 | 21,001 |
| Laborer Unions | 2,002 | 3,370 | 2,583 | 3,920 | 3,701 | 3,654 | 4,198 | 3,560 | 3,649 | 6,409 | 5,557 | 6,008 | 48,609 |
| Teamster Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Milwright Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Other Unions | 3,507 | 6,396 | 4,824 | 6,841 | 6,527 | 6,902 | 7,656 | 5,583 | 6,330 | 11,424 | 10,552 | 12,155 | 88,695 |

Note:  SDK moved 96 hours from LOC 49 (MN OP) for Haskell Thompson in December 2010 to LOC 406 as Charps had reported him to the wrong local and LOC 49 (MN OP) credited these hours back to Charps in May 2011.

Note:  Mathematical inaccuracies may occur in the model due to rounding.

Appendix IId

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2011 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks (Union & Non-Union) | 13,980 | 13,827 | 13,497 | 9,063 | 8,461 | 13,734 | 25,207 | 20,490 | 19,448 | 18,002 | 16,561 | 12,573 | **184,841** |
| **Hours Reported to Plaintiff Fringe Funds** | | | | | | | | | | | | | |
| LOC 49 (MN OP) | 1,687 | 1,813 | 1,328 | 1,163 | 1,139 | 1,640 | 1,697 | 1,194 | 2,241 | 2,881 | 1,643 | 1,488 | **19,910** |
| IUOE - 49 (International OP) | | | | | | | 1,988 | 1,741 | | 331 | 873 | 521 | **5,454** |
| Total Hours Reported to Plaintiff Fringe Funds | 1,687 | 1,813 | 1,328 | 1,163 | 1,139 | 1,640 | 3,684 | 2,935 | 2,241 | 3,212 | 2,516 | 2,009 | **25,364** |
| **Hours Reported to other Union Funds** | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | - | 36 | 382 | 139 | 40 | 373 | - | 157 | 74 | - | 231 | 82 | **1,514** |
| LOC 15 (MN JM) | 402 | 351 | 853 | 518 | 467 | 389 | 673 | 623 | 1,152 | 974 | 310 | 277 | **6,989** |
| LOC 18 (OH OP) | | | | | | | | | | 252 | - | | **252** |
| LOC 139 (WI OP) | 981 | 1,324 | 1,923 | 841 | 832 | 508 | 2,042 | 1,745 | 2,053 | 1,777 | 1,960 | 946 | **16,932** |
| LOC 150 (IL OP) | 385 | 396 | 224 | - | 596 | 1,489 | 1,324 | 575 | 1,148 | - | - | 362 | **6,499** |
| LOC 324 (MI OP) | | | | | | 689 | 342 | 260 | 220 | 305 | 222 | 146 | **2,184** |
| LOC 406 (LA OP) | 128 | 541 | 128 | 160 | 128 | 128 | 378 | 360 | 160 | - | - | - | **2,111** |
| LOC 597 (IL JM) | - | 320 | - | 380 | - | 664 | 986 | 1,555 | - | - | - | 205 | **4,110** |
| LOC 601 (WI JM) | 1,316 | 1,741 | 1,409 | 679 | 1,047 | 429 | 2,839 | 1,540 | 2,836 | 1,293 | 1,111 | 698 | **16,938** |
| LOC 798 (OK JM) | - | 420 | - | - | - | - | 1,233 | 1,837 | 937 | 1,897 | 200 | - | **6,524** |
| MN/ND LAB | 591 | 128 | 594 | 660 | 560 | 436 | 863 | 616 | 653 | 603 | 545 | 687 | **6,935** |
| Teamsters | | | | | | | | 195 | 407 | 237 | 226 | 256 | **1,321** |
| LEBPCT | 4,810 | 4,993 | 5,273 | 3,377 | 3,125 | 5,818 | 9,782 | 7,434 | 6,332 | 6,710 | 6,179 | 4,582 | **68,413** |
| Total Hours Reported to other Union Funds | 8,613 | 10,250 | 10,786 | 6,754 | 6,794 | 10,922 | 20,462 | 16,897 | 15,972 | 14,048 | 10,984 | 8,241 | **140,721** |
| Total Hours Reported to all Unions | 10,300 | 12,062 | 12,114 | 7,916 | 7,933 | 12,562 | 24,146 | 19,832 | 18,213 | 17,260 | 13,500 | 10,249 | **166,084** |
| Other | 3,681 | 1,765 | 1,384 | 1,147 | 528 | 1,173 | 1,062 | 658 | 1,235 | 743 | 3,061 | 2,323 | **18,757** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 74% | 87% | 90% | 87% | 94% | 91% | 96% | 97% | 94% | 96% | 82% | 82% | **90%** |
| **Other Unions by Type:** | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 1,494 | 2,261 | 2,275 | 1,001 | 1,556 | 2,814 | 4,086 | 2,940 | 3,581 | 2,334 | 2,182 | 1,454 | 27,978 |
| Journeymen Unions | 1,718 | 2,868 | 2,644 | 1,716 | 1,554 | 1,855 | 5,731 | 5,712 | 4,999 | 4,164 | 1,852 | 1,262 | 36,074 |
| Laborer Unions | 5,401 | 5,121 | 5,867 | 4,037 | 3,685 | 6,254 | 10,645 | 8,050 | 6,985 | 7,313 | 6,724 | 5,269 | 75,348 |
| Teamster Unions | - | - | - | - | - | - | - | 195 | 407 | 237 | 226 | 256 | 1,321 |
| Milwright Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Other Unions | 8,613 | 10,250 | 10,786 | 6,754 | 6,794 | 10,922 | 20,462 | 16,897 | 15,972 | 14,048 | 10,984 | 8,241 | 140,721 |

Note: SDK moved Haskel Thompson's hours for January through April 2011 from MN OP to Loc. 406 as Charps had reported him to the wrong local and MN OP credited these hours back to Charps in May 2011.

