UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Glen Johnson, Timothy Gillen,
Kyle Jones, Steven Hall, Clayton
Johnson, Mark Hubbard, Steve Piper,
and Bill Patt, Trustees of the Operating
Engineers Local #49 Health and
Welfare Fund; Michael R. Fanning,
Fiduciary of the Central Penson Fund of
the International Union of Operating
Engineers and Participating Employers;
Joseph Ryan, Bruce Carlson, Glen
Johnson, Frank Frattalone, Lee Hiller,
Tony Phillippi, Greg Waffensmith, and
Mark Ryan, Trustees of the Local #49
International Union of Operating
Engineers and Associated General
Contractors of Minnesota Apprenticeship
and Training Program; The Operating
Engineers Local #49 Health and Welfare
Fund; The Central Pension Fund of the
International Union of Operating
Engineers and Participating Employers;
and The Local #49 International Union
of Operating Engineers and Associated
General Contractors of Minnesota
Apprenticeship and Training Program,

   Plaintiffs,

v.

Charps Welding & Fabricating, Inc.;
Clearwater Energy Group, Inc. f/k/a
C & G Holding Company of Clearbrook,
Inc.; C & G Construction Inc. of
Clearbrook; Alpha Oil & Gas Services,
Inc.; and Kenneth Charpentier,

   Defendants.

Civ. No. 14-2081 (PAM/LIB)

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Attorney's Fees and Costs. (Docket No. 316.) For the following reasons, the Motion is granted.

**BACKGROUND**

This case arises from Defendants' alleged failure to make contributions to three multi-employer, jointly trusteed fringe benefit plans (the "Funds") administered pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiffs are the trustees and fiduciaries of the Funds, and they brought this action to audit Defendants and recover contributions that Defendants allegedly owed to the Funds. The full factual background is set forth in the Court's August 20, 2018, Memorandum and Order granting Defendants' Motion for Summary Judgment. (Docket No. 311.) Defendants filed this Motion for Attorney's Fees and Costs on September 4, 2018. (Docket No. 316.)

Defendants claim that ERISA allows the Court, in its discretion, to award them attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). They request $2,096,063.75 in attorney's fees and $525,517.32 in costs, and argue that a balance of the five factors discussed in Lawrence v. Westerhaus demonstrates that an award of fees is appropriate. 749 F.2d 494, 496 (8th Cir. 1984).

Plaintiffs claim that 29 U.S.C. § 1132(g)(2) applies to this action rather than § 1132(g)(1) and provides no statutory basis for Defendants' attorney's fees. This subsection applies only to plaintiffs who obtain "a judgment in favor of the plan." § 1132(g)(2). Plaintiffs further argue that the Westerhaus factors show that

Defendants are not entitled to fees, and that Defendants' bill of costs is overstated and includes several billings that are not eligible for award.

**DISCUSSION**

ERISA permits the Court "in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." Id. § 1132(g)(1). The Court has discretion to award costs and fees to any claimant who "has achieved some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010) (quotation omitted). In deciding whether to award attorney's fees, the Court should consider five factors: (1) "the degree of the opposing parties' culpability or bad faith"; (2) the opposing parties' ability to pay; (3) whether an award of fees would "deter other persons acting under similar circumstances"; (4) whether the fee claimant "sought to benefit all participants and beneficiaries" of the plan or "to resolve a significant legal question regarding ERISA"; and (5) "the relative merits of the parties' positions." Westerhaus, 749 F.2d at 496 (alteration omitted). These factors are "general guidelines" and are "by no means exclusive or to be mechanically applied." Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002).

An award of attorney's fees must also be reasonable. The Eighth Circuit has approved the use of the "lodestar" method to calculate attorney's fees in ERISA cases. See Brown v. Aventis Pharm., Inc., 341 F.3d 822, 829 (8th Cir. 2003). The lodestar is the number of hours reasonably expended times a reasonable hourly rate for those hours. Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002). Courts consider several factors under the lodestar method to determine the reasonableness of a fee, including the

time and labor required, the novelty and difficulty of the legal questions, the skill required to perform the legal service, customary fees, and the outcome of the action. See Hensly v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).