Note: SDK moved the hours reported to I.U.O.E. 49 in June 2011 to MN OP as these hours were included in the Wilson-McShane schedule attached as Appendix D to the Siiro Report.

Note: Total hours are 108 more than the Siiro Report as the Wilson-MsChane Schedule attached as Appendix D listed 12 hours for Donald Omang; however, the contribution report listed 120 hours.

Note: Mathematical inaccuracies may occur in the model due to rounding.

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2012 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks (Union & Non-Union) | 11,003 | 4,141 | 10,878 | 25,184 | 35,471 | 52,160 | 36,367 | 61,844 | 59,076 | 67,403 | 72,139 | 61,102 | **496,767** |
| **Hours Reported to Plaintiff Fringe Funds** | | | | | | | | | | | | | |
| LOC 49 (MN OP) | 1,022 | 1,177 | 2,869 | 1,874 | 997 | 1,117 | 783 | 921 | 862 | 799 | 1,562 | 1,561 | **15,543** |
| IUOE - 49 (International OP) | 935 | 62 | - | - | - | - | - | - | - | 170 | 902 | 1,592 | **3,661** |
| Total Hours Reported to Plaintiff Fringe Funds | 1,957 | 1,239 | 2,869 | 1,874 | 997 | 1,117 | 783 | 921 | 862 | 969 | 2,464 | 3,153 | **19,204** |
| **Hours Reported to other Union Funds** | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | 66 | 74 | 134 | 39 | - | 68 | 176 | 204 | 255 | - | 216 | 116 | **1,348** |
| LOC 15 (MN JM) | 5 | 383 | 1,372 | 724 | 581 | 363 | 151 | 151 | 517 | 513 | 615 | 317 | **5,691** |
| LOC 85 (MI JM) | - | - | - | - | - | - | - | - | - | - | 358 | 371 | **729** |
| LOC 139 (WI OP) | 1,159 | 116 | 4 | - | - | 639 | 892 | 1,255 | 850 | 620 | 297 | - | **5,832** |
| LOC 150 (IL OP) | 471 | 110 | - | - | - | - | - | 2,186 | 2,370 | 2,079 | 1,569 | 2,185 | **10,970** |
| LOC 324 (MI OP) | 223 | 59 | 686 | 2,593 | 3,050 | 3,816 | 3,108 | 2,615 | 1,606 | 1,906 | 1,253 | 676 | **21,591** |
| LOC 542 (PA OP) | - | - | - | 3,699 | 8,619 | 8,601 | 7,406 | 13,640 | 14,273 | 19,407 | 20,348 | 14,234 | **110,227** |
| LOC 597 (IL JM) | 128 | - | - | - | - | 684 | - | 44 | 160 | - | - | 790 | **1,806** |
| LOC 601 (WI JM) | 263 | - | - | - | - | - | 2,353 | 2,745 | 1,742 | 1,098 | 120 | 356 | **8,677** |
| LOC 798 (OK JM) | 1,012 | - | - | 2,847 | 5,981 | 7,064 | 5,274 | 7,119 | 9,506 | 9,678 | 10,454 | 8,714 | **67,649** |
| MN/ND LAB | 689 | 544 | 654 | 605 | 574 | 663 | 604 | 750 | 601 | 676 | 766 | 611 | **7,733** |
| Teamsters | 201 | 58 | 194 | 2,153 | 3,150 | 10,232 | 2,735 | 5,543 | 4,874 | 7,232 | 6,804 | 5,206 | **48,382** |
| LEBPCT | 4,070 | 1,032 | 4,273 | 10,014 | 11,950 | 14,422 | 11,871 | 20,719 | 19,709 | 21,342 | 23,526 | 19,077 | **162,001** |
| Total Hours Reported to other Union Funds | 8,287 | 2,375 | 7,316 | 22,673 | 33,904 | 46,552 | 34,570 | 56,970 | 56,462 | 64,550 | 66,325 | 52,653 | **452,635** |
| Total Hours Reported to all Unions | 10,244 | 3,614 | 10,185 | 24,547 | 34,901 | 47,669 | 35,353 | 57,891 | 57,324 | 65,518 | 68,789 | 55,806 | **471,838** |
| Other | 760 | 527 | 694 | 637 | 570 | 4,491 | 1,015 | 3,952 | 1,752 | 1,885 | 3,350 | 5,296 | **24,929** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 93% | 87% | 94% | 97% | 98% | 91% | 97% | 94% | 97% | 97% | 95% | 91% | **95%** |
| **Other Unions by Type:** | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 1,853 | 285 | 690 | 6,292 | 11,669 | 13,056 | 11,406 | 19,696 | 19,099 | 24,012 | 23,467 | 17,095 | 148,620 |
| Journeymen Unions | 1,474 | 457 | 1,506 | 3,610 | 6,562 | 8,179 | 7,954 | 10,263 | 12,180 | 11,289 | 11,763 | 10,664 | 85,900 |
| Laborer Unions | 4,759 | 1,575 | 4,926 | 10,619 | 12,524 | 15,085 | 12,475 | 21,468 | 20,309 | 22,017 | 24,291 | 19,688 | 169,734 |
| Teamster Unions | 201 | 58 | 194 | 2,153 | 3,150 | 10,232 | 2,735 | 5,543 | 4,874 | 7,232 | 6,804 | 5,206 | 48,382 |
| Milwright Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Other Unions | 8,287 | 2,375 | 7,316 | 22,673 | 33,904 | 46,552 | 34,570 | 56,970 | 56,462 | 64,550 | 66,325 | 52,653 | 452,635 |

Note: Mathematical inaccuracies may occur in the model due to rounding.