## A. Attorney's Fees Under ERISA

Plaintiffs argue that § 1132(g)(2) provides Defendants no statutory basis for fees and costs. However, this paragraph applies only to "any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded." Id. § 1132(g)(2). Here, judgment was entered in favor of the Defendants, and not in favor of the plan. (See Docket No. 311.) Therefore, this action falls under § 1132(g)(1), which allows for an award of attorney's fees and costs in "any action under this subchapter (other than an action described in paragraph (2))." Id. § 1132 (g)(1). Attorney's fees are statutorily appropriate in this case. To determine if they are warranted, the Court will consider each of the Westerhaus factors in turn.

### 1. Culpability or Bad Faith

The first factor asks a court to consider "the degree of Defendant's culpability or bad faith." Westerhaus, 749 F.2d at 496. Courts have considered "the degree of blameworthiness" between the parties when analyzing this factor, rather than "narrowly considering whether the trustees had acted in bad faith." See Trs. of the Eighth Dist. Elec. Pension Fund v. Wasatch Front Elec. & Constr., LLC, 598 F. App'x 563, 566 (10th Cir. 2014). While Plaintiffs prolonged this litigation, continued to litigate in spite of a lack of evidence, and insufficiently cited to the record, such actions do not arise to bad faith. There is no evidence in the record that Plaintiffs pursued frivolous or completely

4

meritless claims, or that Plaintiffs had nefarious motives behind this lawsuit. Further, Plaintiffs were at times successful or partially successful with their arguments throughout the course of litigation. (See Docket Nos. 31, 59, 107.) Defendants contend that Plaintiffs acted in bad faith because the evidence "conclusively defeated" their arguments. (Defs.' Supp. Mem. (Docket No. 311) at 7.) Rather than establish bad faith, this argument explains why the Court entered summary judgment in Defendants' favor. "A losing plaintiff . . . will not necessarily be found 'culpable', but may be only in error or unable to prove his case." Marquardt v. North Am. Car Corp., 652 F.2d 715, 720 (7th Cir. 1981). The Court finds this factor neutral in a determination of attorney's fees.

### 2. Ability to Satisfy Award

Defendants assert that Plaintiffs are more than capable of satisfying their requested award. In support, Defendants cite to documents in the record showing that Plaintiff Central Pension Fund alone has assets worth well over $13 billion, and that other Plaintiffs also hold substantial funds to pay the requested attorney's fees and costs. (Defs.' Supp. Mem. at 8.) Plaintiffs contend that liquidating plan assets to pay an award would harm beneficiaries, but do not offer any evidence of such harm. Considering Plaintiffs' combined wealth, the Court finds that they are able to satisfy an award, and this factor weighs in favor of awarding fees.

### 3. Deterrence

Plaintiffs' litigation tactics have allowed this case to drag on for more than four years. This Court has previously expressed concern about awarding fees to successful ERISA defendants, stating that such awards may prevent plaintiff-trustees from seeking

5

unpaid contributions in the future.  See Trs. of Twin Cities Bricklayers, Fringe Benefit Funds v. McArthur Tile Corp., No. 03cv5497, 2005 WL 1140610, at *2 (D. Minn. May 11, 2005) (Magnuson, J.).  Indeed, "[w]hile ERISA's purpose is remedial, it was enacted to protect, among other things, 'the interests of participants in employee benefit plans and their beneficiaries.'"  Martin, 299 F.3d at 973 (quoting 29 U.S.C. § 1001(b)).  However, as in Martin, the Defendants here "did nothing to hinder the interests of a participant in an employee benefit plan."  Id.  Rather, Plaintiffs utterly failed to produce evidence that Defendant Charps was not complying with its payment obligations.  There is an interest in deterring meritless claims that trap employers in lengthy litigation when those employers are complying with ERISA's requirements.

Additionally, there is an interest in deterring over-zealous and inadequate litigation in ERISA cases.  The Court noted that Plaintiffs had "not presented evidence to support their claims, or they failed to cite with particularity the facts to support those claims."  (Docket No. 311 at 18.)  Plaintiffs also engaged in sloppy discovery, inconsistent use of expert reports, and filed unnecessary motions with duplicative and unsupported arguments.  This factor therefore weighs in favor of awarding fees.