**Appendix IIf**

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2013 Monthly Payroll Hours**

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Charps Hours Per QuickBooks/Spectrum (Union & Non-Union) | 38,765 | 58,668 | 79,335 | 53,218 | 65,351 | 67,701 | 65,750 | 93,071 | 69,366 | 75,872 | 70,425 | 38,935 | **776,457** |
| Hours Reported to Plaintiff Fringe Funds | | | | | | | | | | | | | |
| LOC 49 (MN OP) | 1,462 | 1,584 | 1,839 | 1,454 | 2,148 | 1,771 | 1,032 | 1,117 | 867 | 1,254 | 1,944 | 1,537 | **18,007** |
| IUOE - 49 (International OP) | 1,233 | 4,905 | 6,510 | 1,986 | 660 | 3,519 | 4,016 | 6,164 | 4,218 | 4,356 | 5,554 | 3,979 | **47,100** |
| Total Hours Reported to Plaintiff Fringe Funds | 2,695 | 6,489 | 8,349 | 3,440 | 2,808 | 5,290 | 5,048 | 7,281 | 5,085 | 5,610 | 7,498 | 5,516 | **65,107** |
| Hours Reported to other Union Funds | | | | | | | | | | | | | |
| LOC 11 (Northern MN JM) | - | 10 | - | 126 | 244 | - | - | - | - | - | - | - | **380** |
| LOC 15 (MN JM) | 284 | 261 | 313 | 120 | 150 | 120 | - | 40 | 99 | - | - | - | **1,387** |
| LOC 85 (MI JM) | - | - | - | 206 | - | - | - | - | - | - | - | - | **206** |
| LOC 139 (WI OP) | 165 | 367 | 593 | 624 | 635 | 1,043 | 343 | 700 | 909 | 823 | 4,082 | 642 | **10,926** |
| LOC 150 (IL OP) | 340 | 170 | - | 533 | 1,934 | 3,051 | 2,073 | 3,143 | 1,636 | 4,132 | 1,452 | 2,304 | **20,768** |
| LOC 324 (MI OP) | 320 | 320 | 510 | 550 | 939 | 520 | 550 | 384 | 654 | 754 | 818 | 300 | **6,619** |
| LOC 370 (MI JM) | - | - | - | - | - | - | - | - | - | - | 56 | - | **56** |
| LOC 513 (MO OP) | - | 70 | 112 | - | - | - | - | - | - | - | - | - | **182** |
| LOC 542 (PA OP) | 8,679 | 10,730 | 14,692 | 11,825 | 15,949 | 13,607 | 10,388 | 16,197 | 12,285 | 10,214 | 4,953 | 720 | **130,239** |
| LOC 597 (IL JM) | 96 | - | 216 | - | 890 | 2,397 | 2,488 | 8,133 | 5,405 | 7,020 | 6,321 | 2,743 | **35,709** |
| LOC 601 (WI JM) | 705 | 721 | 659 | 502 | 1,314 | 366 | 388 | 986 | 1,508 | 290 | 1,939 | 812 | **10,190** |
| LOC 798 (OK JM) | 6,727 | 10,227 | 15,996 | 10,263 | 11,288 | 9,091 | 10,578 | 13,160 | 9,830 | 9,322 | 7,051 | 5,434 | **118,967** |
| LOC 965 (MI OP) | - | 216 | 337 | 50 | - | - | - | - | - | - | - | - | **603** |
| MN/ND LAB | 509 | 513 | 578 | 480 | 618 | 496 | - | 587 | 419 | 466 | 718 | 338 | **5,722** |
| Teamsters | 3,181 | 4,915 | 5,573 | 4,225 | 4,475 | 3,866 | 3,452 | 4,696 | 3,711 | 3,674 | 2,909 | 1,158 | **45,835** |
| LEBPCT | 12,652 | 20,942 | 26,964 | 16,833 | 19,956 | 23,159 | 20,480 | 30,577 | 22,090 | 27,770 | 27,109 | 15,023 | **263,553** |
| Total Hours Reported to other Union Funds | 33,658 | 49,462 | 66,543 | 46,131 | 58,597 | 57,715 | 50,740 | 78,603 | 58,546 | 64,465 | 57,408 | 29,474 | **651,342** |
| Total Hours Reported to all Unions | 36,353 | 55,951 | 74,892 | 49,571 | 61,405 | 63,005 | 55,788 | 85,884 | 63,631 | 70,075 | 64,906 | 34,989 | **716,448** |
| Other | 2,412 | 2,717 | 4,444 | 3,647 | 3,946 | 4,696 | 9,962 | 7,187 | 5,735 | 5,798 | 5,519 | 3,946 | **60,009** |
| Difference | - | - | - | - | - | - | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 94% | 95% | 94% | 93% | 94% | 93% | 85% | 92% | 92% | 92% | 92% | 90% | **92%** |
| Other Unions by Type: | | | | | | | | | | | | | |
| Other Operating Engineer Unions | 9,504 | 11,873 | 16,244 | 13,582 | 19,457 | 18,221 | 13,354 | 20,424 | 15,484 | 15,923 | 11,305 | 3,966 | 169,337 |
| Journeymen Unions | 7,812 | 11,219 | 17,184 | 11,011 | 14,092 | 11,974 | 13,454 | 22,319 | 16,842 | 16,632 | 15,367 | 8,989 | 166,895 |
| Laborer Unions | 13,161 | 21,455 | 27,542 | 17,313 | 20,573 | 23,654 | 20,480 | 31,164 | 22,509 | 28,236 | 27,827 | 15,361 | 269,275 |
| Teamster Unions | 3,181 | 4,915 | 5,573 | 4,225 | 4,475 | 3,866 | 3,452 | 4,696 | 3,711 | 3,674 | 2,909 | 1,158 | 45,835 |
| Milwright Unions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Other Unions | 33,658 | 49,462 | 66,543 | 46,131 | 58,597 | 57,715 | 50,740 | 78,603 | 58,546 | 64,465 | 57,408 | 29,474 | 651,342 |

Note:  Mathematical inaccuracies may occur in the model due to rounding.

**Appendix IIg**

**Glenn Johnson, et. al. vs. Charps Welding & Fabricating, Inc. et. al.**
**Reconciliation of Charps' 2014 (January - June) Monthly Payroll Hours**

| | January | February | March | April | May | June | TOTAL |
|---|---|---|---|---|---|---|---|
| Total Charps Hours Per Spectrum (Union & Non-Union) | 28,078 | 26,168 | 25,293 | 16,219 | 22,856 | 37,330 | **155,944** |
| **Hours Reported to Plaintiff Fringe Funds** | | | | | | | |
| LOC 49 (MN OP) | 1,680 | 3,777 | 2,561 | 1,980 | 2,558 | 4,894 | **17,449** |
| IUOE - 49 (International OP) | 3,120 | - | - | - | - | - | **3,120** |
| Total Hours Reported to Plaintiff Fringe Funds | 4,800 | 3,777 | 2,561 | 1,980 | 2,558 | 4,894 | **20,569** |
| **Hours Reported to other Union Funds** | | | | | | | |
| LOC 15 (MN JM) | - | - | 293 | - | 30 | - | **323** |
| LOC 101 (KS OP) | - | - | - | - | 482 | - | **482** |
| LOC 139 (WI OP) | 503 | 118 | 14 | 381 | 926 | 658 | **2,600** |
| LOC 150 (IL OP) | 60 | 1,041 | 2,816 | 1,101 | 954 | 1,945 | **7,917** |
| LOC 324 (MI OP) | 482 | 20 | 80 | 364 | 202 | 1,388 | **2,536** |
| LOC 542 (PA OP) | 420 | - | - | - | - | - | **420** |
| LOC 597 (IL JM) | 1,860 | 2,688 | 2,925 | 1,243 | 520 | 2,697 | **11,933** |
| LOC 601 (WI JM) | 349 | 572 | 45 | 439 | 2,091 | 265 | **3,761** |
| LOC 627 (OK OP) | - | - | - | - | 490 | - | **490** |
| LOC 798 (OK JM) | 5,913 | 6,203 | 3,246 | 958 | 828 | 5,441 | **22,589** |
| MN/ND LAB | 467 | 361 | 361 | 378 | 443 | 373 | **2,382** |
| Teamsters | 520 | 635 | 782 | 441 | 709 | 1,284 | **4,371** |
| LEBPCT | 9,164 | 7,793 | 9,811 | 6,600 | 9,812 | 15,769 | **58,948** |
| Total Hours Reported to other Union Funds | 19,738 | 19,430 | 20,373 | 11,905 | 17,486 | 29,820 | **118,751** |
| Total Hours Reported to all Unions | 24,538 | 23,207 | 22,934 | 13,884 | 20,044 | 34,713 | **139,320** |
| Other | 3,541 | 2,961 | 2,359 | 2,335 | 2,812 | 2,616 | **16,624** |
| Difference | - | - | - | - | - | - | **-** |
| Percentage of Union Hours to Total Hours | 87% | 89% | 91% | 86% | 88% | 93% | **89%** |
| **Other Unions by Type:** | | | | | | | |
| Other Operating Engineer Unions | 1,465 | 1,179 | 2,910 | 1,846 | 3,054 | 3,991 | 14,445 |
| Journeymen Unions | 8,122 | 9,463 | 6,509 | 2,640 | 3,469 | 8,403 | 38,606 |
| Laborer Unions | 9,631 | 8,153 | 10,172 | 6,978 | 10,254 | 16,142 | 61,329 |
| Teamster Unions | 520 | 635 | 782 | 441 | 709 | 1,284 | 4,371 |
| Milwright Unions | - | - | - | - | - | - | - |
| Total Other Unions | 19,738 | 19,430 | 20,373 | 11,905 | 17,486 | 29,820 | 118,751 |

Note:  SDK moved the hours reported to I.U.O.E. 49 in May 2014 to MN OP as these hours were included in the Wilson-McShane schedule attached as Appendix D to the Siiro Report.

Note:  Mathematical inaccuracies may occur in the model due to rounding.

Appendix III

**Glenn Johnson, et al v. Charps  Welding & Fabricating, Inc., et al**
**RMA Statistics**
**2015-16 Statement  Studies National-All Regions**
**Debt/Equity Ratios**

| 3329Y - Other Fabricated Metal Product Manufacturing | | | | | | |
|---|---|---|---|---|---|---|
| **Sales** | **$0-1 Million** | **$1-3 Million** | **$3-5 Million** | **$5-10 Million** | **$10-25 Million** | **$25 Million & Over** | **All** |
| **Debt / Equity - upper** | .9 | .6 | .6 | .5 | .4 | .5 | .5 |
| **Debt / Equity - median** | 4.1 | 2.4 | 1.6 | 1.4 | 1.0 | 1.2 | 1.4 |
| **Debt / Equity - lower** | -3.4 | -23.2 | 21.7 | 3.8 | 2.9 | 3.2 | 4.9 |

| 2389Y - Other Specialty Trade Contractors | | | | | | |
|---|---|---|---|---|---|---|
| **Sales** | **$0-1 Million** | **$1-3 Million** | **$3-5 Million** | **$5-10 Million** | **$10-25 Million** | **$25 Million & Over** | **All** |
| **Debt / Equity - upper** | .5 | .7 | .6 | .7 | .7 | .9 | .7 |
| **Debt / Equity - median** | 3.8 | 2.2 | 1.4 | 1.5 | 1.4 | 1.5 | 1.6 |
| **Debt / Equity - lower** | -8.5 | 62.9 | 5.7 | 3.3 | 3.0 | 3.4 | 4.8 |

Source:  RMA Statistics

Note:

Based upon the Defendant Companies' tax returns:

    3329Y - Other Fabricated Metal Product Manufacturing is the most comparable to Charps.

    2389Y - Other Specialty Trade Contractors is the most comparable to C&G Construction and Alpha.

    RMA uses  the term Debt / Worth which is the same as Debt / Equity.  We have used the same terminology as used in our report to reduce confusion

## JOSEPH D. KENYON, CPA/ABV/CFF, CFE
### SCHECHTER DOKKEN KANTER ANDREWS & SELCER LTD

**EXPERIENCE HIGHLIGHTS:**

Mr. Kenyon is a Shareholder and head of the Forensic Accounting and Valuation Services Group at Schechter Dokken Kanter. Mr. Kenyon has over forty years of experience in accounting, auditing and tax practice. Mr. Kenyon provides forensic accounting and valuation services to legal counsel and their clients. These services include developing economic damage studies (e.g. commercial litigation, trademark and patent infringement, business interruption, wrongful death, etc.) or rebutting them, forensic accounting, fraud investigations, business valuations, expert testimony, assistance with discovery and analyses of documents and financial data. Mr. Kenyon's valuation experience includes valuations of business enterprises, deferred compensation agreements, intellectual property and ownership interests in corporations, limited liability companies, partnerships and limited partnerships, among others. He also has experience in dealing with companies in bankruptcy or work out situations and providing arbitration and mediation services to resolve business and professional disputes.

**EDUCATION:**

University of Minnesota, B.S. in Accounting with distinction – 1973

University of Minnesota, Master of Business Taxation – 1989

**CERTIFICATION:**

Certified Public Accountant (CPA) – Minnesota – 1976

Certified Fraud Examiner (CFE) – 1997

Accredited in Business Valuation (ABV) – 1998

Certified in Financial Forensics (CFF) – 2008

FINRA Dispute Resolution Arbitrator - 2015

**PROFESSIONAL & CIVIC ACTIVITIES:**

American Institute of Certified Public Accountants (Past Member of Council, 10/1/90 - 9/30/94)

Minnesota Society of Certified Public Accountants (Past President, 4/1/91-3/31/92, and Member of Board of Directors; Past Chair – Professional Ethics, Community Service and Editorial Committees, Legislative Affairs)

Institute of Management Accountants

National Association of Forensic Economists

American Bankruptcy Institute

Minnesota Association of Business Valuation Professionals (MABVP) (f/k/a NCCIBA) (Past President and Board member)

Association of Certified Fraud Examiners

American Arbitration Association (Panel Member)

ADR Section of Minnesota State Bar Association (Past Chair)

Association of Insolvency and Restructuring Advisors

**PROFESSIONAL & CIVIC ACTIVITIES (CONTINUED):**

Turnaround Management Association (Past President and Board member, local chapter)

Licensing Executives Society, Inc. (U.S.A. & Canada)

**SPEAKING ENGAGEMENTS/ DISCUSSION LEADER:**

"Neutral Work: Best Practices, Tips and Pitfalls", presented with Thomas W. Harjes and Thomas J. Shroyer, 16th Annual MNCPA Business Valuation Conference, November  2016

"Economic Damages Overview and Case Studies", presented with Jennifer Schiefert and Cassandra Elgersma, Allinial Global: Advisory Services Forum, September 2016

"Business Valuation Ethics – What Would You Do?" 25th Annual Business Valuation Conference, presented with Charles Selcer, Adam Herman and Stephen Dennis, February 2015

"Finding Fraud," presented with Ginger Knutsen and Jennifer Schiefert.  24th Annual Business Valuation Conference, February 2014

"When Good Intentions Go Bad," presented with Ginger Knutsen and Jennifer Schiefert. Twin Cities Chapter of Certified Fraud Examiners, August 2013

"Business Torts Deskbook: Business Tort Damages- How to Plead, Prove, Calculate, Defend and Communicate them," Webcast presentation with Wade S. Davis, Bryce A. Young and Hon. Edward T. Wahl, August 2013

"Finding Fraud" Maple Grove Critical Thinking Club, June 2013

"Family Limited Partnerships," presented with Jennifer Schiefert.  22nd Annual Business Valuation Conference, February 2012

"Valuation Discounts – Courting Your Opinions." 21st Annual Business Valuation Conference, presented with Stephen Dennis, William Herber and Jennifer Schiefert, February 2011

"Transaction Databases Case Study: Useable or Not?"  Member of Discussion Panel, The 10th Annual MNCPA Business Valuation Conference, October 2010

"When Good Intentions Go Bad:  Fraud at a Non-Profit," presented with Ginger Knutsen and Jennifer Schiefert.  Department of Justice/Federal Bureau of Investigation 2010 CPA Conference, September 2010

"Appraisal Duels – How Do You Arrive at Value?"  Member of Discussion Panel, The 20th Annual Business Valuation Conference sponsored by the University of St. Thomas, The Institute of Business Appraisers and National Association of Certified Valuation Analysts

"A Volatile Mix:  Fraud and the Current Economy," TMA Upper Midwest Chapter Educational Event

"Detecting and Preventing Fraud In Challenging Times," Member of Discussion Panel. TMA Mid-America Regional Conference

"Winning Before Trial – Finding the Right Expert at the Right Time," Member of Discussion Panel.  Minnesota CLE's First Litigation Advocacy Institute sponsored by Minnesota CLE

**SPEAKING ENGAGEMENTS/ DISCUSSION LEADER (CONTINUED):**

"Business Tort Damages – How to Plead, Prove, Calculate, Defend and Communicate Them," presented with Douglas Peterson, Wade Davis and Kari Abrahamson.  The October 2008 and May 2009, Business Torts Deskbook Series Webcasts sponsored by Minnesota CLE.

"How to Determine Income for a Self-Employed Person," presented with Ginger Wosje.  The 29th Annual Family Law Institute sponsored by Minnesota CLE and MSBA Family Law Section

"Family Limited Partnerships – Learning from Other People's Mistakes."  The 18th Annual Business Valuation Conference sponsored by the University of St. Thomas, American Society of Appraisers and Institute of Business Appraisers

"Valuing the Closely Held Business – Getting the Experts You Need; Understanding How They Do Their Work," presented with Renee Marino, Resolving Minority Shareholder Disputes sponsored by Minnesota State Bar Association Continuing Legal Education

"Business Appraisals:  Something Old, Something New."  25th Annual MNCPA Estate and Personal Financial Planning Conference sponsored by the Minnesota Society of Certified Public Accountants

"Computation of Lost Profits."  Legal & Valuation Fly-In sponsored by PKF North American Network

"What You Don't Know About Valuations of Closely Held Businesses and Family Limited Partnerships Can Hurt You!"  2005 Estate & Personal Financial Planning Conference sponsored by the Minnesota Society of Certified Public Accountants

 "Business and Commercial Damages – IBA Course 1021," Institute of Business Appraisers – Instructor

"The Basics of Business Valuation or Why Didn't They Teach This in Law School?" – The 25th Annual Family Law Institute sponsored by Minnesota CLE and the MSBA Family Law Section

"Marketability Discounts, The View of Mukesh Bajaj – What's This All About?" – University of St. Thomas, 14th Annual Business Valuation Program

"The Ten Most Important Items to Consider in the Valuation of a Closely Held Business" – 9th Annual Management and Business Advisors Conference sponsored by the Minnesota Society of Certified Public Accountants

"Calculating Non-Patent Intellectual Property Damages" - Economic Damages Seminar - sponsored by the Minnesota Institute of Legal Education – Course Chair

Financial Investigations Seminar - sponsored by the Minnesota Institute of Legal Education – Course Chair

Minnesota State Bar Association: 20th Annual Family Law Institute – "Proving and Calculating Net Income: Analyzing Schedule C/K-1"

| | |
|---|---|
| **SPEAKING ENGAGEMENTS/ DISCUSSION LEADER (CONTINUED):** | Asset Valuation Seminar sponsored by the Minnesota Institute of Legal Education |
| | Proof of Damages Seminar sponsored by the Minnesota Trial Lawyers Association |
| | Annual Seminar sponsored by the North Central Chapter of the Institute of Business Appraisers |
| | National Spring Conference of the Minnesota Council of Accounting Educators |
| | 23rd Annual Workshop on Accounting Practices sponsored by the University of Minnesota Civil Litigation Section sponsored by the Hennepin County Bar Association |
| | Annual Management Advisory Services Conference sponsored by the Minnesota Society of Certified Public Accountants |
| | Conference on Managerial Accounting and Decision Making sponsored by the Minnesota Society of Certified Public Accountants |
| | Annual Tax Institute for Public Accountants sponsored by the University of Minnesota |
| | Minnesota Society of Certified Public Accountants – Continuing Professional Education Courses |
| | Annual Workshop on Accounting Practices sponsored by the University of Minnesota Midwest Business Administration Association, Chicago, Illinois |
| | National Accounting Firm – Various Courses in Statistical Sampling Techniques and Auditing Methods |
| | North Central Chapter of the Institute of Business Appraisers: Seventh Annual Business Valuation Seminar – Recent Federal Tax Court Developments, Estate and Gift Tax Valuations |
| | Associated Regional Accounting Firms: 1998 Niche Conference – "Wage Loss Calculations Workshop" |
| **ARTICLES PUBLISHED:** | *"Bringing Clarity To Financial Disputes With A Neutral Accounting Expert",* <u>Attorney At Law Magazine</u>, July 2016 |
| | *"Spotting and Responding to the Red Flags of Fraud",* <u>Corporate Counsel</u>, August 2013 |
| | *"Investors, Turnaround Professionals, and Fraud:  'First Do No Harm'",* <u>The Journal of Private Equity</u>, Summer 2009 |
| | *"The Turnaround Professional and Fraud:  'First Do No Harm',"* <u>Dow Jones DBR Small Cap</u>, February 2009 |
| | "Detecting and Preventing Workplace Fraud," <u>Minnesota Business</u>, December 2008 |
| | *"Pursuing Fraudsters – Key Steps in How Forensic Accountants Investigate Fraud,"* <u>Minnesota Lawyer</u>, September 2008 |

**ARTICLES PUBLISHED (CONTINUED):**

*"An Introduction to the Skills of Forensic Accountants and the Situations that Call for this Relatively New Specialty,"* <u>Minnesota Lawyer</u>, March 2008.

*"A Model for Determining a Reasonable Present Value Discount Rate,"* <u>Maine Lawyers Review</u>, coauthored with Randall E. Dunham, CPA, March 1997

*"Business Acquisitions-Giving it up for the Government,"* <u>Minnesota Business and Opportunities</u>, coauthored with Richard Ledin, CPA, November 1996

*"Computation of Economic Damages in Commercial Litigation,"* <u>Footnote*</u>, Minnesota Society of Certified Public Accountants, April 1991

*"CPA Experts,"* <u>Minnesota Lawyer</u>, September 20 – October 20, 1991

*"Avoid the Minimum Tax in Your Business,"* <u>Business Line</u>, Marquette Bank, Minneapolis, Minnesota, 1988

*"A Code of Ethics - The Mark of a Professional,"* <u>The Competent Professional Advisor</u>, Minnesota Society of Certified Public Accountants, coauthored with Dean Barr, 1986

**CASES WHERE TESTIMONY WAS PROVIDED:**

In the Matter of the Appointment of a Trustee for the Heirs and Next of Kin of Holly E. Hoglund Klein

Land O'Lakes, Inc., Rural Mutual Insurance Co., et al. vs. Daniel J. Ratajczak, Jr., et al.

Terry Nelson, John Nesse, Clark Anderson, and Gary Meyers and their successors in their capacities as Trustees and Fiduciaries of the Painters and Allied Trades District Council No. 82 Health Care Fund, the Painters and Allied Trades District Council No. 82 Vacation Fund, the Painters and Allied Trades District Council 82 STAR Fund, the International Painters and Allied Trades Industry Pension Fund, the Finishing Trades Institute of the Upper Midwest Trust Fund, the National Painting, Decorating, and Drywall Apprenticeship Committee, the St. Paul Painting Industry Pension Fund, the Minneapolis Local 386 Drywall Finishing Industry Pension Fund, the Finishing Trades Institute, the Painters and Allied Trades Labor Management Cooperation Initiative, and each above-named Fund vs. Frana Companies, Inc.; Diamond Drywall, Inc.; David Stellmach; Karen Stellmach; Twin Cities Drywall; and John Does 1-2

The Valspar Corporation, et al. vs. Kronos Worldwide, Inc, et al.

Provident, LLC vs. Tim Allen; Larry Van Denend; Ken Friedman; and Precision Flexo & Gravure, LLC

City of Minneapolis for itself and on behalf of the State of Minnesota, and City of Minneapolis, acting by and through its Park and Recreation Board, for itself and on behalf of the State of Minnesota vs. Lake and Knox LLC vs. Boarman Kroos Vogel Group, Inc., d/b/a BKV Group, a Minnesota corporation; Michael Drahos, an individual; RLK – Kuusisto, Ltd., d/b/a RLK Incorporated, a Minnesota corporation; Chris D. Huss, an individual; Braun Intertec Corporation, a Minnesota corporation; Henry Vloo, an individual; Gregory J. Bailon, an individual

Select Comfort Corporation vs.Tempur Sealy International, Inc., d/b/a Tempur-Pedic and Mattress Firm Holding Corp., d/b/a Mattress Firm

Brent E. Smith and AES Raptor, LLC vs. Garlock Equipment Company

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

International Rarities Corp., John R. Stoebner, Trustee v. U.S. Bank National Association, d/b/a Visa Signature and d/b/a WorldPerks Visa Signature Card and John R. Stoebner, Trustee v. BMO Harris Bank, N.A. as successor to M & I Bank and M & I Marshall & Ilsley Bank, d/b/a M & I Mortgage

Firepond, Inc., Michael S. Dietz, v. Erich L. Spangenberg, Audrey E. Spangenberg, Christian Spangenberg, Stephen Peary, FPX, LLC, FP Tech Holdings, LLC, TechDev Holdings, LLC, Acclaim Financial Group, LLC, NMPP, Inc. and Walter J. Gates, III, P.A.

Catlin Underwriting Agencies Ltd; and other Interested Insurers as subrogees of United Taconite, LLC vs. ALLETE, Inc., d/b/a Minnesota Power; and Schneider Electric USA, Inc., f/k/a Square D Company, as successor in interest to Power Distribution Services, Inc

Lariat Companies, Inc. vs. Barbara Wigley and Michael Wigley

American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company v. Steven G. Graham, and Steven Graham Agency, Inc.

BFI Waste Systems of North America LLC v. Freeway Transfer, Inc.

Julie K. Rhoades v. Guy W. Stillwell

Marvin Lumber and Cedar Company and Marvin Windows of Tennessee, Inc. v. SAPA Extrusions, Inc v. Valspar Corporation

Student Paths, LLC v. Onsharp, Inc.

Patrick Finn and Lighthouse Management Group, Inc., as Receiver for First United Funding, LLC et al. v. Peoples Bank of Wisconsin

DCM Services, LLC v. Teton Asset Management LLC

Kestler Financial Group, Inc. v. Allianz Life Insurance Company of North America

American Steamship Company, A New York Corporation; and Armstrong Steamship Company, A Delaware Corporation v. Hall Dock Company, A Minnesota Corporation; Fraser Shipyards, Inc., A Wisconsin Corporation; RJS Construction, LLC, A Wisconsin Corporation; Chris Jensen & Son Co., A Minnesota Corporation; Reuben Johnson & Son, Inc., A Wisconsin Corporation

Westfield Insurance Company v. Robinson Outdoors, Inc.

North Star International Trucks, Inc. d/b/a Astelford International Trucks, and Astelford Equipment Co., Inc. d/b/a Astleford International Idealease & Isuzu v. Navistar, Inc. and Boyer Ford Trucks, Inc.

Associated Milk Producers, Inc. v. Compressor Services, Ltd., Atlas Copco Compressors, LLC, American Air Products, Inc., d/b/a Clayhill 2, Sullair Corporation

POET Investments, Inc. f/n/a Broin Enterprises, Inc. and POET Nutrition, Inc., f/n/a Dakota Gold Marketing, Inc. v. Midwest Ag Enterprises and Jim Moline

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

Provell, Inc. v. JetChoice I, LLC, JetChoice II, LLC, David N. Kloeber, Jr. and Brian Overvig; and Thomas Wicka v. David N. Kloeber, Jr.

Douglas Moga v. Shorewater Advisors, LLC, Charles Marais and Eugene Marais

Hartford Fire Insurance Company v. Donald Laverne Clark, Jr., Robin Parsons and Transgroup Express, Inc. d/b/a TransGroup

Chesterfield Exchange, LLC v. Sportsman's Warehouse, Inc. v. Developers Diversified Realty Corporation.

Dale Properties, LLC v. Debra Dale Mudge

Lanier Worldwide, Inc. v. TOPAC Acquisition Corporation

Associated Commercial Finance, Inc., successor by merger to BNC Financial Corporation v. Brady, Martz & Associates, P.C.

Wells Dairy, Inc. v. American Industrial Refrigeration, Inc. Valves and Systems Corporation, O.H. Livermore Construction, Inc., and Hansen Technologies Corporation

Michelle Chamberlin Johnson v. Allen Howard Johnson

Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corporation

NMT Medical, Inc. and Children's Medical Center Corporation v. Cardia, Inc.

Business Methods, Inc. v. Lanier Worldwide, Inc. and Carl Sills, III

Catherine M. Kampf v. Mark N. Kampf

SchlumbergerSema, Inc., n/k/a Atos Origin IT Services, Inc. v. Xcel Energy, Inc. and Northern States Power Company

Boat Dealers' Alliance, Inc. v. Stephen E. Nagin and Nagin, Gallop & Figuerado, P.A.

Lanier Worldwide, Inc. v. Stringer Business Systems, Inc., Stringer Business Systems of Omaha, Inc., John Stringer, Sr., and John Stringer, Jr

King Technology, Inc. v. Pentair Pool Products, Inc.

The Rottlund Company, Inc. d/b/a Rottlund Homes v. Pinnacle Corporation d/b/a Town & Country Homes, Town & Country Homes, Inc., Bloodgood Sharp Buster Architects & Planners of Iowa, Inc., and The Bloodgood Group, Inc., and Town & Country Homes, Inc. v. Bloodgood Sharp Buster Architects & Planners of Iowa, Inc.

A&L Laboratories, Inc. v. Bou-Matic LLC

Sunrich Foods, Inc. v. Pacific Foods of Oregon, Inc.

Beckie Boman v. Robert W. Baird & Co., Incorporated, Rob Goodmanson, and Bryce Edwards

**CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):**

Game Financial Corporation and VIAD Corp v. Global Cash Access, L.L.C. and First Data Corporation

Wieser Concrete Products, Inc. v. Endres Farms Partnership, Leon E. Endres, Leon J. Endres, Thomas E. Endres, and ENDRES PROCESSING, LTD., AgStar Financial Services, FLCA, AgStar Farm Credit Services, ACA, and AgStar Financial Services, PCA.

Westra Construction, Inc. v. South Washington County Schools

Diesel Power Equipment Inc., a Nebraska Corporation v. ADDCO, Inc., a Minnesota Corporation

IDS Life Insurance Company; IDS Life Insurance Company of New York; American Centurion Life Assurance Company; and American Express Asset Management Group, Inc. v. ALTO Loan Trust; Chase Manhattan Bank USA, N.A. f/k/a Chase Manhattan Bank Delaware, as Trustee for ALTO Loan Trust; and ING Capital Advisors, LLC f/k/a ING Capital Advisors, Inc.

Four Seasons Automotive Services, Inc. v. The Estate of Evadene L. Habinger, a Nevada Probate Estate and Gerald W. Tank d/b/a Gerald W. Tank Realty, a Minnesota Resident/Sole Proprietorship, successor in tenant to MinVada Corporation, a Nevada Corporation

Patrick T. Manion, Jr. v. Boat Dealers Alliance, Inc.

Mag Instrument, Inc. v. Bison Sportlights, Inc., Stephen Halasz, Christopher Halasz and DOES 1-10

HomePlus Insurance Agency, Inc., Securian Financial Group, Inc. and Minnesota Life Insurance Company v. E.W. Blanch Holdings, Inc.

Heidi Ott A.G. and Heidi Ott v. Target Stores, Inc., Dayton Hudson Corporation, The Brass Key, Inc., Unimax Toys Limited, Unimax Toys (USA), Inc. and John Pellegrene

Canal Capital Corp v. Valley Pride Pack, Inc. a/k/a Pine Valley II, Inc

Sheldon Jacobs v. Luke and Jack Wiley

Diane L. Shea v. Sidney Esensten; Jeffrey A. Arenson; Family Medical Clinic, P. A.

Paul Batterman, et al. v. Allliant Techsystems, Inc.

Gary Olson v. Snap Products, Inc. and Samuel McInnis

E. Ray Carter and Carter Electric Corporation v. Engineered Products Company and Al Roach Sales, Incorporated

Volunteers of America Assisted Living Communities of Minnesota Nonprofit Corporation d/b/a Elder Homestead v. County of Hennepin

Supervalu, Inc., et al. v. Northland Constructors of Duluth, Inc., et al.

| | |
|---|---|
| **CASES WHERE TESTIMONY WAS PROVIDED (CONTINUED):** | In re the Marriage of Eileen Carney and Clifford Carney – State of Minnesota, County of Scott |
| | James Czaja v. Plastic Specialties and Technologies, Inc. a Delaware corporation; Fred W. Brolling, Carl L. McHattle, and K and B Liquidating Corp., a Minnesota corporation |
| | Soil Teq, Inc. v. TCI Tyler Limited Partnership and Bowen-Tyler Corp. |
| | Cassandra Burney, Dorothy Kelsey and Gregory A. Stevenson, on behalf of themselves and all other similarly situated v. Thorn Americas, Inc., a Delaware corporation; Thorn EMI North America Holdings, Inc., A Delaware corporation |
| | United Sates of America v. Dennis M. Forcelle |
| | SIP-TOP, Inc. v. Ekco Group, Inc. and Ekco Housewares, Inc. |
| | Robert Hollway v. Minnesota Vikings Football Club, Inc. and Roger Headrick |
| | Schoenecker, Inc. f/k/a Business Incentives, Inc. v. Robert Van Buskirk and Maritz, Inc. |
| | Brent A. Ecklund and Anne Marie Ecklund v. Insure America of Minnesota, Inc., Richard C. Aune, Brooklyn Insurance Agency, Inc. and John Doe, Inc. |
| | Aquapoly Equipment Company, a Minnesota corporation v. Dennis McNevin, Donald Qually and Q.Mc. Plastics Machinery, Inc., a Minnesota corporation, d/b/a QMC Plastic Machinery, Inc., and QMC Equipment, Inc., a Minnesota corporation |
| | Butler General Store, Inc., f/k/a Judy's Gift Shop, Inc. v. James K. Binger and United Properties Brokerage and Management Company, a Division of The Northland Company |
| | Barbara Starks and Irene Muldrow, on behalf of themselves and all others similarly situated v. Rent-A-Center and WRS of Minnesota, Inc.; Capital Minnesota Rents, Inc., a Kansas corporation; Rent-A-Center of America, Inc., a Kansas corporation, and Thorn EMI (USA) Inc., a Delaware corporation |
| | Kavouras, Inc. v. Control Data Corporation |
| | Anoka Motors v. Colonial Penn |
| | The King Companies, Inc., d/b/a International Leasing Company v. American Marketing Corporation; Cross Check, Inc.; Credit Card Systems of America; Intercontinental Resources; Bankcard, Ltd.; Paul Green; Timothy LaBadie; and Jeffrey Rifkin |
| | Marshall Foods, Inc. and David J. Weiner v. Jack Gold, Gold & Gold, and Gloria Shimer |