    4.    **Benefit to ERISA and ERISA participants**

"[T]he benefit of the suit to all participants in an ERISA plan or the resolution of a significant legal question under ERISA is . . . primarily relevant only to whether plaintiffs should be awarded attorneys' fees."  Marquardt, 652 F.2d at 721.  Defendants concede that they did not seek to benefit all participants or beneficiaries with their actions in this lawsuit.  Nor did this case resolve a "significant legal question" regarding ERISA; alter-

6

ego/joint venture arguments are not unique to this action. E.g., Seipel v. Arrowhead Indus. Serv., No. 07cv3864, 2010 WL 605722, at *2-3 (D. Minn. Feb. 11, 2010) (Schiltz, J.); Trs. of the Eighth Dist., 598 F. Appx. at 566. This factor weighs against awarding attorney's fees.

### 5. Relative Merits

The final factor requires the Court to examine the relative merits of the parties' positions. This factor weighs in favor of awarding attorney's fees for the same reasons discussed above. In McArthur Tile, Defendants prevailed only after a two-day bench trial and "extensive examination of the factual evidence and testimony." See Trs. of Twin Cities Brick Layers, 2005 WL 1140610, at *3. In this case, Plaintiffs continued pursuing this litigation without sufficient facts, evidence, or citations to support their arguments of joint venture/alter-ego liability against the Defendants. The Court did not require a trial nor "extensive examination" of the evidence to determine Defendants' success on the merits. Id. This factor supports an award of attorney's fees.

### 6. Conclusion

Three of the five Westerhaus factors weigh in favor of granting an award of attorney's fees in this case. In the Court's opinion, the Westerhaus factors cumulatively demonstrate that an award is appropriate.

## B. Reasonable Fee and Hours

ERISA permits the court to award a "reasonable attorney's fee." Id. § 1132(g)(1). As noted, courts consider the "lodestar" factors when determining the reasonableness of attorney's fees under ERISA. Defendants claim hourly rates between $265 and $345 for

7

partners, and between $175 to $250 for associates. In total, Defendants claim 8,779.35 billable hours, and ask for a total fee award of $2,096,063.75. Deficiencies in Defendants' billing records lead the Court to reduce this award.

First, partners performed several simple tasks that associates could have performed at a lower rate. Additionally, the claimed associate billing rate of $240 per hour is high considering the size of the firm, the simplicity of the tasks, and prevailing market rates. Defendants' comparisons to hourly rates at Michael Best and Dorsey & Whitney are inapplicable, as those firms have hundreds of attorneys, compared to a firm of 12 in this case. Additionally, ERISA alter-ego claims are not unique, and many of the billed tasks were simple and commonplace in litigation.

Second, some of the claimed hours are duplicative and Defendants describe their tasks too generally. A failure to describe the subject matter of a billed task with specificity is a proper basis for a reduction in fees. See Utecht v. Diamond Lake, Inc., No. 16cv118, 2017 WL 6734178, at *6-7 (D. Minn. Dec. 29, 2017) (Tunheim, J.). Defendants achieved varying degrees of success throughout the litigation (see Docket Nos. 31, 59, 107), which supports a reduction of hours on the unsuccessful claims and motions. See generally Hensley, 461 U.S. at 433 (1983). Also, as discussed above, Plaintiffs over-litigated their claims but did not act in bad faith. Considering these factors, the Court reduces Defendants' cumulative hourly fee to $225 per hour and the total number of hours billed (8,779.35) by 50%. This amounts to a total fee award of $987,676.88. The Court believes this amount will effectively deter future plaintiffs from over-litigating weak ERISA claims while preventing a windfall for Defendants.

## C. Reasonable Costs

It is within the Court's discretion to award costs as well as reasonable attorney's fees. Id. § 1132(g)(1). There is substantial documentary evidence in the Defendants' Exhibits (see Docket No. 319, Exs. 2, 3; Docket No. 330, Exs. 1, 2) and Bill of Costs (Docket No. 329) to support the requested award.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion for Attorney's Fees and Costs is **GRANTED**;

2. Plaintiffs shall pay Defendants' attorney's fees in the amount of $987,676.88, and costs in the amount of $525,517.32.

Dated: October 4, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge